MARILYN E. BEDNARSKI, SBN 105322
E-Mail: mbednarski@mbllegal.com
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

ABBE DAVID LOWELL, *pro hac vice*
DAVID A. KOLANSKY, *pro hac vice*
E-Mail: alowellpublicoutreach@lowellandassociates.com
Lowell & Associates, PLLC
1250 H Street, NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116

Attorneys for Defendant
DAVID HUERTA

WESTERN DIVISION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> DAVID HUERTA, <br><br> *Defendant*. | CASE NO.: 2:25-CR-00841-SB <br><br> **DEFENDANT'S MOTION TO COMPEL DISCOVERY OF METADATA FOR GOVERNMENT AGENTS' TEXT MESSAGES AND JUNE 6, 2025 PHOTOS AND VIDEOS** <br><br> Date: February 3, 2026 (PTC) <br> (Hearing Length Estimate: 1 hour) <br> Time: 8:00 a.m. <br> Ctrm: 6C (1st Street U.S. Courthouse) |

1    **NOTICE OF MOTION**

2        Defendant David Huerta, by and through undersigned counsel, respectfully

3    moves this Court pursuant to Federal Rule of Criminal Procedure 16(d)(2)(A) for

4    an order compelling certain government discovery because the prosecution has yet

5    to satisfy[1] its affirmative discovery obligations and Mr. Huerta's specific discovery

6    requests for metadata and other ownership information for previously-produced

7    files.[2]  Specifically, Mr. Huerta has sought (i) any metadata for or associated with

8    government agents' text messages that have previously been produced to the

9    Defense, and (ii) any metadata for photos and videos taken of the scene on June 6,

10   2025 that have previously been produced to the Defense.

11       The parties have been discussing these discovery issues since early December

12   2025, when defense counsel first raised the metadata deficiencies with the

13   government, and over a series of letters and emails requested the government's

14   assistance with obtaining the affiliated underlying metadata for the government

15   agents' text messages previously produced.  The procedural background is described

16   in full below.

17       As to (i), on December 30, 2025, the government confirmed its position is that

18   Mr. Huerta's request for the underlying metadata for the agents' text messages "falls

19   outside of our discovery obligations, particularly since the date and time stamps

20   appear on the text messages themselves."  **Bednarski Declaration, Ex. A**.

21

22   _____

23       [1] As explained further herein, this Motion is being filed because of the
     compressed time before the currently scheduled February 17 trial date and February

24   3 pre-trial conference date.  The Motion and relief sought may become moot should
     the government provide the requested information before then.

25       [2] The Court has before it motions to dismiss the Information filed by Mr.

26   Huerta on January 6, 2026, that, if granted, would make this motion to compel moot.
     However, with a trial date set for February 17, this filing is being made to preserve

27   defense counsel's ability to plan and prepare for a possible trial in this case.

28                                          1

As to (ii), the government has yet to provide Mr. Huerta with a searchable index containing the photos' and videos' metadata indicating who is the owner(s) of each photo and video (e.g., agent name), nor the date and time created of each photo and video, nor have prosecutors provided the images and videos in a load-ready file format which would ordinarily contain this metadata.

On January 5, 2026, defense counsel conferred by video with and advised the government of its intention to file this motion to compel discovery.  On the call, government counsel acknowledged that Mr. Huerta is entitled to certain of the underlying metadata for (i) the agents' text messages and (ii) photos and videos produced and requested in this Motion, but perhaps not necessarily in the *format* (e.g., a Cellebrite image report) that defense counsel requested in its December 8 or December 14 discovery letters.  The government advised it would endeavor to gather this metadata quickly and prepare and produce it in a manner useable by the defense – e.g., in a list or excel spreadsheet that matches each message, photo, or video with its corresponding metadata fields.

The parties also acknowledged that, given the condensed timeline before trial and the pre-trial conference, Mr. Huerta would still file this protective Motion to compel discovery, with the hope that the government's prompt production of the requested material would make the Court's consideration of this Motion and the relief sought unnecessary.

Dated: January 6, 2026                    Respectfully submitted,

                                          LOWELL & ASSOCIATES, PLLC

                                          By:   /s/ Abbe David Lowell
                                                Abbe David Lowell

                                          MCLANE, BEDNARSKI & LITT, LLP

2

By:  _/s/ Marilyn E. Bednarski_
Marilyn E. Bednarski

*Attorneys for Defendant David Huerta*

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITES............................................1

**I.    Factual and Procedural Background**..........................................**1**

    A. Government Agents' Text Messages from June 6. ...............................1

    B. Government Photos and Videos From the Scene on June *6*. ................3

**II.    Argument** ..................................................................................**5**

    A. Rule 16 and *Brady* Require Disclosure Of All Information in the Prosecution Team's Possession That Is Material and Exculpatory to the Defense..............................................................................5

    B. Where Metadata Is Relevant to a Case and Is Stored in the Ordinary Course of Business, It Should Be Produced and Can Be Compelled...7

    C. The Metadata Requested By Mr. Huerta For Both the Agents' Text Messages and tshe Photos and Videos Taken Is Critical for Mr. Huerta's Preparation of His Defense and Is Routinely Stored ESI. .....9

        i.    *Government Agents' Text Messages from June 6.* ..............10

        ii.   *Government Photos and Videos From the Scene on June 6.* .......................................................................12

**III.  Conclusion** ................................................................**14**

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*,
　373 U.S. 83 (1963)........................................................................5

*City of Colton v. Am. Promotional Events, Inc.*,
　277 F.R.D. 578 (C.D. Cal. 2011)....................................................8

*Kuen Hwa Traffic Industrial Co. v. DNA Motor, Inc.*,
　2019 WL 4266811 (C.D. Cal. July 10, 2019) ...............................9

*Moore v. Garnand*,
　2024 WL 3291810 (D. Ariz. July 3, 2024)................................7, 8

*United States v. Cloud*,
　102 F.4th 968 (9th Cir. 2024) ........................................................6

*United States v. Hernandez-Meza*,
　720 F.3d 760 (9th Cir. 2013) .........................................................6

*United States ex rel. Humane Soc'y of the U.S. v. Westland/Hallmark Meat Co.*,
　2012 WL 12886501 (C.D. Cal. Sept. 26, 2012) .............................7

*United States v. Liquid Sugars, Inc.*,
　158 F.R.D. 466 (E.D. Cal. 1994)....................................................6

*United States v. Lucas*,
　841 F.3d 796 (9th Cir. 2016) .........................................................5

*United States v. O'Keefe*,
　537 F. Supp. 2d 14 (D.D.C. 2008)..................................................7

*United States v. Stever*,
　603 F.3d 747 (9th Cir. 2010) .........................................................6

*United States v. Vaughn*,
　2015 WL 6948577, (D.N.J. Nov. 10, 2015) ..................................9

**Other Authorities**

Justice Manual § 9-5.001 .................................................................6

Justice Manual § 9-5.002 ........................................................................... 6

**Rules**

Federal Rule of Civil Procedure 26(f) ....................................................... 7

Federal Rule of Civil Procedure 34(b) ....................................................... 7

Federal Rule of Civil Procedure 37(e) ....................................................... 9

Federal Rule of Criminal Procedure Rule 16 ............................... 5, 6, 7, 10

iii

## MEMORANDUM OF POINTS AND AUTHORITES

I.   FACTUAL AND PROCEDURAL BACKGROUND

A.   Government Agents' Text Messages from June 6.

On July 2, 2025, the government produced a series of "Agent Text Messages" from June 6, 2025 containing iMessages exchanged between two HSI agents[3] at the scene that day, one of whom was working undercover and positioned among the crowd of protesters outside the Ambiance gate.  *See* **Ex. B** (7/28/25 Production Ltr.); **Ex. C** (Agent Text Messages, HUERTA_00000160 - HUERTA_00000235).[4]  The text messages were produced to defense counsel as standalone PDF files that are screenshots of iMessages, presumably taken of/from the two agents' iPhones.  The agents' text exchange appears to begin on June 6 at 10:10 AM and the last message produced is marked June 6 at 9:12 PM.  No time zone or geolocation is assigned to the messages.   The text messages provided appear to come from three different devices – one set from "Agent A's" government-issued mobile phone, a second set from "Agent B's" government-issued mobile phone, and a third set from "Agent A's" personal mobile device.[5]  *See* **Ex. C** at 1 (no iPhone contact), 20 ("Personal phone out of battery [] Use this pls" and iPhone contact, "Jeremy"), 26 (iPhone contact, "Maybe: Home").

---

[3] Using context from other discovery, Mr. Huerta understands the two individuals texting here to be undercover Task Force Officer Jeremy Crossen and HSI Group Supervisory Agent Ryan Ribner.  However, that information is not available from the face of the message screenshots produced and at issue here.

[4] For the Court's convenience, defense counsel consolidated and resorted the 76 PDF screenshots into one combined PDF file for the purposes of filing Exhibit C; however, each page of Exhibit C was originally produced by the government as a single PDF image, beginning with HUERTA_00000160.  Message metadata was not included with any one page or set of pages.

[5] "Agent A" and "Agent B" are made up descriptors provided for purposes of describing the various phones to the Court.  The full names and contact cards of the two agents to whom the iPhones belong were not provided to defense counsel.

1

The screenshot PDF images of the messages do not contain any metadata affiliated with the messages or the source iPhones, and no corresponding index was provided to defense counsel with this information.  Notably, the phone numbers belonging to the sender(s) and recipient(s) of the messages, or even the iPhone contact cards, were not included in the production or visible in the screenshots.  Nor do the iMessage screenshots contain a timestamp for *each* message; while some messages do have a timestamp at the top (sometimes owing to a gap in time), many of the messages contain *no timestamp* whatsoever.[6]  Additionally, because of the nature of the initial production (individual PDFs named only by "IMG" file number), there is no way in which to tell who the owner and custodian (e.g., which agent) is of each set of messages and each phone.  Additionally, due to the screenshot nature of the messages, certain messages are cut off and the messages were not all provided in chronological order to Mr. Huerta.  Finally, the iMessage screenshots do not contain any geolocation or coordinate information, if any is available, as is often part of cellphone metadata or any "native" file.

On December 14, 2025, Mr. Huerta requested that "[f]or any text messages, photographs, videos, or other communications previously provided in discovery from any government Agent's cellphone(s)," as defense counsel have received in numerous other cases, the government produce that material "in a native or Cellebrite format that includes all metadata affiliated with those messages, photos, videos, or other communications (e.g., identity and phone number of sender and recipient of each message; identity and phone number of creator of any photo or

---

[6] In its December 30, 2025 e-mail to defense counsel (**Ex. A**), the government stated its view "that [Mr. Huerta's] request falls outside of our discovery obligations, particularly since the date and time stamps *appear on the text messages* themselves." (Emphasis added).  That statement is inaccurate.  As the Court can see throughout Exhibit C, certain of the iMessages contain no timestamp whatsoever.

video; date; time; GPS coordinates)." **Ex. D** (12/14/25 Discovery Letter).  Mr. Huerta also requested a production index, including the file name, date of capture/receipt/transmission, and any other relevant data, for any previously produced material in this case, including the Agent Text Messages.  On December 17, 2025, counsel for Mr. Huerta and the government conferred by telephone regarding this same request.

On December 21, 2025, Mr. Huerta's counsel e-mailed the government for an update and the government's position on the requests raised in his December 14 discovery letter.  **Ex. A**.  On December 22, the government replied that it "is still considering its position on this request" for any metadata affiliated with the agents' messages.  *Id.*  On December 22, Mr. Huerta's counsel followed up to ask when the government may know its position on this issue.  *Id.*  On December 23, government counsel indicated that he was seeking "guidance from the Office" about the nature of metadata/Cellebrite extraction for the agents' text messages.  *Id.*  On December 30, 2025, the government indicated that "[w]ith respect to the request to conduct a cellbrite [*sic*] extraction of the agents' phone for metadata associated with their text messages, our office's position is *that request falls outside of our discovery obligations, particularly since the date and time stamps appear on the text messages themselves*. . . . Our position is that we are not required to perform a cellbrite [*sic*] extraction of the agent's phone to do so."  *Id.* (emphasis added).

As a result, and after meeting and conferring with the government on January 5, 2026, Mr. Huerta brings this motion to compel the production of the metadata associated with the previously produced agents' text messages.

**B.  Government Photos and Videos From the Scene on June 6.**

The government's discovery in this case is largely composed of photo and video evidence (in addition to government investigative reports and text messages). The government has produced photos and videos across four different productions:

on June 22, 2025 (informal photos and videos, without bates stamps); July 2, 2025 (photos and videos); July 28, 2025 (additional photos and videos); and December 23, 2025 (additional photos).  *See* **Ex. B** (7/28/25 Production Ltr.).

The government's production of these photos and video footage contains similar deficiencies as the agent text messages, namely there is no owner-specific metadata indicating who took certain photos and videos of the scene on June 6, 2025, which device(s) or agents(s) they came from and originated on (e.g., mobile phones, body-worn cameras, or traditional snapshot cameras), and in some cases, when and by whom the photos were taken.

On December 14, 2025, Mr. Huerta requested that "[f]or any other photograph or video files produced in discovery, including any new material responsive to our December 8, 2025 discovery letter (*see* Requests 3 – 5 for dash-cam video footage, body-worn camera footage, and HSI Special Agent McKenzie's photos),"[7] the government produce that material "in a native format that includes all metadata affiliated with those photos or videos." **Ex. D** (12/14/25 Discovery Letter).  Mr. Huerta also requested a production index for any previously produced material in this case.  On December 17, 2025, counsel for Mr. Huerta and the government conferred by telephone regarding this same request.

On December 21, 2025, Mr. Huerta's counsel e-mailed the government for an update and the government's position on the requests raised in his December 8 and

---

[7] The December 8 discovery letter requested, among other items, "3. Any dash-cam video footage from the white van seen entering the Ambiance Apparel site on June 6, 2025 (as referenced in USAO-9-22-2025_00000212)[;] 4. Any body-worn camera footage from FBI and/or HSI agents participating in the operations or proceedings at or outside Ambiance Apparel on June 6, 2025 (as referenced in USAO-9-22-2025_00000225-226)[;] [and] 5. Any photos taken by HSI Special Agent Joseph McKenzie at or outside Ambiance Apparel on June 6, 2025 (as referenced in USAO-9-22-2025_00000234)." **Ex. E** at 2 (12/8/25 Discovery Letter).

4

December 14 letters. **Ex. A**. On December 29, 2025, Mr. Huerta's counsel followed up "regarding an index of any metadata associated with the images" contained in one production volume and clarification about certain metadata dates that appear to "post-date" June 6, 2025. *Id.* On December 30, 2025, the government indicated that "the simple answer is the government is producing the native version of the images as they exist in our file without cleaning the metadata associated with the images. As a result, all of the existing metadata associated with the image should already be included in the image files produced. . . . That being said, we are still conducting our investigation, and so to the extent there are different versions of the images we produced with differing metadata, we will produce it in native format with the metadata attached." *Id.* But the government has not yet provided Mr. Huerta an index of the metadata indicating who the owner(s) of each photo and video is (e.g., agent name), nor the "date created" of the files, nor were the images and videos provided in a load-ready file format which would ordinarily contain the metadata (and is a routine format for DOJ discovery productions).

## II.    ARGUMENT

### A. Rule 16 and *Brady* Require Disclosure Of All Information in the Prosecution Team's Possession That Is Material and Exculpatory to the Defense.

Mr. Huerta requested the ongoing production of the aforementioned discovery material subject to disclosure under Federal Rule of Criminal Procedure 16(a)(1) and pursuant to the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its analogs. *See* **Ex. D** (12/14/25 Discovery Letter); **Ex. E** (12/8/25 Discovery Letter); **Ex. F** (11/5/25 Discovery Letter).

Under Rule 16(a)(1), the prosecution must produce any material within its possession, custody, or control that is "material to preparing the defense," *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (citations omitted), and it must do

so promptly.  *See* Justice Manual ("JM") § 9-5.002 (setting out discovery obligations).  The prosecution team explicitly includes federal law enforcement officers, agents, and other officials "participating in the investigation and prosecution of the criminal case against the defendant." JM §§ 9-5.001; 9-5.002. Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (rejecting district court holding that defendant was not entitled to law enforcement reports, officer training materials, and *other materials* related to its operations as "illogical").  Materiality is a low bar; in this Circuit, the standard for pretrial disclosure of exculpatory evidence is "an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024).  Evidence is material if it will play an important role in uncovering admissible evidence, aid in witness preparation, corroborate testimony, or assist in impeaching government witnesses.  *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471 (E.D. Cal. 1994) (citations and quotations omitted).  The defense is entitled to information even if it undermines its case, as such evidence may affect the presentation of the defense at trial.  *See United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (it "behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case").

In addition to the above, the Court in this case has ordered that "the government has a continuing obligation to produce all information or evidence known to the government that is relevant to guilt or punishment, including exculpatory evidence."  Criminal Standing Order, ECF 43, at 2.  The government is also ordered to "timely produce" such material to the defense.  *Id.*  Echoing this Order, the Justice Department also instructs prosecutors to "provide broad and early discovery consistent with any countervailing considerations."  JM § 9-5.002.

6

**B. Where Metadata Is Relevant to a Case and Is Stored in the Ordinary Course of Business, It Should Be Produced and Can Be Compelled.**

Rule 16 requires the government to produce "data," "photographs," and other "tangible objects" so long as the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.  F.R.Cr.P. 16(a)(1)(E). The rule explicitly includes both "data" and "photographs" within discoverable materials.  Metadata stored in a native format is routinely contained as part of the government's discovery productions.[8]  *See, e.g.*, *United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*, 2012 WL 12886501, at *4 (C.D. Cal. Sept. 26, 2012) ("[T]he Government has complied with the requirements of [Federal Rule of Civil Procedure] 34(b)(2)(E)(i) by producing all ESI [Electronically Stored Information] in its native format, with all existing metadata.").  Federal Rule of Civil Procedure 34(b) provides guidance for criminal discovery, whereby the government has an obligation to ensure that the format of its electronic files is produced "in the form in which they are ordinarily maintained," including native metadata or ESI.  *United States v. O'Keefe*, 537 F. Supp. 2d 14, 16 (D.D.C. 2008).[9]

When metadata underlying electronic items such as photos or other objects has not been produced to the other side, district courts in this Circuit have granted

---

[8] It is standard in criminal cases for ESI to be produced in a native format usually with a protective order to protect privacy interests. While no formalized rule exists under the Federal Rules of Criminal Procedure, it is standard practice in criminal cases to disclose ESI in a native format, and courts are often faced with requests for such ESI orders and/or proposed protective orders under which ESI is disclosed.  *See also* Fed. R. Civ. Proc. 26(f) (addressing ESI in civil context).

[9] The court also instructed the government to preserve the electronically stored information in its native format *with metadata* until the court ruled on the defendants' motion.  *O'Keefe*, 537 F. Supp. 2d at 23.

motions to compel metadata production when the specific factual circumstances support its relevance to the case, and where the metadata is stored in the ordinary course of business.  In *Moore v. Garnand*, a district court granted plaintiffs' motion to compel metadata for police photographs, taken by officers of the Tucson Police Department, finding that the metadata should have been included in the government's initial discovery under Rule 34(b)(2)(E)(i), which requires documents be produced "as they are kept in the usual course of business."  *Moore v. Garnand*, 2024 WL 3291810, at *2 (D. Ariz. July 3, 2024).  The court in *Moore* found that photograph metadata containing the date and time information *was relevant* for reconstructing the *sequence of events* during a police investigation, particularly where witnesses had forgotten or omitted certain details.  *Id.*; *see also City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) (acknowledging that ESI in native format would be "a satisfactory proxy for a production organized in the usual course" because "native format will provide Defendants with the metadata necessary to identify the provenance of each document.")

Notably, the court in *Moore* concluded that the metadata for the police photos sought appeared to be "relevant and should not be too difficult to retrieve assuming . . . the metadata is attached to the images stored" with law enforcement.  *Moore*, 2024 WL 3291810, at *2.  The district court rejected the government's argument (on behalf of the law enforcement officers) that timing placards filled out by the officers were adequate substitutes, explaining that while placards "will supply some information about where and when each group of photographs was taken," they would not "reveal the *actual sequence of events* that took place when the Tucson Police Department conducted their investigation."  *Id.*

With respect to metadata for text messages specifically, federal courts, including within the Ninth Circuit, have addressed failures to preserve ESI,

including text messages and videos, under Fed. R. Civ. P. 37(e), which imposes sanctions only upon finding that a party acted with intent to deprive the opposing party's use of ESI. *Kuen Hwa Traffic Industrial Co. v. DNA Motor, Inc.*, 2019 WL 4266811, at *2 (C.D. Cal. July 10, 2019) (awarding request for sanctions after defendant admitted to deleting text messages and failing to preserve material ESI). In criminal cases, courts recognize the government's duty to preserve discoverable evidence, including text message material, and may impose sanctions for failure to preserve such material, even absent bad faith, underscoring the importance of accurate metadata production to ensure a fair proceeding and protect a defendant's Sixth Amendment right to a fair trial. *See United States v. Vaughn*, 2015 WL 6948577, at *17–18 (D.N.J. Nov. 10, 2015) (holding that sanctions against the government were warranted for the government's failure to preserve text messages relevant to its investigation and the "cumulative effect of the inconsistencies" of the government's representations to defendant).

### C. The Metadata Requested By Mr. Huerta For Both the Agents' Text Messages and the Photos and Videos Taken Is Critical for Mr. Huerta's Preparation of His Defense and Is Routinely Stored ESI.

The metadata Mr. Huerta requests here—for the agents' text messages already produced in this case,[10] and for the photos and videos taken of the scene on June 6 and already produced—is critical and material to his ability to adequately prepare for his defense in this case. It is also relevant to understanding the sequence of

---

[10] Because the agents' text messages *and* the photos and videos have already been collected by the government in this case and produced to the defense, there can be no dispute about the government's "possession, custody, or control" of that material and/or those devices, as the government already had, and likely continues to have, access to them in preparing their discovery productions.

events that occurred on June 6, both the actions of protestors and Mr. Huerta at the scene (e.g., shown in photographs and video recordings) *and* the agents' statements to one another and activities that day as reflected in the text messages. Lastly, the metadata information affiliated with iPhone photos and messages is routinely stored in the ordinary course for such ESI, and would be straightforward to extract from the agents' cellphones or devices. Moreover, producing the photos and videos in a native, load-ready format along with a corresponding index is routinely done in criminal cases by the Department of Justice.

### i.    *Government Agents' Text Messages from June 6.*

The metadata information affiliated with the agents' text messages (which have already been produced), and sought by Mr. Huerta in a discovery letters dated December 14, 2025, is material to his ability to prepare for his defense, because without it, Mr. Huerta is unable to know (i) which agents were communicating with one another; (ii) what telephone number(s) and mobile devices (personal, government-issued, or both) were being used; (iii) the time and time zone that messages were sent; and (iv) even to read certain messages themselves—as certain messages are cut off due to the screenshot nature of the messages.

As to its relevance in this case, the government disclosed the agents' messages pursuant to its general Rule 16 discovery obligations. The agents' messages exchanged on June 6 directly refer to Mr. Huerta numerous times and are material to his defense in this case. For example, in one message, Agent A writes, "Red shirt beard," which could be a reference to Mr. Huerta whom agents describe as wearing a red shirt that day. **Ex. C** at 19. One video, captured and texted sometime after 2:45 p.m., shows Mr. Huerta standing by the outside gate of Ambiance Apparel, wearing his red checkered shirt. *Id.* at 44. Then, later in the day, after the arrest has taken place and the agents have left the scene, Agent B writes, "Do you have the subject with the red shirt I arrested," likely a reference to Mr. Huerta, and Agent A

replies, "Yes," "Lots of video going through," "I got him yelling at you a lot too." *Id.* at 46.  No timestamp is affiliated with any of these messages.

Then, suddenly, at 4:28 p.m., the second agent replies again to the first agent, "Watch closely" and sends a video of Mr. Huerta allegedly talking to HSI agents by the outside gate.  *Id.* at 46–47.  The second agent texts again, "Here" and "You warn him repeatedly in this one" below a video he sent to the first agent.  *Id.* at 49.  Again, no time stamp is affiliated with these messages.

Without metadata and the time stamps for these messages exchanged between two of the agents at the scene on June 6, including the sender and recipient telephone information, the time and date *each* message was delivered *and* received, the phones used (e.g., personal or government-issued devices) by the agents, and if stored, the coordinates or geolocation information affiliated with the messages at the time the messages were delivered or received, Mr. Huerta is unable to create a sequence of events on June 6, including the agents' activity around the time of the search.  Nor can he adequately prepare for his defense and for witness preparation and cross-examination of government agents at trial without this metadata material.  Worse, nor can Mr. Huerta place these standalone PDF screenshot images in chronological order without the date and time of each message.

The agents' text messages are critically relevant to his defense, both in understanding the agents' activities, biases and motives, but also in constructing the events of that day.  Furthermore, the metadata affiliated with iMessages and text messages on mobile phones—including, but not limited to, the sender and recipient telephone numbers affiliated with the iMessages; date and time of creation and delivery; and any location information or GPS coordinates—is information that is routinely stored in, and maintained within, such electronic material.  Any modern mobile device would contain such metadata, and could be imaged using a variety of current software capabilities available to the government.  In criminal cases,

prosecutors often produce text message reports as Cellebrite image reports—which contain all the relevant metadata fields Mr. Huerta seeks here but Mr. Huerta is open to receiving the text message metadata if it is the equivalent of such imaging in any other format.

Assuming there has been no spoliation or destruction of text message evidence on any device used, the material being sought would not be difficult or burdensome to produce. Without this foundational information, Mr. Huerta will be unable to assess the admissibility and foundation of the proffered iMessage screenshots. Raising objections at trial or questioning a witness on the stand regarding this would consume undue time and energy and be tedious and could cause unnecessary delay. Absent such relevant and critical information for the agents' messages, Mr. Huerta will be severely prejudiced in preparing for his defense of this case and will be unable to adequately prepare for examination of the government's witnesses at trial.

> ii. *Government Photos and Videos From the Scene on June 6.*

As to the owner identity and metadata material affiliated with the photos and videos taken by government agents on June 6 (already produced by the government to the defense) and sought by Mr. Huerta in discovery letters dated December 8 and December 14, 2025, the data is material to his ability to prepare for his defense, because without understanding *who* took a particular photo or video, and from *what device(s)* it came or was shot on, Mr. Huerta cannot prepare for the cross-examination of government agents and other witnesses at trial. Put differently, the government's photos and videos are unable to be used to create a sequence of events or as impeachment evidence at trial if Mr. Huerta cannot identify which agent took a particular photo or video.

The HSI Enforcement Operation report lists some *56 federal agents* who were involved in serving and executing the search warrant at Ambiance Apparel on June

6, 2025.  The government's discovery and investigative reports also indicates that at least two different law enforcement agencies – the FBI and DHS-HSI – were wearing activated body-worn cameras with video (DEA agents' body-worn cameras were allegedly not activated).  And, the government has already confirmed there was one undercover HSI agent, Task Force Officer Crossen, positioned among the crowd who was taking his own photos and video—using both his personal and government mobile devices, and possibly body-worn camera.  Put simply, at trial, how is Mr. Huerta to know from which agent(s) a particular photo or video comes, and how can he prepare for his defense to the government's case-in-chief, if he and they cannot identify which agents took which particular photos and videos.  This could lead to unnecessary delay and tedious questioning during witness examinations at trial.

Finally, the metadata affiliated with photos and videos—including, but not limited to, the owner identity and phone number affiliated with any photo or video; date and time of creation; and any location information or GPS coordinates—is information that is routinely stored in, and attached to, such electronic material.  Any iPhone or modern video camera equipment would contain such metadata, including but limited to owner identity or an officer's badge number or ID number, and in the event it does not, the government can so indicate through a sworn statement or other method if it does not possess such information.

And like with the text messages, Mr. Huerta will be unable to assess the admissibility and foundation of the proffered photos and videos without the native format or its equivalent, and could consume undue time and energy during a trial.  Absent the basic identifying information, which is ordinarily contained in the photos' and videos' metadata fields and native ESI format, Mr. Huerta will be severely prejudiced in preparing for his defense of this case and will be unable to adequately prepare for examination of the government's witnesses at trial.

**III.    CONCLUSION**

Accordingly, and for the foregoing reasons, Mr. Huerta respectfully moves this Court for an order compelling the government to promptly produce: (i) any metadata for or associated with government agents' text messages that have previously been produced to the Defense, and (ii) any metadata for photos and videos taken of the scene on June 6, 2025 that have previously been produced to the Defense.  Absent such metadata, Mr. Huerta will be unable to effectively prepare for examination of the government's witnesses at trial and will be severely prejudiced in preparing for his defense of the conduct charged.

A Proposed Order is attached to this Motion.

Dated: January 6, 2026                   Respectfully submitted,
                                         LOWELL & ASSOCIATES, PLLC

                                         By:   _/s/ Abbe David Lowell_____
                                              Abbe David Lowell

                                         MCLANE, BEDNARSKI & LITT, LLP

                                         By:   _/s/ Marilyn E. Bednarski_____
                                              Marilyn E. Bednarski

                                         *Attorneys for Defendant David Huerta*

14

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant David Huerta certifies that this brief contains 4,404 words, which complies with the word limit of 7,000 words, as set forth in Standing Order 5(b).  ECF 43 at 5.

_/s/ Marilyn E. Bednarski_
Marilyn E. Bednarski

15