TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
NEIL THAKOR (Cal Bar No. 308743)
CHRIS S. BULUT (Cal. Bar No. 352016)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6595 / 6738
    Facsimile: (213) 894-0141
    E-mail: neil.thakor@usdoj.gov
           chris.bulut@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00841-SB |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY OF METADATA (DKT. 58)** |
| v. | |
| DAVID JOSE HUERTA, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys NEIL THAKOR and CHRIS S. BULUT, hereby files its Opposition to Defendant David Huerta's ("defendant") Motion to Compel Discovery of Metadata (Dkt. 58).

//

//

//

//

1  This Opposition is based upon the attached memorandum of points and
2  authorities, the files and records in this case, and such further evidence and argument as
3  the Court may permit.

4  Dated: January 13, 2026                    Respectfully submitted,

5                                              TODD BLANCHE
                                               Deputy Attorney General
6                                              BILAL A. ESSAYLI
                                               First Assistant United States Attorney
7
                                               ALEXANDER B. SCHWAB
8                                              Assistant United States Attorney
                                               Acting Chief, Criminal Division
9

10                                                   /s/
                                               _____
                                               NEIL THAKOR
11                                             CHRIS S. BULUT
                                               Assistant United States Attorneys
12
                                               Attorneys for Plaintiff
13                                             UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                                           PAGE

**Contents**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

     A.    Meet And Confer Over Text Messages ......................................................... 2

     B.    Meet and Confer Over Metadata of Pictures and Videos ............................. 3

III.  ARGUMENT ........................................................................................................ 4

     A.    The Government Has Agreed to Produce the Information from the June 6, 2025 Text Messages that Would Have Been Contained in the Metadata ........................................................................................................ 5

     B.    The Government Has Already Produced Photos and Videos in Native Format With All Associated Metadata Included ........................................... 7

IV.  CONCLUSION ..................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant moves for an order compelling the government to produce: (1) any metadata for or associated with government agents' text messages that have previously been produced to defendant, and (2) any metadata for photos and videos taken of the scene on June 6, 2025 that have previously been produced to defendant. (Dkt. 58 at 21.) However, for both of these requests, the government has either agreed to produce all the information that would be contained in the metadata or has already produced the metadata itself.

First, with respect to the metadata for the produced text messages, the government has agreed to produce any information that would be contained in the metadata of the text messages, including the: (a) time and date of the text messages; (b) the author and recipient of each text message; and (c) answer any particular questions that defendant may have about the text messages. The government has also agreed to create a spreadsheet that lists the information that would be contained in the metadata for defense counsel. Given that the government has agreed to produce the information that would be contained in the metadata, there is no material need to conduct an extraction on the agents' phone for the metadata associated with the text messages.

Second, with respect to the photos produced, the government has already produced the metadata associated with the photographs. Specifically, the government produced the native versions of each photo, which necessarily includes the associated metadata. To the extent defendant is requesting the government create an index of the metadata in a searchable format, see Dkt. 58 at 3:1-5, that request is beyond the government's discovery obligations.

For these reasons, defendant's Motion to Compel should be denied.

## II. FACTUAL BACKGROUND

### A. Meet And Confer Over Text Messages

In July of 2025, the government produced text messages between Special Agent ("SA") Ryan Ribner and Task Force Officer ("TFO") Jeremy Crossen from June 6, 2025, the day of the underlying incident. The text messages were between SA Ribner's government phone and both TFO Crossen's personal phone and then TFO Crossen's government phone after his personal phone ran out of battery. (See Dkt. 58-4 at 21.)

Starting in December 2025, defendant requested the metadata associated with those texts, and specifically, a Cellebrite extraction of SA Ribner's and TFO Crossen's phones. After consulting with supervisors on the request, on December 30, 2025, counsel for the government responded:

> With respect to the request to conduct a cellbrite extraction of the agents' phone for metadata associated with their text messages, our office's position is that request falls outside of our discovery obligations, particularly since the date and time stamps appear on the text messages themselves. Again, **if you have a particular question about any of the text messages, will endeavor to answer them**, but our position is that we are not required to perform a cellbrite extraction of the agent's phone to do so.

(Dkt. 58-2 at 2) (emphasis added).

On January 5, 2025, the parties met and conferred by video over this Motion. During that meet and confer, the government reiterated its position that it would provide any information about the text messages, including the date, time, author, and recipient of each text message, but not produce the metadata itself, which the government understands can only be obtained through an extraction of the phone. Instead, the government offered to compile an excel sheet containing the information that would be contained in the metadata.[1]

---

[1] Although the distinction may be immaterial, in the Motion, defense counsel states that the government agreed to produce the metadata of the text messages in an excel spreadsheet during the January 5 meet and confer. However, to be clear, the government only agreed to produce the *information* that would be contained in the
*(footnote cont'd on next page)*

2

B.     **Meet and Confer Over Metadata of Pictures and Videos**

In July 2025, the government produced photos and videos in its possession relating to the underlying incident. These photos and videos were initially produced informally in native format and then later in pdf format with bates stamps. (See e.g., Dkt. 58-3 at 2 [bates stamped production starting as "PROD_002"].)

On December 14, 2025, and again on December 21, 2025, defendant requested the government produce the photos and videos "in a native format that includes all metadata affiliated with those photos or videos." (Dkt. 58-5; Dkt. 58-2 at 10-11.) On December 22, 2025, the government responded via email to defense counsel, explaining that the government would produce the native versions of the photos and that the videos already had been produced in native format, thus allowing viewing of the metadata on these photos and videos. (Dkt. 58-2 at 8-10.) On December 23, 2025, the government made its Production No. 6, which included the native versions of the photos from the June 6 incident, as defendant requested. (Dkt. 58-2 at 6.)

On December 23, 2025, defense counsel asked the government for metadata for the photos produced in Production No. 6. (Id. at 4-5.) On December 30, 2025, the government responded to defense counsel indicating that all images had been produced in a native format without cleaning the metadata associated with the images, and that the metadata was still attached to the images produced. (Id. at 2-3.) As an example, the government provided the below screenshot of the metadata associated with a native image produced, and explained how the metadata could be accessed with free tools online.

---

metadata and not the metadata itself, since it is the government's understanding that the only way to obtain the metadata of iPhone text messages is through a phone extraction or similar process.

[screenshot of image metadata viewer showing file HUERTA_00000719.PNG, 2.3 MB, PNG, image/png, 828 x 1792 (1.5 megapixels), sRGB, Created June 06, 2025 13:10]

(Id.)

The government also indicated that if during the course of its investigation, it found other version of the produced images and videos, it would produce those versions along with the associated metadata. The government also offered to answer any further questions and provide any additional information about the native files that it could. (Id.) Since the government sent that email, the parties have not had any further meet and confers about any issues, questions, or requests for information about native photographs and videos produced, either through email or during the January 5, 2026, video conference.

### III. ARGUMENT

The government's duty to produce discovery in criminal cases arises from three primary sources. First, Federal Rule of Criminal Procedure 16 establishes guidelines for pretrial production by the government of certain limited materials. Second, under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including Giglio v. United States, 405 U.S. 150 (1972), the government is obliged to turn over to the defense evidence in its possession that is exculpatory or favorable to the defendant. Finally, under 18 U.S.C. § 3500 (the Jencks Act) and Rule 26.2, both parties must disclose prior statements by witnesses after the witness has testified.

4

Under Rule 16(a)(1), "the government must disclose any documents or other objects within its possession, custody or control that are material to preparing the defense." United States v. Lucas, 841 F.3d 796, 804 (9th Cir. 2016) (internal quotation marks omitted). To "obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality." United States v. Zone, 403 F.3d 1101, 1107 (9th Cir. 2005) (internal quotation marks omitted). The defendant has the burden to show both possession and materiality. Lucas, 841 F.3d at 804.

The government has complied and will continue to comply with its obligations under Brady, Giglio, and Rule 16. Defendant moves to compel the production of items that have either already been provided, or where the information has already been produced in a format that is different than what defendant seeks.

**A.  The Government Has Agreed to Produce the Information from the June 6, 2025 Text Messages that Would Have Been Contained in the Metadata**

Defendant argues that he is entitled to metadata from the agent's text messages because without it, he "is unable to know: (i) which agents were communicating with one another; (ii) what telephone number(s) and mobile devices (personal, government-issued, or both) were being used; (iii) the time and time zone that messages were sent; and (iv) even to read certain messages themselves—as certain messages are cut off due to the screenshot nature of the messages." (Dkt. 58 at 17:13-17.)

The government has agreed to produce all of this information to the defendant, just not in metadata format. In fact, much of the information has already been produced. It has already been disclosed that the text messages were between SA Ribner's government phone and TFO Crossen's personal and government phones. As outlined in defendant's Exhibit C, many of the text messages already contain time stamps for each of the text messages, Dkt. 58-4 at 1-20, and in connection with this Opposition, the government is making an additional production of screenshots with timestamps of any text messages that did not already include timestamps. Although it is not obligated to do

so, the government has also agreed to create an excel sheet with the information requested above on each of the text messages, which it is in the process of creating.

While defendant argues in the motion for why it is entitled to certain information about the text messages, which the government has agreed to produce, he does not ever explain why he is entitled to that information specifically in metadata format. Generally speaking, a defendant is entitled to relevant information but not entitled to that information in the format he chooses.

For example, in United States v. Lacey, the court discussed the protocol for electronically stored information ("ESI") the Administrative Office of the U.S. Courts outlined. No. CR-18-00422-PHX-SMB, 2020 WL 85121, at *4 (D. Ariz. Jan. 7, 2020). The court noted:

> In relevant part, the ESI protocol recommends that (1) after conferral, any format selected for producing discovery should maintain the ESI's integrity, allow for reasonable usability, and reasonably limit costs, and, if possible, conform to industry standards for the format; and that (2) when producing ESI discovery, a party should not be required to take on substantial additional processing or formatting conversion costs and burdens beyond what the party has already done or would do for its own case preparation or discovery production.

Id. (cleaned up). In the case, the defendants demanded the government produce Backpage.com, the website at issue in the case, in a read-only form. Id. at *4. The defendants asked that "the Court to compel the government to provide access to Backpage's systems, servers, databases, and data, functioning as they did at the time of their seizure, or, alternatively, to recreate the databases and systems to allow functional access to the data and information as it existed at the time of the government's seizures." Id. (cleaned up). The court found that the government satisfied the defendants' request by providing a functional and operation format, just not in the format the defendants preferred. Id.

6

1 | Similarly, here, the government has agreed to provide to defendant all the information defendant seeks from the metadata, including all the information about the text messages sent, the time, author, recipient of the text messages, and location from where the text messages were sent. Like the defendants in Lacey, defendant here is not entitled seek the information in a format he prefers that would lead to additional burden beyond what the government has already done or would do for its own case preparation or discovery production.

### B. The Government Has Already Produced Photos and Videos in Native Format With All Associated Metadata Included

Defendant's request to compel metadata of the photos and videos taken by agents is moot because it has already produced the native versions of those items with all the associated metadata included.

As discussed above, the government has produced all photos and videos in its possession, custody, or control in native format, which includes all of the associated metadata with the photos and videos, as defendant requested. In the Motion, defendant does not argue that there is any metadata that exists that is missing from the native files produced. Instead, defendant's true complaint is that the government has not created a searchable index of the photos' and videos' metadata. (Dkt. 58 at 3.) However, once again, under Rule 16, the government is only required to produce relevant documents in its possession, custody, or control that are material to preparing a defense, not to create an index summarizing information that has already been produced. See Lacey, 2020 WL 85121, at *4. And to the extent the defendant has any questions about any of the photos or needs additional information about the photographs, the government has repeatedly offered to answer those questions. (Dkt. 58-2 at 2-3.) Accordingly, this issue is moot.

//
//

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.

Dated: January 13, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

 /s/
NEIL THAKOR
CHRIS S. BULUT
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

The undersigned, counsel of record for the government, certifies that this brief contains 2,498 words, which complies with the word limit set by court order.

Dated: January 13, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

    /s/
NEIL THAKOR
CHRIS S. BULUT
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA