TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
NEIL THAKOR (Cal. Bar No. 308743)
CHRIS S. BULUT (Cal Bar No. 352016)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-6595 / 6738
    Facsimile:   (213) 894-0141
    E-mail:     neil.thakor@usdoj.gov
               chris.bulut@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>DAVID JOSE HUERTA,<br><br>       Defendant. | No. CR 2:25-cr-00841-SB<br><br>GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CASE FOR CONSTITUTIONAL VIOLATIONS AND FAILURE TO STATE AN OFFENSE (Dkts. 55, 56)<br><br>Hearing Date:  2/3/2026<br>Hearing Time:  8:00 a.m.<br>Location:      Courtroom of the Hon.<br>                Stanev Blumenfeld. Jr. |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Neil Thakor and Chris S. Bulut, hereby files its Omnibus Opposition to defendant DAVID JOSE HUERTA's Motion to Dismiss the Case for Constitutional Violations (Dkt. 55) and Failure to State an Offense (Dkt. 56).

1

2        This opposition is based upon the attached memorandum of points and authorities,

3   the files and records in this case, and such further evidence and argument as the Court

4   may permit.

5    Dated: January 13, 2026                    Respectfully submitted,

6                                               TODD BLANCHE
                                                Deputy Attorney General
7
                                                BILAL A. ESSAYLI
8                                               First Assistant United States Attorney

9                                               ALEXANDER B. SCHWAB
                                                Assistant United States Attorney
10                                              Acting Chief, Criminal Division

11
                                                    /s/
12                                              _____
                                                NEIL THAKOR
13                                              CHRIS S. BULUT
                                                Assistant United States Attorneys
14
                                                Attorneys for Plaintiff
15                                              UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................. 2

    A.    Federal Agents Obtain a Warrant to Search Ambiance Apparel and Seize Evidence of Federal Crimes ................................. 2

    B.    Federal Agents Plan a Full-Day Operation to Execute the Search Warrant ................................................................. 2

    C.    Demonstrators, Including Defendant, Block the Entrance to Warrant Location ................................................................. 3

    D.    Defendant and Others Block a Law Enforcement Vehicle from Entering the Warrant Location and Is Arrested ................. 5

    E.    LAPD Is Called, Declares a Riot, and Evacuates Federal Agents and Officers from the Warrant Location ......................... 8

III.   THE INFORMATION SUFFICENTLY CHARGES DEFENDANT WITH A VIOLATION OF 18 U.S.C. § 1501. (Dkt. 56.) ................. 9

    A.    The Information Sets Forth a Plain, Concise, And Definite Written Statement of the Essential Facts Constituting the Offense Charged ........... 9

    B.    Defendant's Arguments About the Sufficiency of the Evidence Are Improper on a Motion to Dismiss ............................. 11

    C.    The Evidence at Trial Will Establish That Defendant Obstructed, or Aided and Abetted Others Obstructing, the Execution of the Search Warrant in Multiple Ways ................................. 12

IV.    DEFENDANT'S CONSTITUTIONAL CHALLENGES TO SECTION 1501 FAIL (Dkt. 55.) ................................................. 15

    A.    Section 1501 Is Not Facially Overbroad ......................... 16

        1.    The Plain Text of § 1501 Prohibits Obstructive Conduct, Not Protected Speech ........................... 16

        2.    Defendant Fails to Establish That A Substantial Number of Instances Exist In Which § 1501 Cannot Be Applied Constitutionally ................................. 20

        3.    The Scienter Requirement in § 1501 Limits The Scope of The Statute, Not Broadens It ............................. 22

    B.    Defendant's Vagueness Challenge Under the First and Fifth

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                                    PAGE

       Amendments Also Fail.................................................................24

      1.    Section 1501 is Not Vague As-Applied To Defendant ..................24

      2.    Because § 1501 Is Not Vague As Applied To Defendant, He Cannot Raise a Facial Vagueness Challenge....................................26

      3.    Defendant's Criticisms of Specific Federal Officers and Agents Are Irrelevant To An As-Applied Vagueness Challenge. ...............28

V.    THERE IS NO BASIS TO DISMISS THE INFORMATION UNDER THE COURT'S SUPERVISORY POWERS ........................................28

      1.    Defendant's First Amendment Rights Were Not Violated When He Was Arrested ..............................................................29

      2.    Defendant's Fourth Amendment Rights Were Not Violated When He Was Arrested ..............................................................31

      3.    Dismissal Is Not the Appropriate Remedy Because Defendant Was Not Prejudiced ..........................................................33

VI.   CONCLUSION...............................................................................34

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                    PAGE

Cases

Bank of N.S. v. United States,
    487 U.S. (1988) ..............................................................................................29
Blake v. United States,
    71 F. 286 (1st Cir. 1895) ...............................................................................11
Broadrick v. Oklahoma,
    413 U.S. 601 (1973) ........................................................................................21
City of Houston v. Hill,
    482 U.S. 451 (1987) ..................................................................................16, 18
Graham v. Connor,
    490 U.S. 386 (1989) ........................................................................................31
Hamling v. United States,
    418 U.S. 87 (1974) ............................................................................................9
Headwaters Forest Def. v. Cnty. of Humboldt,
    276 F.3d 1125 (9th Cir. 2002) ..................................................................32, 33
Holder v. Humanitarian L. Project,
    561 U.S. 1 (2010) ......................................................................................24, 26
Johnson v. United States,
    576 U.S. 591 (2015) ..................................................................................24, 27
Kashem v. Barr,
    941 F.3d 358 (9th Cir. 2019) ........................................................24, 26, 27
Marquez-Reyes v. Garland,
    36 F.4th 1195 (9th Cir. 2022) .........................................................................27
McFadden v. United States,
    576 U.S. 186 (2015) ........................................................................................25
Members of City Council of L.A. v. Taxpayers for Vincent,
    466 U.S. 789 (1984) ........................................................................................21
Michigan v. Summers,
    452 U.S. 692 (1981) ........................................................................................13
Miller v. United States,
    230 F.2d 486 (5th Cir. 1956) ..........................................................................20
Muehler v. Mena,
    544 U.S. 93 (2005) ..........................................................................................13
N.Y. State Club Ass'n v. City of New York,
    487 U.S. 1 (1988) ............................................................................................16
Osborne v. Ohio,

# TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

495 U.S. 103, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990) ................................ 22
People v. Vasquez,
  465 Mich. 83 (2001) ................................................................................ 17
Pettibone v. United States,
  148 U.S. 197 (1893) ................................................................................ 11
Sanchez v. Canales,
  574 F.3d 1169 (9th Cir.2009) ................................................................... 13
Scott v. Henrich,
  39 F.3d 912 (9th Cir. 1994) ..................................................................... 31
Sparks v. United States,
  90 F.2d 61 (6th Cir. 1937) ....................................................................... 10
Tovar v. City of Fresno,
  No. 106CV00351LJOGSA, 2007 WL 3407415 (E.D. Cal. Nov. 13, 2007).......... 13, 14
United States v. Bonds,
  730 F.3d 890 (9th Cir. 2013) .................................................................... 27
United States v. Boren,
  278 F.3d 911 (9th Cir. 2002) .................................................................... 11
United States v. Bundy,
  968 F.3d 1019 (9th Cir. 2020) ............................................................. 28, 29
United States v. Centeno,
  793 F.3d 378 (3d Cir. 2015) ..................................................................... 15
United States v. Crews,
  445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980) ............................... 33
United States v. Davis,
  336 F.3d 920 (9th Cir. 2003) ...................................................................... 9
United States v. Dhingra,
  371 F.3d 557 (9th Cir.2004) ..................................................................... 22
United States v. Edwards,
  783 F. App'x 540 (6th Cir. 2019) .............................................................. 22
United States v. Giampino,
  680 F.2d 898 (2d Cir. 1982) ..................................................................... 20
United States v. Gregg,
  226 F.3d 253 (3d Cir. 2000) ................................................................ 21, 29
United States v. Grider,
  617 F.Supp.3d 42 (D.D.C. 2022) .............................................................. 19
United States v. Harris,
  705 F.3d 929 (9th Cir. 2013) .................................................................... 27
United States v. Kahre,

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

737 F.3d 554 (9th Cir. 2013) ........................................................................26
United States v. King,
200 F.3d 1207 (9th Cir. 1999) ................................................................28, 29
United States v. Mechanic,
454 F.2d 849 (8th Cir. 1971) .....................................................................19
United States v. Navarro,
No. 25-661, 2025 WL 3486892 (9th Cir. Dec. 4, 2025) .............................26
United States v. Nukida,
8 F.3d 665 (9th Cir. 1993) ..........................................................................11
United States v. Osinger,
753 F.3d 939 (9th Cir. 2014) ......................................................................22
United States v. Peifer,
615 F.2d 1354 (3d Cir. 1980) .....................................................................10
United States v. Phomma,
561 F.Supp.3d 1059 (D. Or. 2021) .............................................................19
United States v. Pugh,
90 F.4th 1318 (11th Cir.) ................................................................17, 18, 19
United States v. Rogers,
751 F.2d 1074 (9th Cir. 1985) ....................................................................33
United States v. Sears, Roebuck & Co.,
719 F.2d 1386 (9th Cir. 1983) ....................................................................33
United States v. Soda,
No. 21-50025, 2022 WL 3151962 (9th Cir. Aug. 8, 2022) .........................22
United States v. Stowell,
27 F. Cas. 1350 (C.C.D. Mass. 1854) ........................................................11
United States v. Struckman,
611 F.3d 560 (9th Cir. 2010) ......................................................................33
United States v. Tinklepaugh,
28 F. Cas. 193 (C.C.S.D.N.Y. 1856) ..........................................................11
United States v. Triumph Cap. Grp., Inc.,
260 F.Supp.2d 470 (D. Conn. 2003) ..........................................................27
United States v. Tucker,
8 F.3d 673 (9th Cir. 1993) ..........................................................................29
United States v. Warnagiris,
699 F.Supp.3d 31 (D.D.C. 2023) ...............................................................10
United States v. Weslin,
156 F.3d 292 (2d Cir. 1998) ...........................................................22, 23, 30
United States v. Williams,

# TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                        PAGE

 553 U.S. 285 (2008) ............................................................ 16, 17
United States v. Wood,
 No. CR 20-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021)................................. 19
Viet Nam v. Foran,
 411 F.2d 934 (7th Cir. 1969) ............................................................ 19
Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,
 455 U.S. 489 (1982) ........................................................... 24, 25
Virginia v. Hicks,
 539 U.S. 113 (2003) ............................................................ 16
Yanez-Marquez v. Lynch,
 789 F.3d 434 (4th Cir. 2015) ............................................................ 13
Young v. Cnty. of Los Angeles,
 655 F.3d 1156 (9th Cir. 2011) ............................................................ 32

Statutes

8 U.S.C. § 1324(a) ............................................................ 2
8 U.S.C. § 1324a ............................................................ 2
18 U.S.C. § 231(a)(3) ............................................................ 19
18 U.S.C. § 248 ............................................................ 23
18 U.S.C. § 1001 ............................................................ 2
18 U.S.C. § 1015(e) ............................................................ 2
18 U.S.C. § 1501 ............................................................ passim
18 U.S.C. § 1546 ............................................................ 2
42 U.S.C. § 408(a)(7)(B) ............................................................ passim

Rules

Fed. R. Crim. P. 12(b)(3)(B)(v) ............................................................ 9, 11
Fed. R. Crim P. 7(c)(1) ............................................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

There is a fundamental difference between obstructive conduct used to express a viewpoint, and speech.  Obstructive conduct is not protected by the First Amendment; speech is.

In this case, defendant David Huerta ("defendant") is being charged for his obstructive conduct, not because of his protected speech.  On June 6, 2025, defendant and others blocked the entrance of a business where a federal criminal search warrant was being executed to prevent law enforcement vehicles from entering that location. Because of this underline conduct, he is being charged with violating 18 U.S.C. § 1501, which prohibits the obstruction of a warrant being executed.

The fatal flaw with most of the arguments in the motions to dismiss is that defendant conflates obstructive conduct used to express a viewpoint with protected speech.  For example, defendant's argument that 18 U.S.C. § 1501 is overbroad fails because the statute prohibits obstructive conduct, not protected speech.  Defendant's argument that § 1501 is vague because he had "no notice of when his protected speech became criminal," also fails because defendant is being prosecuted for obstructive conduct, not for protected speech. (Dkt. 55 at 35.)  Defendant's argument that his arrest was retaliatory in violation of the First Amendment fails because he was arrested for physically obstructing the path of a law enforcement vehicle, not for "heckling" agents or protesting immigration enforcement.

In short, defendant's obstructive conduct is not protected under the First Amendment simply because he engaged in that obstructive conduct to express his views on immigration enforcement.  For that reason, defendant's motions should be denied, and he should stand trial for obstructing the execution of a search warrant.

## II.    BACKGROUND

### A.    Federal Agents Obtain a Warrant to Search Ambiance Apparel and Seize Evidence of Federal Crimes

In 2025, an I-9 audit was conducted on Ambiance Apparel, a business that had previously been convicted of eight felonies, revealing it was illegally hiring unlawful aliens as employees using fraudulent documents and stolen social security numbers. (Ex. 4 at 1.)  On June 5, 2025, federal agents obtained a warrant to search Ambiance Apparel's business and warehouse locations and seize evidence of violations of:  8 U.S.C. § 1324(a) (Harboring Aliens); 8 U.S.C. § 1324a (Unlawful Employment of Aliens); 18 U.S.C. § 1001 (False Statements); 18 U.S.C. § 1015(e), (False Statements Regarding Naturalization or Citizenship); 18 U.S.C. § 1546 (Fraud/Misuse of Visas or Permits); and 42 U.S.C. § 408(a)(7)(B) (Fraudulent Use of Social Security Numbers). (See Dkt. 55-2 at 6.)  The warrant was supported by probable cause and signed and approved by Magistrate Judge Margo Rocconi. (Id. at 1.)

The warrant authorized agents to search multiple locations for the business, including the premises on East 15th Street, Los Angeles, California 90021 (the "Warrant Location"), among two other locations not at issue in this case.  (Id. at 4.)  In addition, it authorized agents to seize evidence of employment records, identification documents of the employees, and digital devices, among other things.  (Id. at 6-13.)

### B.    Federal Agents Plan a Full-Day Operation to Execute the Search Warrant

Federal agents planned an operation to execute the search warrant at the Warrant Location, which was estimated to take up an entire day.  (Ex. 4 at 1.)  The operation included approximately 56 federal agents split up into different functions including:  (a) searching for evidence and interviewing employees; (b) detaining individuals located inside the premises; and (c) securing the perimeter of the business.  In addition, the government hired a private contractor to help transport any detainees from the Warrant Location to the Federal Building at 300 N. Los Angeles Street.

On June 6, 2025, between 9:00 a.m. and 9:30 a.m., federal agents served and began executing the warrant at the Warrant Location.  (Id.)  Because the business initially denied agents entry into the location, they did not gain access to execute the warrant until after 9:30 a.m.  (Id.)

### C.    Demonstrators, Including Defendant, Block the Entrance to the Warrant Location

Shortly thereafter, between 10:30 a.m. and 11:45 a.m. demonstrators began to show up at the Warrant Location and congregated near the entrance to the front gate. During this initial period, before defendant arrived, the demonstrators did not block the driveway and repeatedly allowed vehicles to enter and exit the Warrant Location through the front gate.  (Ex. 1 at 7:30-7:35; 8:16-8:27; Ex. 2 at 4:25-5:25, 7:49-7:53, 8:22-8:26, 9:45-9:48, 11:47-11:58.)

 

At approximately 11:49 defendant arrived at the Warrant Location.  (Dkt. 55-17.) He immediately positioned himself directly in middle of the driveway of the front gate and began yelling at agents and reaching into the gate's entrance.  (Ex. 2 at 13:01 -

14:42.)  Other demonstrators followed suit and joined the defendant in the middle of the driveway blocking the entrance to the Warrant Location.  (Id.)

 

Within a few minutes of arriving, defendant sat down in the middle of the driveway to the entrance of the front gate.  Two other demonstrators joined the defendant on siting on the ground blocking the entrance. (Id. at 16:31.) Defendant repeatedly gestured and yelled commands to others, such as "sit down!" in order to further block the entrance.  (Id. at 16:50-16:53.) During this time, defendant continued to yell at agents on the other side of the gate.

 

At 12:00 p.m., defendant instructs the crowd to "keep making a circle" in the driveway to entrance of the Warrant Location.  (Ex. 3 at 0:03-0:07.)  A few minutes later, a black pickup truck pulled into the driveway, blocking its entrance.  (Ex. 3 at 0:27.)

During this time, as reflected on the video footage from an agent in the crowd, the federal officers on the scene stayed composed and largely did not interact with the demonstrators, except for occasionally instructing the crowd not to block the driveway. One agent told defendant that he was "not impeding" at that specific moment, but that he was "going to go to jail" if he continued to block the entrance when law enforcement vehicles arrived. (Dkt. 55-4 at 4.) Defendant indicated he would not move when law enforcement vehicles arrived because "it is public sidewalk." (Ex. 3 at 5:13-5:17.)

### D. Defendant and Others Block a Law Enforcement Vehicle from Entering the Warrant Location, and Defendant Is Arrested

At approximately 12:15 p.m., a government contractor arrived and attempted to enter the Warrant Location through the front gate. (Id. at 5:23.) The van was clearly associated with the search warrant execution, and not the protestors, as evidenced by the fact that it had police lights and sirens activated, and because agents both signaled for the vehicle to enter and opened the gate entrance for it as it pulled into the driveway. (Id. at 5:16-5:30.) As agents inside the premises opened the gate for the van to enter, the crowd, including defendant, converged in the middle of the driveway blocking its path. (Id. at 5:20-5:28.)

Because the van's entry was obstructed, the agents inside the gate then left their posts and walked into the driveway in order to clear the van's path. On the video of the incident, agents can be heard telling demonstrators repeatedly to "get out the way." (Id. at 5:20-5:23.) Multiple individuals scattered around the front of the van, and some continued to walk in front of the van as if it was not there attempting to enter. (Id. at 5:23-5:50.) Defendant saw the van with police lights activated, heard the repeated police sirens, and heard the agent's instructions to "get out the way," but he did not; instead,

defendant positioned himself in front of the left bumper of the van with his hands on his hips:



(Id. at 5:24.)

One officer then tried to move defendant out of the way, but defendant resisted being moved out of the way.  (Id. at 5:24-5:30.)  The officer then gave defendant a harder push, which defendant still resisted, but which eventually caused defendant to fall to the ground.  (Id.)



(Id.)

After defendant was knocked to the ground, another agent, attempted to handcuff and detain defendant, while the first officer turned his attention back to the rest of the crowd.  (Id. at 5:30-5:40.)

 

(Id. at 5:30-5:45.)

Because defendant continued to resist being handcuffed, an agent wiped pepper spray on the defendant's face, which caused him to loosen his body and allow himself to be handcuffed and detained.  Because of its limited application, none of the other

demonstrators showed any signs of being affected by the pepper spray.[1]  Other agents attempt to move other demonstrators away from the van.

During this time the van was blocked from entering the Warrant Location, one of its rear tires was slashed on the side by a demonstrator.  (Ex. 7.)  The van was ultimately able to drive inside the premises, and the gate was closed, but the van could not be used immediately to assist in the operations because of the deflated tire.  The officers on the scene spent approximately 30 minutes trying to locate a forklift to replace the tire. (Ex. 6 at 3.)



### E.    LAPD Is Called, Declares a Riot, and Evacuates Federal Agents and Officers from the Warrant Location

At approximately 1:00 p.m., Los Angeles Police Department ("LAPD") arrived at the Warrant Location and formed a line protecting the entrance.  (Ex. 3 at 9:07.)  LAPD then declared a riot and evacuated the Warrant Location.  (Ex. 4 at 3.)  As a result, the operation to execute the search warrant had to be cut short and certain evidence and

---

[1] After being detained, defendant was brought inside to the Warrant Location and provided medical care for his reaction to the pepper spray.  (Ex. 4 at 3.)  In addition, agents brought the defendant water in attempt to minimize the effects of the spray. (Id.)

information could not be seized.  (Id.)  Because the agents could not exit the location through the front gate out of fear for their safety, they had to effectively escape out of the back gate of the Warrant Location, which was previously locked.  (Id.)

## III.   THE INFORMATION SUFFICENTLY CHARGES DEFENDANT WITH A VIOLATION OF 18 U.S.C. § 1501 (Dkt. 56.)

Defendant is charged by information with a violation of 18 U.S.C. § 1501 for knowingly and willfully obstructing a federal officer of the United States in serving and attempting to serve and execute a judicial writ of a court or signed by a Magistrate Judge.  Defendant seeks a dismissal of the information on the grounds that it fails to state a violation of § 1501.

### A.   The Information Sets Forth a Plain, Concise, And Definite Written Statement of the Essential Facts Constituting the Offense Charged

An information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim P. 7(c)(1).  Rule 12(b) of the Federal Rules of Criminal Procedure permits a defendant to file a pretrial motion to dismiss an information for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(B)(v).  "[An information] is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974).  In cases where the information tracks the words of the statute charging the offense, the information "will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense."  United States v. Davis, 336 F.3d 920, 922 (9th Cir. 2003) (internal quotation marks omitted).

Here, the Information charging defendant with a violation of § 1501 states:

> On or about June 6, 2025, in Los Angeles County, within the Central District of California, DAVID JOSE HUERTA ("HUERTA"), and others known and unknown, each aiding and abetting the other, did knowingly and willfully, obstruct, resist, and oppose an officer of the United States, and any such other person duly authorized, in serving and attempting to serve

9

and execute any legal and judicial writ and process of any court of the
United States and United States Magistrate Judge, namely, a search warrant
for the premises at [Warrant Location], issued in Central District of
California, Case No. 2:25-mj-03427, by a United States Magistrate Judge.

(Dkt. 29.)

The Information provides a plain, concise, and definite written statement of the
essential facts constituting the offense, which tracks the statutory language of § 1501,
including all of the elements of the offense.  It also includes the time (June 6, 2025) and
place (Warrant Location) of the alleged conduct.  The information also identifies the
specific "judicial writ of a court or signed by a Magistrate Judge" that the defendant is
being charged with obstructing (i.e. a search warrant in Case No. 2:25-mj-03427).  This
is sufficient to inform defendant of the charge against which he must defend and enable
him to plead guilty or not guilty to the charge.

In the Motion, defendant argues that the Information is deficient because it does
not "offer any details . . . about Mr. Huerta's alleged criminal activity" and that the
Information does not allege that the officer serving or executing the warrant had the
authority to do so.  (See Dkt. 56, 10:22-11:4.)  However, the information does not need
to elaborate on which specific "act" defendant committed with the intent to obstruct, nor
does it need to set forth who had the authority to execute such a warrant, particularly
when that information appears in the warrant listed in the Information itself. See e.g.,
United States v. Peifer, 474 F.Supp.498, 502 (E.D. Pa. 1979), aff'd, 615 F.2d 1354 (3d
Cir. 1980) (rejecting defendant's "complain[ts] that the information [charging violation
of § 1501] is defective because neither the magistrate authorizing the warrant nor the
serving officer is named therein"); Sparks v. United States, 90 F.2d 61, 63 (6th Cir.
1937) (finding that it is not "fatal that the indictment [charging violation of § 1501] does
not allege with greater particularity the contents of the search warrant nor the facts
underlying its issue");  United States v. Warnagiris, 699 F.Supp.3d 31, 41 (D.D.C. 2023)
("Although the indictment does not specify which underlying 'act' [defendant]
committed … with the intent to obstruct, impede, or interfere with law enforcement,

such specificity is not required because guilt under Section 231(a)(3) does not depend so crucially upon such a specific identification of fact.") (cleaned up).[2]

Accordingly, the Information sufficiently charges defendant with a violation of § 1501.

## B. Defendant's Arguments About the Sufficiency of the Evidence Are Improper on a Motion to Dismiss

The remainder of the defendant's motion to dismiss for failure to state a claim are improper arguments about the sufficiency of the evidence, which are fact questions for trial.

In ruling on motion to dismiss, "the district court is bound by the four corners of the indictment." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). Thus, a court "should not consider evidence not appearing on the face of the indictment." Id. To ensure that "the respective provinces of the judge and jury are respected," a Rule 12(b)(3)(B)(v) motion to dismiss "cannot be used as a device for as summary of trial evidence." Id. Courts therefore "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." Id. (internal quotation marks omitted). A court must deny a motion to dismiss where it amounts to a "premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense." United States v. Nukida, 8 F.3d 665, 669-70 (9th Cir. 1993).

---

[2] Defendant cites to Pettibone v. United States, 148 U.S. 197, 205-06 (1893) for the proposition that an indictment under § 1501's predecessor must state the officer "who had authority to serve that [warrant]". As an initial matter, the section quoted by defendant in the motion is a description of a ruling from another lower court, not the holding in Pettibone. Id. at 206 (quoting United States v. Tinklepaugh, 28 F. Cas. 193 (C.C.S.D.N.Y. 1856). As described in the rulings quoted by Pettibone, the authority for the warrant "must either be averred in the indictment, or appear on the face of the process set out therein." United States v. Stowell, 27 F. Cas. 1350, 1351 (C.C.D. Mass. 1854). Stowell is in accord with other rulings from that time that an indictment need not set forth that certain officers had authority to execute said warrant. Blake v. United States, 71 F. 286, 288 (1st Cir. 1895). In this case, to the extent there are any questions about the authority to execute such warrant, the search warrant specified in the information provides that information.

11

In the Motion, defendant runs afoul of these rules by attaching a select number of investigative reports from the government's interviews with agents involved in the execution of the warrant in an attempt to predict whether the evidence introduced at trial will be sufficient to establish a violation of § 1501.  Based on these select reports, defendant asks the Court to make factual determinations about:  (a) what prosecutors and investigating agents "focused on" during interviews; (b) whether or not the law enforcement van that defendant obstructed was related to the "service" or "execution" of the search warrant; and (c) the ultimate question of whether defendant "hinder[ed] any agent's service or execution of the search warrant in any manner." (See generally, Dkt. 56 at 10-14.)

These factual questions amount to a "premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense," and therefore the motion should be denied.  Nukida, 8 F.3d at 669-70.

## C.    The Evidence at Trial Will Establish That Defendant Obstructed, or Aided and Abetted Others Obstructing, the Execution of the Search Warrant in Multiple Ways

Even if the Court were to entertain defendant's improper arguments about the sufficiency of the evidence expected at trial, those arguments should still be rejected on the merits.

As defendant tacitly concedes, defendant obstructed the law enforcement van attempting to enter the Warrant Location.  To get around that fact, defendant asks the Court to narrowly construe the execution of the search warrant to only include the discrete task of physically searching premises and to exclude any other aspect of the operation that day.  (Dkt. 56 at 3:7-5:9.)  Specifically, defendant focuses on the fact that the van's driver was deployed to the site to help safely transport detainees who were

discovered during the execution of the warrant away from the Warrant Location.[3]
However, this narrow construction of the statutory terms "serving" and "execute" is
contrary to both law and common sense.

The Supreme Court has held that a search warrant to search for contraband, like in
this case, "implicitly carries with it the limited authority to detain the occupants of the
premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705
(1981). When executing a search, federal agents "may take reasonable action to secure
the premises and to ensure their own safety and the efficacy of the search." Yanez-
Marquez v. Lynch, 789 F.3d 434, 471 (4th Cir. 2015) (internal quotation marks omitted).
Notably, when executing a search warrant, officers "have the authority to detain the
occupants of the premises while a proper search is conducted regardless of whether or
not the occupants appear dangerous." Sanchez v. Canales, 574 F.3d 1169, 1173 (9th
Cir.2009) (citing Muehler v. Mena, 544 U.S. 93, 98 (2005) (internal quotation marks
omitted) (overturned on other grounds). Law enforcement also may evacuate the
premises being searched. See e.g., Tovar v. City of Fresno, No. 106CV00351LJOGSA,
2007 WL 3407415, at *3 (E.D. Cal. Nov. 13, 2007) (finding that the "police were legally
justified in removing Ms. Tovar from the house and detaining her until the search was
completed").

In sum, this precedent acknowledges that executing a search warrant requires
multiple officers and is not limited to a single, discrete act, such as handing someone the
warrant or seizing a specific piece of evidence. The officers involved in search warrant
executions also necessarily include all of these other law enforcement functions designed
to facilitate the safe search and seizure of a premises, including: (a) securing the
premises of the warrant; (b) detaining individuals inside the premises; (c) protecting
against the destruction of evidence; (d) taking reasonable steps to protect against officer

---

[3] Defendant states the transport van was only intended for use in transporting
detainees. However, the van also transported federal agents from the Warrant Location
to the Federal Building. The van also could have been used for many other purposes.

safety; and (e) safely removing individuals from the premises during the search, if a valid basis for their continued detention exists.

And that is exactly what occurred during the execution of the warrant at Ambiance Apparel.  Executing the search warrant was an entire operation with at least 56 agents involved.  (Dkt. 56-9.)  The agents were split into multiple teams:  a team was designed to secure the perimeter of the location; a team was designed to detain employees and other individuals in the location; and a team was designed to search for evidence including by interviewing employees.  (Id.; Ex. 4 at 2.)  The law enforcement van was designed to helped marshal the nearly 69 employees to a secure location while federal agents continued to search the Warrant Location for evidence.  As a result, when the van was obstructed, the officers inside searching the premises were obstructed as well, and all of these officers satisfy the necessary element in § 1501 that defendant obstruct an "officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute" the Warrant.  18 U.S.C. § 1501.

Defendant similarly argues that his obstruction of the law enforcement van is insufficient to support a violation of § 1501 because the driver of the van was a government contractor and not a federal agent.  The statute, however, expressly recognizes that individuals other than an "officer of the United States" may be "duly authorized" to assist in executing search warrants and thus may be the target of obstruction in violation of § 1501.  And, while the driver was not a federal employee, he was working with, and at the direction of, federal agents and officers in the execution of the federal warrant.  (Dkt. 56-5.)  As a result, when the law enforcement van was obstructed, the federal agents relying on that van to transport the detainees away from the premises were also being obstructed.

Moreover, the execution of the search warrant was obstructed by more than just defendant and others blocking of the law enforcement van attempting to enter the Warrant Location.   As a result of the unrest outside the Warrant Location -- which defendant encouraged and contributed to -- federal agents who otherwise would have

14

spent time searching for evidence or completing other law enforcement functions -- were forced to instead secure the perimeter of the Warrant Location.  When the law enforcement van's tires were slashed, in part because defendant blocked its path into the Warrant Location, agents had to spend time searching for a forklift and had to help replace the tire.  (Ex. 5.)  Moreover, because of the unrest outside the Warrant Location, LAPD was called to the scene and was forced to declare a riot.  (Ex. 4 at 3.), As a result, the federal agents executing the warrant were evacuated from the premises prematurely.  (Id.)  Despite planning on staying at the Warrant Location the entire day collecting evidence, federal agents cut their operation short and escaped out of the back of the Warrant Location because of concerns over safety.  (Id.)  As a result, federal agents were unable to complete their operation, collect all of the evidence they sought out to seize, and were unable to detain and interview nearly 20 employees using stolen social security numbers, along with any identification or employment documents that were in their possession.  (Id.)  A jury could find that defendant's conduct aided and abetted, as well as contributed to the execution of the search warrant being obstructed.  United States v. Centeno, 793 F.3d 378, 387 (3d Cir. 2015) ("One can aid or abet another through use of words or actions to promote the success of the illegal venture. Indeed, only some affirmative participation which at least encourages the principal offender to commit the offense is required.") (cleaned up).

In short, there will be sufficient evidence at trial to show that defendant obstructed the execution of the search warrant.  There will also be sufficient evidence at trial that defendant aided and abetted others who obstructed the execution of the search warrant.  Accordingly, defendant's motion should be denied.

## IV.    DEFENDANT'S CONSTITUTIONAL CHALLENGES TO § 1501 FAIL (Dkt. 55.)

Defendant's Motion challenging the constitutionality § 1501, both facially and as-applied to him, should be denied.  (Dkt. 55.)  Section 1501 is not overbroad because it covers obstructive conduct, not protected speech.  It is also not vague as-applied to

defendant since his conduct in blocking the entrance to a search warrant location is clearly prohibited by the text of the statute.

### A.  Section 1501 Is Not Facially Overbroad

Defendant's overbreadth challenge fails because § 1501 does not "make unlawful a substantial amount of constitutionally protected conduct." City of Houston v. Hill, 482 U.S. 451, 459 (1987).

To prevail on his overbreadth challenge, defendant must establish "from the text of [the challenged provisions] and from actual fact that a substantial number of instances exist in which [the provisions] cannot be applied constitutionally." N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988).  Courts have "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."  United States v. Williams, 553 U.S. 285, 292 (2008) (emphasis in original).  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." Virginia v. Hicks, 539 U.S. 113, 124 (2003).

### 1.  The Plain Text of § 1501 Prohibits Obstructive Conduct, Not Protected Speech

The first step in an overbreadth analysis is to construe the challenged statute. Williams, 553 U.S. at 293.  Defendant is being charged under the first sentence of § 1501, which states:

> Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States magistrate judge.

18 U.S.C. § 1501.  The operative words of that sentence, "obstructs, resists, or opposes," should be reasonably read to prohibit obstructive conduct, not protected speech.  The plain meaning of "obstruct" is to "block or impede passage along," "to place or be an

16

obstacle in," or "to render impassable or difficult of passage."  Obstruct, Oxford English Dictionary (revised ed. 2004).  As the Eleventh Circuit put it, "[i]t is hard to see how either 'obstruct' or 'impede' applies to speech or expressive conduct, except at the margins."  United States v. Pugh, 90 F.4th 1318, 1330 (11th Cir.), cert. denied, 145 S. Ct. 236 (2024).  Similarly, the plain meaning of "resist" is to "stop or hinder (a moving body); to be proof against; to prevent (a weapon, etc.) from piercing or penetrating; to obstruct the passage of, to block."  Resist, Oxford English Dictionary (revised ed. 2010).  And while the term "opposes" is susceptible to multiple meanings, as defendant concedes, a reasonable definition of "opposes" is "to place or position as an obstacle." (Dkt. 55 at 17:22-23.)  As even defendant concedes in the motion, "there is no question that, under its plainly legitimate scope, the first sentence has legitimate prohibitions." (Dkt. 55 at 22 [providing several examples of obstructive *conduct* that is prohibited by § 1501].).

Defendant focuses much of his overbreadth argument on the meaning of the term "opposes" in isolation, without considering the context of the rest of the statute.  Putting aside that the term "opposes" can be interpreted in isolation to refer to actions, the term "opposes" must be interpreted in the context of the "neighboring words with which it is associated."  Williams, 553 U.S. at 294.  Here, given the plain meaning of the terms of the neighboring words "obstructs" and "resists" implicate conduct, the terms "opposes" should be construed to be prohibiting someone from hindering the execution of a warrant with more than just words.  See e.g., People v. Vasquez, 465 Mich. 83, 111-12 (2001) (defining "oppose" as "to act against or furnish resistance to; combat." (emphasis added) (internal quotation marks omitted); id. (finding that the inclusion of the term "obstruct" as part of a list containing "resist, oppose, assault, beat [and] wound" supports "restricting the first three terms in the list to behavior involving actual or threatened physical harm or physical interference") (emphasis added); see also, Pugh, 90 F.4th at 1330 ("although 'interfere,' by itself, could include speech, it is best read in Section

231(a)(3) alongside 'obstruct' and 'impede' as prohibiting someone from hindering a law enforcement officer or fireman with more than mere words").

Defendant's reliance on <u>City of Huston</u>, which invalidated a city ordinance that also included the term "opposed," is misplaced. 482 U.S. 451. In <u>City of Houston</u>, the Supreme Court invalidated a city ordinance which made it unlawful "in any manner [to] oppose, molest, abuse or interrupt any policeman in the execution of his duty." <u>Id.</u> at 455. In construing the ordinance, the Supreme Court focused specifically on the term "interrupt" as "prohibit[ing] speech that in any manner interrupts an officer" and therefore infringed on an individual's right "<u>verbally</u> to oppose" police action. <u>Id.</u> at 462 (emphasis added) (cleaned up).

Further distinguishing <u>City of Houston</u>, the city conceded any interruption of the ordinance that included "any species of physical assault on a police officer" was preempted by the state penal code. <u>Id.</u> at. 460 (internal quotation marks omitted). Similarly, any interpretation of the ordinance to ban "fighting words" or "disorderly conduct" was also preempted by the state penal code. <u>Id.</u> at 462 n.10. Given the ordinance could not prohibit physical or disorderly conduct, the Court found that the only "enforceable portion" of the invalidated ordinance could only be interpreted to prohibit "verbal interruptions" of police officers. <u>Id.</u> at 461; <u>see also</u>, <u>Pugh</u>, 90 F.4th at 1330-31 (distinguishing <u>City of Houston</u> since the challenged ordinance "prohibited only <u>verbal</u> interference with law enforcement") (emphasis in original). Notably, in clarifying the consequences of its ruling, the Court in <u>City of Houston</u> explained that its ruling should not be interpreted to invalidate statutes that "punish physical obstruction of police action." 482 U.S. at 463 n.11.[4] It is for this reason that <u>City of Houston</u> cuts in favor of

---

[4] In fact, the Court went even farther than ratifying statutes that prohibit obstructive conduct and explained that an individual "who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection" could be punished by statute. <u>City of Houston</u>, 482 U.S. at 463 n.11 (internal quotation marks omitted).

the constitutionality of § 1501, not against it, since by its plain text, § 1501 prohibits obstructive conduct.

In line with City of Houston's clarification that its ruling does not prohibit criminalizing obstructive conduct, courts have found similar statutes that prohibit obstructive conduct to be constitutional.  For example, 18 U.S.C. § 231(a)(3) prohibits someone from obstructing, impeding, or interfering with any law enforcement officer "lawfully engaged in the lawful performance of his official duties" during the commission of a civil disorder.  18 U.S.C. § 231(a)(3).  Section 231, which is much closer in wording to § 1501 than the ordinance challenged in City of Houston, has been found to be not facially overbroad by courts across the country.  See e.g., Pugh, 90 F.4th at 1330-31 ("[i]t is obvious" that Section 231(a)(3) does not "criminalize[] a substantial amount of protected expressive activity," and instead "focuse[s] on obstructive conduct") (emphasis omitted); United States v. Mechanic, 454 F.2d 849, 852-53 (8th Cir. 1971) ("[Section 231(a)(3)] does not purport to reach speech of any kind," and rather "reaches only to acts to impede, obstruct, or interfere with police officers and firemen"); United States v. Phomma, 561 F.Supp.3d 1059, 1068 (D. Or. 2021) (same); United States v. Wood, No. CR 20-56 MN, 2021 WL 3048448, at *8 (D. Del. July 20, 2021) (same); United States v. Grider, 617 F.Supp.3d 42, 52 (D.D.C. 2022); see also, Nat'l Mobilization Comm. to End War in Viet Nam v. Foran, 411 F.2d 934, 938 (7th Cir. 1969) (no "substantial constitutional question is presented by Section 231(a)(3)").

Defendant next argues that the phrase "obstructs, resists, and opposes" must be construed to include substantial amount of protected activity in light of the second sentence of § 1501, which separately criminalizes "assault[ing], beat[ing], or wound[ing]" federal officers serving or executing writs or process.  (Dkt. 55 at 28.) However, the two sentences in § 1501 serve distinct purposes and criminalizes distinct conduct. The first sentence, which criminalizes "obstruct[ing], resist[ing], and oppos[ing]," covers physical *obstruction*, while the second sentence "assault[ing], beat[ing], or wound[ing]" covers physical *violence*.  To illustrate this difference using

19

the facts of this case, if defendant punched a federal officer executing the warrant, he would be charged for assaulting a federal officer executing a search warrant under the second sentence of § 1501.  But because he used his body to block the entrance to the Warrant Location, thereby impeding law enforcement vehicles entrance into the Warrant Location, he is charged with "obstructing" the execution of a search warrant under the first sentence of § 1501.

Defendant's own case citations make this distinction clear.  In Miller v. United States, cited by defendant, the Fifth Circuit found that because the second paragraph of section 1501 forbids physical violence, "the broader terms of the first paragraph, [forbid] those acts which constitute obstruction, resistance or opposition but which do not involve physical violence."  230 F.2d 486, 488 (5th Cir. 1956).  In United States v. Giampino, also cited by defense, the Second Circuit came to a similar conclusion, finding that the "second paragraph of section 1501 requires proof of force" while the first paragraph dealt with "willful and knowing obstruction" without force.  680 F.2d 898, 902 (2d Cir. 1982); see also, United States v. McDonald, 26 Fed.Cas. 1074, 1077 (C.C.E.D. Wis. 1879) (interpreting the terms obstructs or opposes "to not necessarily imply the employment of direct force" but instead include "passive, indirect or circuitous impediments to the service or execution of process").

For these reasons, the plain text of § 1501 is not facially overbroad.  Nothing in the plain text of the statute is aimed at prohibiting speech; instead, the statute prohibits obstructive conduct.

          2.     Defendant Fails to Establish That a Substantial Number of Instances Exist In Which § 1501 Cannot Be Applied Constitutionally

In addition to the plain text clearly prohibiting obstructive conduct, defendant also cannot identify any actual instances in which § 1501 is used to prosecute speech.

Instead, defendant largely points to hypothetical examples about how § 1501 might regulate protected speech.  For example, defendant argues that "preemptive media reporting on a high-profile arrest could oppose or obstruct the execution of the warrant."

20

(Dkt. 55 at 30.)  But "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984); see also Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973) ("[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.").  And notably, defendant does not provide any examples of actual prosecutions under § 1501 in which speech has been penalized.

Defendant argues that § 1501's application to protected speech is not limited to mere hypotheticals because of his prosecution under § 1501 in this case.  (Dkt. 55 at 23.)  To advance this argument, defendant repeatedly mischaracterizes the government's position as being that "Mr. Huerta's brief sit-in and picketing activities, as well as protesting in front of the front gate, constitute obstruction and resistance of the execution of the search warrant."  (Dkt. 55 at 27.)  However, defendant is not being charged for protesting, or for any speech or criticism he uttered.  Rather, defendant violated § 1501 by *physically blocking* the entrance to the Warrant Location and by aiding and abetting other individuals, through his words and conduct, to do the same, including by sitting down on the ground to block the entrance to the Warrant Location.  This conduct is not protected by the First Amendment merely because these actions were taken with the intent to communicate a message. See United States v. Gregg, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message.") (emphasis added); see also, Cousins v. Terry, 721 F.Supp.426, 432 (N.D.N.Y. 1989) (enjoining demonstrators from "obstructing ingress into or egress from any facility at which abortions").  As the Second Circuit put it:

> The distinction between regulating speech and regulating conduct that has expressive components is fundamental. It is why government can validly prohibit a range of activities ranging from secondary boycotts, through public nudity, to political assassinations. It would be wrong to say that those activities are not or

cannot be forms of expression. But the fact that they have expressive aspects does not exempt them from governmental prohibition.

United States v. Weslin, 156 F.3d 292, 297 (2d Cir. 1998) (citations omitted); see also United States v. Osinger, 753 F.3d 939, 944 (9th Cir. 2014) (holding that a prohibition on cyberstalking not unconstitutional because statute prohibited "harassing and intimidating," which was a course of conduct that caused distress and not protected speech).

Here, defendant is being prosecuted for violating § 1501 because of his obstructive conduct, not for message that was associated with that conduct. That distinction is fundamental. Because of that fundamental distinction, defendant cannot establish that a substantial number of instances exist in which § 1501 cannot be applied constitutionally.

### 3. The Scienter Requirement in § 1501 Limits, Not Broadens, the Scope of the Statute

Finally, § 1501 is also not facially overbroad because it contains a scienter requirement of knowingly and willfully. 18 U.S.C. 1501.

Defendant argues that the scienter requirement in § 1501 "creates additional unconstitutional breadth," but does not cite to any support for this assertion. (Dkt. 55 at 29:3-5.) Nor could he since it is well established that scienter requirements narrow the scope of a criminal statute, not broadens it. See e.g., United States v. Dhingra, 371 F.3d 557, 561–562 (9th Cir.2004) ("the scienter and intent requirements of the statute sufficiently limit criminal culpability to reach only conduct outside the protection of the First Amendment."); United States v. Soda, No. 21-50025, 2022 WL 3151962, at *2 (9th Cir. Aug. 8, 2022) (finding special condition of supervised release not fatally overbroad or vague because of inclusion of scienter requirement.); United States v. Edwards, 783 F. App'x 540, 545 (6th Cir. 2019) ("the scienter requirements of "knowingly" and "with intent to retaliate" dramatically narrow the universe of possible offending activity"); see also, Osborne v. Ohio, 495 U.S. 103, 147, 110 S. Ct. 1691,

1716, 109 L. Ed. 2d 98 (1990) ("adding an intent requirement was part of the process of

narrowing an otherwise overbroad statute") (J. Brennan dissenting.)

Despite this, defendant nonetheless argues that the scienter requirement in § 1501

creates "content-based restrictions" because the statute allegedly criminalizes intentional

opposition to federal law enforcement agents.  However, this argument is without merit.

The plain language of § 1501 contains no prohibition on protected speech, let alone

specific content. 18 U.S.C. § 1501.  In fact, similar challenges have been raised and

rejected against the Freedom of Access to Clinic Entrances Act ("FACE Act"), which

similarly prohibits "physical obstruction… [that] interferes…with obtaining or providing

reproductive health services." 18 U.S.C. § 248.  For example, in Weslin, defendants

were part of an anti-abortion group that staged a sit-in to block the entrance to an

abortion clinic and were convicted of violating the FACE Act since their obstruction of

the entrance interfered with reproductive health services. Weslin, 156 F.3d at 296. Much

like defendant argues here, the defendant in Weslin argued that the FACE Act was

content-based since the statute "regulated the expression only of people who are

ideologically or morally opposed to abortion." Id. at 296. The court rejected that

argument and found that the FACE Act was not content-based since, much like § 1501,

the statute regulated conduct and not a particular form of speech.  Id. ("Contrary to the

defendants' assertion, the FACE Act prohibits obstruction of reproductive health clinics

regardless of the issue that animates the demonstrators.")

The facts here are strikingly similar to that of Weslin and its reasoning applies in

full force. Defendant violated § 1501 by obstructing the entrance to the Warrant

Location. "Both by its language and its application, [section 1501] seeks to govern all

people who obstruct the [execution of a search warrant]." Weslin at 296.  Contrary to

defendant's bald assertions, if a supporter of federal law enforcement engaged in

"similarly disruptive" behavior, see Mot. at 19-20, that activity would be covered by

§ 1501 regardless of if the individual supported or antagonized law enforcement since

23

the § 1501 prohibits conduct, not speech.  Accordingly, § 1501 is not a content-based or viewpoint regulation.

## B.    Defendant's Vagueness Challenge Under the First and Fifth Amendments Also Fail

Defendant next argues that § 1501 is unconstitutionally vague under the First and Fifth Amendments. These arguments fail because defendant's conduct in blocking the entrance to the Warrant Location is clearly proscribed by § 1501.  Therefore, the statute is not vague as-applied to his conduct here.  Because § 1501 is not vague as-applied to defendant, he also cannot claim § 1501 is facially vague.

### 1.    Section 1501 is Not Vague As-Applied To Defendant

As-applied, a criminal statute is only considered unconstitutionally vague if (1) it "fails to give ordinary people fair notice of the conduct it punishes," or (2) it is "so standardless that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015).  "Whether a provision is vague for lack of fair notice is an objective inquiry." Kashem v. Barr, 941 F.3d 358, 371 (9th Cir. 2019).  There is no requirement that defendant know just how far the law sweeps, as long as it clearly proscribes the conduct charged.  "The question, therefore, is whether a reasonable person would have known" defendant's "alleged conduct fell within" § 1501's criteria. Id. (citing Holder v. Humanitarian L. Project, 561 U.S. 1, 18 (2010)).

Such a challenge should be upheld "only if the enactment is impermissibly vague in all of its applications." Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 494-95 (1982).  A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. Id. at 495.  As a result, a void for vagueness analysis begins with a review of defendant's conduct; if it is "clearly proscribed" by the challenged statute, a defendant is not permitted to make a facial challenge to the statute's vagueness. Id.

Here, the conduct alleged in the complaint and information fall squarely within the prohibitions set forth in § 1501.  During the execution of a search warrant, defendant

intentionally blocked the only available entrance of the Warrant Location. He did this by sitting down and walking in circles directly in front of the entrance of the Warrant Location, making it impossible for any law enforcement vehicles to enter or exit, without defendant moving.  In addition, he also successfully encouraged other individuals to join him in blocking the entrance of the Warrant Location in the same manner eventually contributing to LAPD declaring a riot at the Warrant Location.  As defendant concedes in the Motion, defendant was told explicitly he "shouldn't block or impede the [law enforcement vehicle] that would be arriving."  (Dkt. 55 at 14.)  Despite this clear instruction that blocking the van would be unlawful, when the law enforcement vehicle attempted to enter the Warrant Location, defendant stepped in front of it to block its path.  When another officer attempted to push the defendant out of the way of the law enforcement vehicle, defendant refused and anchored position even further.  During this time, other individuals converged on the van and blocked its pathway into the Warrant Location, and one of the tires to the law enforcement vehicle was slashed.  A reasonable person would have known that defendant's conduct would fall under § 1501's criteria.

Defendant also argues "the sphere of the statute's temporal and geographic coverage…provides no notice to Mr. Huerta on how close his activities must be to the officer executing or serving the writ or process."  (Dkt. 55 at 27.)  In support of this argument, defendant poses a number of hypotheticals, such as whether his conduct would be proscribed by § 1501 if he "was across the street from the gate" or "not in front of the van." (Id.)  However, the Court need not engage in those hypotheticals because that is not the conduct defendant is alleged to have committed in this case.  Defendant was not across the street from the gate of the Warrant Location; he was directly blocking the driveway.  He was not merely present during a demonstration; he encouraged other individuals to block the driveway with him as well as the pathway to the van.

Finally, "under [Supreme Court] precedents, a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion."  McFadden v. United States, 576 U.S. 186, 197 (2015)

(cleaned up); see also, United States v. Kahre, 737 F.3d 554, 572 (9th Cir. 2013) (finding that the "inclusion of a [willfulness] scienter requirement mitigates a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed") (cleaned up); United States v. Navarro, No. 25-661, 2025 WL 3486892, at *2 (9th Cir. Dec. 4, 2025) (same).

That principle controls here. A defendant can be found guilty of violating § 1501 only if the jury finds that he acted "knowingly" and "willfully" to obstruct, resist, or oppose. 18 U.S.C. § 1501. The statute does not criminalize accidental conduct, but instead a deliberate act to obstruct. As a result, to the extent there is any vagueness in the statute, the scienter requirement mitigates such vagueness. See Kahre, 737 F.3d at 572.

### 2. Because § 1501 Is Not Vague as Applied To Defendant, He Cannot Raise a Facial Vagueness Challenge.

Because the statute is not vague as applied to defendant, defendant is not entitled to raise a facial vagueness challenge. Holder v. Humanitarian L. Project, 561 U.S. 1, 19 (2010); Kashem v. Barr, 941 F.3d 358, 364 (9th Cir. 2019) ("Because we conclude the No Fly List criteria are not vague as applied, we decline to reach the plaintiffs' facial vagueness challenges.").

"[A]s a general matter, a defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute." Kashem, 941 F.3d at 375. The defendants in Kashem argued that Johnson and Dimaya abolished this rule regarding facial challenges. The Ninth Circuit disagreed, noting that those cases did not explicitly address the rule. Id. Rather, a defendant must show that, as in Johnson and Dimaya, their case warrants an exception to the general rule. Id. at 376. In holding that the defendants in Kashem had made no such showing, the Ninth Circuit distinguished the statute at issue (which was used to place defendants on the No Fly List) from Johnson and Dimaya, which dealt with "residual clauses. . . plagued by such indeterminacy that they might be vague even as applied to the

challengers [and] . . . did not lend themselves easily to a traditional as-applied analysis." Id. at 377; see also Marquez-Reyes v. Garland, 36 F.4th 1195, 1207 (9th Cir. 2022) (foreclosing facial vagueness challenge where statute was not vague as applied to defendant's conduct and there were no "exceptional circumstances" such as applied under Johnson).  In so holding, the Ninth Circuit noted that the defendants in Kashem raised a "straightforward vagueness challenge to the No Fly List criteria, which are applied using a risk determination based on real-world conduct" in contrast to the theoretical nature of the categorical approach used in Johnson and Dimaya.

Here, defendant has not argued, let alone shown, that § 1501 warrants an exception to the facial challenge rule.  Unlike in Johnson and Dimaya, whose use of the categorical approach "require[d] the judge to imagine how the idealized ordinary case of the crime subsequently plays out," this Court can consider the underlying conduct in this case.  See id. at 377 (quoting Johnson, 135 S.Ct at 2557-58).  And even if this Court were to entertain a facial challenge, it fails because § 1501 "provide[s] a person of ordinary intelligence fair notice of what is prohibited" and has sufficient standards to prevent "discriminatory enforcement."  United States v. Harris, 705 F.3d 929, 932 (9th Cir. 2013).  As set forth above, the § 1501 plainly includes a scienter requirement: the obstruction itself must be done "knowingly and willfully."  18 U.S.C. § 1501.  Thus, persons of ordinary intelligence understand that they will not be penalized for accidentally blocking law enforcement during the execution of a search warrant, but they will be penalized for doing so knowingly and willfully.  See, e.g., United States v. Triumph Cap. Grp., Inc., 260 F.Supp.2d 470, 476 (D. Conn. 2003) (holding § 1503 not unconstitutional because of scienter requirement); United States v. Bonds, 730 F.3d 890, 897 (9th Cir. 2013) (same), reversed on other grounds on reh'g en banc, 784 F.3d 582 (9th Cir. 2015).

For the foregoing reasons, defendant's motion is not unconstitutionally vague as applied to him and he is not entitled to raise a facial challenge of vagueness.

3.    Defendant's Criticisms of Specific Federal Officers and Agents Are
      Irrelevant To An As-Applied Vagueness Challenge.

Finally, defendant attempts to obscure his clearly obstructive conduct by referencing what one agent, among the 56 executing the search warrant, stated in an interview about what he subjectively believed constituted criminal conduct in *other* investigations and criminal matters. (See Mot. at 26.).  However, what this agent believed might constitute criminal conduct in other investigations has no bearing as to whether § 1501 is vague as-applied to defendant, nor does it inject vagueness into an otherwise clearly worded statute.  Even if it did, this agent's subjective beliefs on other investigations cannot be imputed to the federal government's prosecution of defendant here.  The Court should reject defendant's attempts to conflate defendant's clear obstructive conduct in this case, with the subjective beliefs of other federal agents in other cases.

## V.    THERE IS NO BASIS TO DISMISS THE INFORMATION UNDER THE COURT'S SUPERVISORY POWERS

Defendant lastly argues that the Court should dismiss the Information under its supervisory powers because defendant was allegedly arrested with excessive force, in violation of his First and Fourth Amendment rights.  (Dkt. 55 at 38.)[5]  This argument should be rejected because the arrest of defendant for obstructing the entrance to the Warrant Location did not violate his First or Fourth Amendment rights, and even if it did, defendant has not alleged (let alone shown) any prejudice to his defense of this charge.

"If the government's investigatory or prosecutorial conduct is reprehensible, but not quite a violation of due process, the district court may nonetheless dismiss an indictment under its supervisory powers."  United States v. King, 200 F.3d 1207, 1214

---

[5] Dismissal pursuant to a court's supervisory powers is a distinct doctrine from dismissal due to a serious due-process violation.  See, e.g., Bundy, 968 F.3d at 1030. Defendant argues only the former, not the latter.

28

(9th Cir. 1999). "However, these supervisory powers. . . are more often referred to than invoked," id., and the circumstances under which the Court may exercise its supervisory power are "substantially limited." United States v. Tucker, 8 F.3d 673, 674 (9th Cir. 1993) (en banc). "A district court may dismiss an indictment under its inherent supervisory powers (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." United States v. Bundy, 968 F.3d 1019, 1030 (9th Cir. 2020) (internal quotation marks omitted). "Even within these limited grants of power, a federal court may not exercise its supervisory authority to…dismiss an indictment absent prejudice to the defendant." United States v. Tucker, 8 F.3d 673, 674 (9th Cir. 1993) (emphasis added). The Ninth Circuit in Tucker "emphasized the importance of prejudice as a trigger to the exercise of supervisory power." Id. at 675. In other words, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of N.S. v. United States, 487 U.S. at 259–63 (1988) (internal quotation marks omitted).

Here, not only was there no First Amendment or Fourth Amendment violation, but defendant has not suffered any prejudice with respect to his defense in this case.

       1.    Defendant's First Amendment Rights Were Not Violated When He Was Arrested

Defendant first argues that his First Amendment rights were violated when he was arrested. Much of this claim is a regurgitation of the arguments addressed in his constitutional challenges to § 1501 – that he was arrested for his speech and not because he blocked the entrance to the Warrant Location. For the same reasons discussed above, merely because defendant's obstructive conduct was coupled with an anti-ICE message does not make that conduct protected by the First Amendment. See, e.g., Gregg, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that…obstruct are not protected by the First

Amendment, whether or not such conduct communicates a message."); Weslin, 156 F.3d 292, 297 (sit-in blocking entrance to abortion clinic not protected speech)

Perhaps recognizing that being arrested for blocking the entrance to a search warrant location is not a violation of the First Amendment, defendant speculates that he was retaliated against by the officers that arrested him. Defendant claims he was retaliated against because he was "heckling" two specific officers and because one of these agents has expressed an antagonistic view towards protestors in his subsequent interviews. However, the timing of defendant's arrest belies any retaliatory motivation. These officers did not arrest defendant when he was "heckling" them, insulting them, or yelling obscenities at them, something that would have occurred much earlier had those agents intended on retaliating against defendant. Instead, defendant was only arrested, as he was warned repeatedly he would be, when the law enforcement van attempted to enter the Warrant Location, and he blocked its path. There is nothing retaliatory about warning an individual they will be arrested if they block the path of a law enforcement vehicle and then arresting that individual when they ignore those instructions and block that path any ways.

Nor was defendant singled out as he claims in his motion. While defendant claims these officers made a "beeline" to move defendant out of the way of the law enforcement vehicle, he ignores the fact that (1) he was blocking the vehicle, so moving him out of the way was a reasonable step; and (2) reasonable force was also used to move *other* individuals who were similarly blocking the path of the law enforcement vehicle. The officers on the scene were outnumbered by those blocking the driveway; it makes sense that they would prioritize the individuals in the van's path. In fact, once defendant was no longer blocking the path of the van, the officer that pushed defendant immediately turned around and focused his attention on the other individuals blocking the path of the van. This shows that the officers were not retaliating against defendant, they were just trying to clear the path of the van.

2. <u>Defendant's Fourth Amendment Rights Were Not Violated When He Was Arrested</u>

Defendant next argues that his Fourth Amendment rights were violated when he was arrested for blocking the path of the law enforcement vehicle because the officers effectuating the arrest used excessive force by pushing defendant and wiping pepper spray on his face to allow the agents to effectuate the arrest.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. 386, 395-97 (1989). The "reasonableness" standard is an objective one considered from the perspective of a "reasonable officer on the scene." <u>Id</u>. The standard does not require police officers to use the "least restrictive means of responding to an exigent situation; they need only act within the range of conduct [the law identifies] as reasonable." <u>Scott v. Henrich,</u> 39 F.3d 912, 915 (9th Cir. 1994). All determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396–97.

Here, before using any force, federal law enforcement repeatedly instructed the defendant to "get out of the way." When defendant ignored those commands, the officers used reasonable force, but use of reasonable force did not start with bringing defendant to the ground or wiping defendant's face with pepper spray.  Instead, to prevent defendant from obstructing the path of the law enforcement vehicle, officers first attempted to lightly push defendant out of the way of the vehicle. The first push was not strong enough to clear defendant from the driveway; instead, it merely caused defendant to take a step back.  At that point, defendant resisted being pushed out of the way and anchored himself so as to stay positioned in the driveway of the Warrant Location.  Only after defendant resisted the first light push did the officer deliver a harder push, knocking defendant off of his feet and onto the ground. After that, the officer did not interact with

defendant again; instead he turned around and attempted to move other individuals from the path of the van. While that officer dealt with other protestors, another agent attempted to effectuate an arrest of defendant, but defendant intentionally made it difficult by resisting being handcuffed and resisting the agent's attempts to get defendant to stand back up on his feet. (Dkt. 55, Ex. N.) Because of that resistance, the agent then wiped defendant's face with a limited amount of pepper spray, causing defendant to loosen his body, and allowing him to be handcuffed and transported away from the scene. At that point, the agents provided defendant with medical care and water, and did not use any additional force. (Ex. 4 at 3.)

Defendant cites to Young and Headwater number for the proposition that the use of pepper spray is unreasonable when officers had "control over the protestors." But both of those cases are distinguishable here. First, in both of those cases, the law enforcement officer's use of pepper spray was much more severe than the single wipe at issue here. Young v. Cnty. of Los Angeles, 655 F.3d 1156, 1163 (9th Cir. 2011) (officer pepper spraying and striking with a baton an individual who was eating broccoli in a park alone); Headwaters Forest Def. v. Cnty. of Humboldt, 276 F.3d 1125, 1130 (9th Cir. 2002), as amended (Jan. 30, 2002) (law enforcement's "repeated" use of "full spray blasts of [pepper spray], not just Q-tip applications" constitute excessive force.). Here, unlike in those cases, federal agents did not strike defendant nor did they use a "repeated" amount of pepper spray, or use "full blasts".

Moreover, unlike both Young and Headwater, the agents here did not have control over either defendant prior to the use of pepper spray or situation in general. Young, 655 F.3d at 1163 (officer dealing with single individual peacefully eating broccoli); Headwaters, 276 F.3d at 1130 (finding pepper spray unnecessary "because the officers had control over the protestors"). In this case, not only was defendant himself resisting being arrested until after being wiped with pepper spray, but the agents were surrounded by dozens of individuals hostile to them, at least some of which engaged in destructive actions, like slashing the law enforcement van's tires while the defendant was

being detained.  After the law enforcement van made it through the front gate, nearly all of the protestors quickly converged and surrounded the agent trying to detain defendant on the ground.  In those circumstances, the agents needed to act quickly to restrain defendant and remove him from the crowd for everyone's safety.  Then, as soon defendant and the agents were removed from the chaos of the crowd – which soon after turned into a riot – the agents provided defendant with medical care and water in order to minimize the effects of the pepper spray.  Compare Ex. 4 at 3 (defendant being offered water and medical care) with Headwaters, 276 F.3d at 1131 (finding refusal to provide water after spray clearly excessive).

Under these circumstances, the arresting officers' conduct does not constitute excessive force.

### 3.    Dismissal Is Not the Appropriate Remedy Because Defendant Was Not Prejudiced

Even if the Court finds a violation of defendant's constitutional rights, which it should not, dismissal is not warranted here because defendant has not argued or established that he has been prejudiced from those alleged violations. The lack of prejudice is fatal to his request for dismissal.

Because it is a drastic step, dismissing an indictment is a disfavored remedy. United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985) An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. United States v. Crews, 445 U.S. 463, 474, 100 S. Ct. 1244, 1251, 63 L. Ed. 2d 537 (1980).  A "defendant must demonstrate prejudice before the court may exercise its supervisory powers to dismiss an indictment." United States v. Struckman, 611 F.3d 560, 574–75 (9th Cir. 2010). For example, in Struckman, the Ninth Circuit found constitutional and due process violations, but nonetheless declined to overturn a conviction because the of the lack of "trial prejudice" arising from those violations. Struckman, 611 F.3d 560, 577 (9th Cir. 2010); United States v. Sears, Roebuck & Co.,

719 F.2d 1386, 1392 (9th Cir. 1983) ("defendant failed to demonstrate the prejudice necessary to justify dismissal of the indictment against it on constitutional grounds.").

Here, even if the Court were to find defendant's constitutional rights were violated, there is no prejudice to him in defending against the charges in this case. Accordingly, given that defendant does not argue that he has suffered any prejudice, the Court should not exercise its supervisory powers to dismiss the information.

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the Motion to Dismiss the Case for Constitutional Violations (Dkt. 55) and Motion to Dismiss for Failure to State an Offense (Dkt. 56).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The undersigned, counsel of record for the United States of America, certifies that this brief contains 10,565 words.

Dated: January 13, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


            /s/
NEIL P. THAKOR
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA