TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
NEIL P. THAKOR (Cal. Bar No. 308743)
Assistant United States Attorney
Major Crimes Section
CHRIS S. BULUT (Cal. Bar No. 352016)
Assistant United States Attorney
General Crimes Section
    1300/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-6595 / 6738
    Facsimile:    (213) 894-0141
    E-mail:      chris.bulut@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>DAVID JOSE HUERTA,<br><br>          Defendant. | No. 25-cr-00841-SB<br><br>GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST SUPERSEDING INFORMATION<br><br>Hearing Date:    August 4, 2026<br>Hearing Time:    8:00 a.m.<br>Location:        Courtroom of the Hon.<br>                      Stanley Blumenfeld. Jr. |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Neil Thakor and Chris S. Bulut, hereby files its Opposition to defendant David Jose Huerta's Motion to Dismiss the First Superseding Information (Dkt. 113 ("Motion").)

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 29, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
NEIL THAKOR
CHRIS S. BULUT
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................1

    A.    Federal Agents Obtain a Warrant to Search Ambiance Apparel and Seize Evidence of Federal Crimes ..........................................................1

    B.    Federal Agents Plan a Full-Day Operation to Execute the Search Warrant ...............................................................................................2

    C.    Federal Agents Begin the Operation to Execute the Search Warrant and Seize Evidence ...............................................................................3

    D.    Individuals, Including Defendant, Block the Entrance to the Warrant Location .............................................................................................4

    E.    Defendant and Others Block Another Law Enforcement Vehicle from Entering the Warrant Location, and Defendant Is Arrested .......................7

    F.    LAPD Is Called and Federal Agents and Officers Evacuate the Warrant Location ..................................................................................10

III.    THE FIRST SUPERSEDING INFORMATION SUFFICENTLY CHARGES DEFENDANT WITH A VIOLATION OF 18 U.S.C. § 1501 .........11

    A.    The FSI Sets Forth a Plain, Concise, And Definite Written Statement of the Essential Facts Constituting the Offense Charged..........................11

    B.    The FSI Sufficiently Alleges a Violation of Section 1501 ........................14

        1.    Special Agent S.T. Was Obstructed By Defendant While Executing The Search Warrant ..........................................................17

        2.    Contractor B.G. Was Obstructed While Assisting the Execution of the Search Warrant ................................................17

        3.    All Federal Agents Involved In The Operation Were Obstructed by Defendant ................................................................19

    C.    The FSI Does Not Criminalize Defendant's Protective Activity...............20

IV.    DEFENDANT'S CONSTITUTIONAL CHALLENGES TO SECTION 1501 MUST FAIL ...............................................................................23

    A.    Section 1501 Is Not Facially Overbroad..................................................23

        1.    The Plain Text of Section 1501 Prohibits Obstructive Conduct, Not Protected Speech...............................................................24

        2.    The Scienter Requirement in Section 1501 Limits the Scope of the Statute And Does Not Create Content Based Restrictions ........28

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                                                      PAGE

      3.    Defendant Fails to Establish That a Substantial Number of Instances Exist In Which Section 1501 Cannot Be Applied Constitutionally ................................................................................. 30

   B.    Defendant's Vagueness Challenge Under the First and Fifth Amendments Also Fail ............................................................... 32

      1.    Section 1501 is Not Vague As-Applied To Defendant .................... 32

      2.    Because Section 1501 Is Not Vague as Applied to Defendant, He Cannot Raise a Facial Vagueness Challenge. ............................. 35

V.     CONCLUSION................................................................................. 36

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                      PAGE

CASES:

Avery v. King,
  110 F.3d 12 (6th Cir. 1997)..................................................................31
Broadrick v. Oklahoma,
  413 U.S. 601 (1973) ...........................................................................30
City of Houston v. Hill,
  482 U.S. 451 (1987) ................................................................23, 25, 26
Coleman v. United States,
  268 F. 468 (6th Cir. 1920)..................................................................32
Hamling v. United States,
  418 U.S. 87 (1974)..............................................................................11
Hill v. Colorado,
  530 U.S. 703 (2000) ...........................................................................21
Holder v. Humanitarian L. Project,
  561 U.S. 1 (2010) ........................................................................33, 35
Illinois v. Trump,
  2025 WL 2886645 (N.D. Ill. Oct. 10, 2025)......................................34
Johnson v. United States,
  576 U.S. 591 (2015) ...........................................................................33
Kashem v. Barr,
  941 F.3d 358 (9th Cir. 2019) .......................................................33, 35
Madsen v. Women's Health Ctr., Inc.,
  512 U.S. 753 (1994) ....................................................................21, 22
Marquez-Reyes v. Garland,
  36 F.4th 1195 (9th Cir. 2022)............................................................35
McFadden v. United States,
  576 U.S. 186 (2015) ...........................................................................35
Members of City Council of L.A. v. Taxpayers for Vincent,
  466 U.S. 789 (1984) ...........................................................................30
Michigan v. Summers,
  452 U.S. 692 (1981) ...........................................................................16
Miller v. United States,
  230 F.2d 486 (5th Cir. 1956)..............................................................28
N.Y. State Club Ass'n v. City of New York,
  487 U.S. 1 (1988) ...............................................................................23
Osborne v. Ohio,
  495 U.S. 103, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990) ...................29
People v. Vasquez,

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                      PAGE

   465 Mich. 83 (2001) ..................................................................................25

Perez Cruz v. Barr,
   926 F.3d 1128 (9th Cir. 2019) ........................................................18, 19

Sanchez v. Canales,
   574 F.3d 1169 (9th Cir. 2009) ................................................................16

Schenck v. Pro-Choice Network Of W. New York,
   519 U.S. 357 (1997) ................................................................................21

Sparks v. United States,
   90 F.2d 61 (6th Cir. 1937) ......................................................................32

Tovar v. City of Fresno,
   No. 106CV00351LJOGSA, 2007 WL 3407415 (E.D. Cal. Nov. 13, 2007).....16, 17, 18

United States v. Bonds,
   730 F.3d 890 (9th Cir. 2013) ..................................................................36

United States v. Boren,
   278 F.3d 911 (9th Cir. 2002) ..................................................................15

United States v. Carpenter,
   2012 WL 292480 (W.D. La. Jan. 31, 2012) ..........................................31

United States v. Centeno,
   793 F.3d 378 (3rd Cir. 2015) ............................................................20, 22

United States v. Davis,
   336 F.3d 920 (9th Cir. 2003) ..................................................................11

United States v. Dhingra,
   371 F.3d 557 (9th Cir.2004) ...................................................................28

United States v. Edwards,
   783 F. App'x 540 (6th Cir. 2019) ...........................................................28

United States v. Gregg,
   226 F.3d 253 (3d Cir. 2000) ...................................................................20

United States v. Giampino,
   680 F.2d 898 (2d Cir. 1982) ...................................................................28

United States v. Schaffner,
   715 F.2d 1099 (6th Cir. 1983) ................................................................32

United States v. Grider,
   617 F.Supp.3d 42 (D.D.C. 2022)............................................................27

United States v. Hansen,
   599 U.S. 762 (2023) ................................................................................22

United States v. Harris,
   705 F.3d 929 (9th Cir. 2013)...................................................................36

United States v. Kahre,

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                                                PAGE

737 F.3d 554 (9th Cir. 2013) ..........................................................................35
United States v. Mechanic,
    454 F.2d 849 (8th Cir. 1971) ......................................................................27
United States v. Navarro,
    2025 WL 3486892 (9th Cir. Dec. 4, 2025) ................................................35
United States v. Nukida,
    8 F.3d 665 (9th Cir. 1993) ..........................................................................15
United States v. Orozco,
    858 F.3d 1204 (9th Cir. 2017) ....................................................................19
United States v. Phomma,
    561 F.Supp.3d 1059 (D. Or. 2021) .............................................................27
United States v. Pugh,
    90 F.4th 1318 (11th Cir.) .................................................................24, 25, 26
United States v. Schaffner,
    715 F.2d 1099 (6th Cir. 1983) ....................................................................32
United States v. Soda,
    No. 21-50025, 2022 WL 3151962 (9th Cir. Aug. 8, 2022).........................28
United States v. Triumph Cap. Grp., Inc.,
    260 F.Supp.2d 470 (D. Conn. 2003) ..........................................................36
United States v. Warnagiris,
    699 F.Supp.3d 31 (D.D.C. 2023).................................................................11
United States v. Weslin,
    156 F.3d 292 (2d Cir. 1998) ..................................................................21, 29
United States v. Williams,
    553 U.S. 285 (2008) ...........................................................................23, 24, 25
United States v. Wood,
    No. CR 20-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021)................27
Viet Nam v. Foran,
    411 F.2d 934 (7th Cir. 1969) ......................................................................27
Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,
    455 U.S. 489 (1982) ..............................................................................33, 34
Virginia v. Hicks,
    539 U.S. 113 (2003) ....................................................................................23
Yanez-Marquez v. Lynch,
    789 F.3d 434 (4th Cir. 2015) ............................................................16, 18, 20

STATUTES

8 U.S.C. § 1324A .............................................................................................1, 2

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                                          PAGE

18 U.S.C. §1114 .................................................................................................................3
18 U.S.C. § 231 ................................................................................................................27
18 U.S.C. § 231(a)(3) .......................................................................................................26
18 U.S.C. § 248 ................................................................................................................29
18 U.S.C. § 1001 ...............................................................................................................2
18 U.S.C. § 1015(e) ..........................................................................................................2
18 U.S.C. § 1071 ..............................................................................................................27
18 U.S.C. § 1073 ..............................................................................................................27
18 U.S.C. § 1501 ........................................................................................................passim
18 U.S.C. § 1546 ...............................................................................................................2
18 U.S.C. § 2331 ..............................................................................................................27
18 USC § 2332 .................................................................................................................27
42 U.S.C. § 408(a)(7)(B) ..................................................................................................2
8 U.S.C. § 1324(a) ............................................................................................................2

RULES

Fed. R. Crim P. 7(c)(1) ........................................................................................11, 12, 14

OTHER AUTHORITIES

Fugitive Slaves, 56 Clev. St. L. Rev. 83 (2008) ...............................................................30

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. INTRODUCTION

Defendant David Huerta ("defendant") physically blocked the entrance to a business that was being searched pursuant to a lawful search warrant signed by a federal judge.  He did this by positioning himself in the driveway to the entrance, refusing instructions to move out of that driveway so vehicles could pass, and encouraging others in crowd to do the same, which many did.  As a result of this conduct, agents who were trying to execute the search warrant were obstructed from re-entering the business to perform their duties. Federal personnel had to be re-directed from searching the premises to securing the entrance from being blocked.  And ultimately, the execution of the warrant needed to be cut short because the agents were evacuated from the premises because of the crowd.

As set forth in the First Superseding Information, because defendant intentionally blocked the entrance used by agents executing a search warrant, defendant is being charged with a misdemeanor violation of 18 U.S.C. § 1501, which prohibits obstructing, resisting or opposing a federal agents executing a search warrant.  This obstructive conduct is not protected by the First Amendment merely because defendant engaged in it to express his views on immigration enforcement. For that reason, defendant's motion to dismiss the superseding information should be denied.

## II. BACKGROUND

### A. Federal Agents Obtain a Warrant to Search Ambiance Apparel and Seize Evidence of Federal Crimes

In 2025, an I-9 audit[1] was conducted on Ambiance Apparel, a business that had previously been convicted of eight felonies, revealing it was illegally hiring unlawful aliens as employees using fraudulent documents and stolen social security numbers. (Ex. 4 at 2-4.)  Based on the results of the audit, on June 5, 2025, federal agents sought

---

[1] An I-9 audit is a verification of workers' right to be employed in the United States (8 U.S.C. § 1324A),

and obtained a federal search warrant from Magistrate Judge Margo Rocconi to search Ambiance Apparel's business and warehouse locations and seize evidence of violations of: 8,U.S.C. § 1324(a) (Harboring and Concealing Aliens); 8 U.S.C. § 1324a (Unlawful Employment of Aliens); 18 U.S.C. § 1001 (False Statements); 18 U.S.C. § 1015(e), (False Statements Regarding Naturalization or Citizenship); 18 U.S.C. § 1546 (Fraud/Misuse of Visas or Permits); and 42 U.S.C. § 408(a)(7)(B) (Fraudulent Use of Social Security Numbers).  (See Dkt. 55-2 at 6.)  Judge Rocconi found the warrant was supported by probable cause and authorized the search.  (Id. at 1.)

The warrant authorized agents to search multiple locations for the business, including the premises on 2415 E. 15th Street, Los Angeles, California 90021 (the "Warrant Location"). (Id. at 4.)  In addition, it authorized agents to seize evidence of employment records, identification documents of the employees, and digital devices, among other things.  (Id. at 6-13.)

**B.      Federal Agents Plan a Full-Day Operation to Execute the Search Warrant**

Based on the size of the Warrant Location, the number of employees, and the items to be seized, agents planned for the execution of  the search warrant  to take an entire day.  (Ex. 4 at 1.)  The Warrant Location was an approximately 227,000 square foot warehouse and business center surrounded by high black metal perimeter fencing around a shared lot with the neighboring building.  (Dkt. 104 ("First Superseding Information" or "FSI") ¶ 3.) [2] The primary entrance to the Warrant Location was a gate at the front of the lot on 15th Street.  (Id.)  Agents anticipated that there would be over 50 individuals inside the Search Warrant Location on the day of execution.  (Id.)

Accordingly, the operation included approximately 56 federal agents or officers split up into different functions including: (a) securing the perimeter of the business; (b) detaining individuals located inside the premises; and (c) searching for evidence and

---

[2] Federal agents also obtained a separate warrant for the neighboring building, located at 2415 16th Street, Los Angeles, California 90021.

2

interviewing employees. (Dkt. 56-9.) In addition, because law enforcement also suspected a large number of employees of the business at the Warrant Location were engaged in immigration fraud, federal officials had hired a contractor to assist with the transportation of any individuals who were detained or arrested at the premises during the execution of the search.[3] (See Ex. 5 at 2.)

On June 6, 2025, between 9:00 a.m. and 9:30 a.m., federal agents served and began executing the warrant at the Warrant Location. (FSI ¶ 4.) Because the business initially denied agents entry into the location, they did not gain access to execute the warrant until after 9:30 a.m. (Id.) Federal agents gained access to Warrant Location from the front gate, while the back gate to the Warrant Location was locked with a "chain lock". (Dkt. 113-8 at 4.)

## C.    Federal Agents Begin the Operation to Execute the Search Warrant and Seize Evidence

Between 9:30 a.m. and 11:00 a.m., federal agents began executing the search warrant. This included by searching the 226,907 square foot warehouse, detaining individuals found inside, including locating those who fled and hid throughout the warehouse and others who tried to destroy evidence. (Dkt. 113-9 at 3-4.) In addition, around this time agents began collecting documentary evidence authorized for seizure by the warrant. (Id.)

Special Agent S.T. was specifically tasked with collecting evidence at the Warrant Location. At approximately 10:30 a.m., Special Agent S.T. left the Warrant Location in his black Jeep Grand Cherokee to get additional boxes from the Federal Building to collect and protect the evidence seized at the Warrant Location. (Ex. 8.) However, as outlined below, when he returned with the boxes approximately an hour later at 11:30

---

[3] Persons assisting federal officers in the performance of their official duties are generally entitle to the same legal protections as the officers performing such duties. See, e.g., 18 U.S.C. §1114 - protection of officers and employees of the United States.

3

a.m., the driveway to the entrance of the Warrant Location was blocked by a crowd of people, including defendant).

**D.    Individuals, Including Defendant, Block the Entrance to the Warrant Location**

Between 10:30 a.m. and 11:30 a.m. demonstrators began to show up at the Warrant Location and congregated near the entrance to the front gate.  During this initial period, before defendant arrived, the demonstrators did not block the driveway and regularly allowed vehicles to enter and exit the Warrant Location through the front gate:

 

(Ex. 1 at 7:30-7:35; 8:16-8:27; Ex. 2 at 4:25-5:25, 7:49-7:53, 8:22-8:26, 9:45-9:48, 11:47-11:58.)

A little before 11:30 a.m., defendant arrived at the Warrant Location.  (FSI ¶9.) He immediately positioned himself directly in middle of the driveway of the front gate blocking the path of federal agents from entering the front gate.  For example, as shown in the image below, defendant directly blocked the path of Special Agent S.T., who was attempting to re-enter the Warrant Location in his Jeep to collect documentary evidence authorized to be seized by the Warrant:



(Ex. 7.)

While at the front gate, defendant began yelling at agents inside the compound and reaching into the gate's entrance.  (Ex. 2 at 13:01 -14:42.)  Then, other individuals joined the defendant in the middle of the driveway blocking the entrance to the Warrant Location:

 

5

(Id.)

At approximately 11:54, Special Agent S.T. attempted to re-enter the Warrant Location again after circling the block several times and repeatedly calling agents at the Warrant Location. (Ex. 8; see also, Dkt. 113-4 at 8 [reporting black Jeep Grand Cherokee being blocked again from entering at 11:54 a.m.].)  In response, defendant sat down directly in the middle of the driveway to the entrance of the front gate.  (Ex. 2 at 16:26-17:11; Dkt. 113-4 at 7-8.)  Two other demonstrators joined the defendant in sitting on the ground blocking the entrance. (Id.)  Defendant repeatedly gestured and yelled commands to others, such as "sit down!", instructing them to further block the entrance and impede the agents in the performance of their official duties.  (Ex. 2 at 16:50-16:53; see also, Dkt. 113-4 at 7.)  During this time, agents told defendant and others that they "were impeding the vehicles and needed to move." (Dkt. 113-4 at 7.)  Defendant refused and continued to block the driveway preventing Special Agent S.T. from entering the Warrant Location. (Ex. 2 at 16:26-17:11; Dkt. 113-4 at 8.). Special Agent S.T. was never able to re-enter the Warrant Location to collect evidence.



(Ex. 2 at 16:30.)

At 12:00 p.m., defendant instructs the crowd to "keep making a circle" in the driveway to entrance of the Warrant Location.  (Ex. 3 at 0:03-0:07.)  A few minutes later, a black pickup truck pulled into the driveway, blocking its entrance.  (Id. at 0:27.)

6

During this time, as reflected on the video footage from an agent in the crowd, the federal officers on the scene stayed composed and largely did not interact with the demonstrators, except for occasionally instructing the crowd not to block the driveway. In an effort to deescalate the situation, one agent specifically told defendant that he was "not impeding" at that specific moment, but that he was "going to go to jail" if he continued to block the entrance as law enforcement vehicles arrived. (Dkt. 55-4 at 4.) Defendant said he would not move when law enforcement vehicles arrived because "it is public sidewalk," despite the fact that he was positioned in the working driveway. (Ex. 3 at 5:13-5:17.)

### E.    Defendant and Others Block Another Law Enforcement Vehicle from Entering the Warrant Location, and Defendant Is Arrested

At approximately 12:15 p.m., a government contractor arrived and attempted to enter the Warrant Location through the front gate. (Ex. 3 at 5:23.) The van had police lights and sirens activated was clearly associated with the search warrant execution, Agents near the fence signaled for the van to enter and opened the gate entrance for it as it pulled into the driveway. (Id. at 5:16-5:30.) As agents inside the premises opened the gate for the van to enter, the crowd, including defendant, converged in the middle of the driveway blocking its path. (Id. at 5:20-5:28.)

Because the van's entry was blocked, the agents inside the gate then left their posts and walked into the driveway in order to clear the van's path. (Id.) On the video of the incident, agents can be heard telling demonstrators repeatedly to "get out the way." (Id. at 5:20-5:23.) Multiple individuals scattered around the front of the van, and some continued to walk in front of the van as if it was not there attempting to enter. (Id. at 5:23-5:50.) Defendant saw the van with police lights activated, heard the repeated police sirens, and heard the agent's instructions to "get out the way," but he did not; instead, defendant positioned himself in front of the left bumper of the van and stodd in its path with his hands on his hips:

//

7



(Id. at 5:24.)

One officer then tried to move defendant out of the way, but defendant tensed his body and refused to be moved out of the way of the van. (Id. at 5:24-5:30.) The officer then gave defendant a harder push, which defendant still resisted and refused to move, but which eventually caused defendant to fall to the ground:

 

(Id.)

After defendant was knocked to the ground, another agent attempted to handcuff and detain defendant, while the first officer turned his attention back to the rest of the crowd:

 

(Id. at 5:30-5:45.)

Because defendant continued to resist being handcuffed, an agent wiped pepper spray on the defendant's face, which caused him to relax his body and allow himself to be handcuffed and detained. (Dkt. 113-3 at 13.) Because of its limited application, none of the other demonstrators showed any signs of being affected by the pepper spray. (See generally Ex. 3 at 5:24.) Other agents attempt to move other demonstrators away from the van. (Id.) Defendant was then brought into the Warrant Location to be given water and medical care. (Dkt. 113-8 at 5.)

During the time the van was blocked from entering the Warrant Location, one of its rear tires appeared to be punctured and flattened on the side by a demonstrator.  (Ex. 7.)  The van was ultimately able to drive inside the premises, and the gate was closed, but the van could not be used immediately to assist in the completion of the operations because of the deflated tire.  The officers on the scene spent approximately 30 minutes trying to locate a forklift to replace the tire:



(Ex. 6.)

### F.    LAPD Is Called and Federal Agents and Officers Evacuate the Warrant Location

At approximately 1:00 p.m., Los Angeles Police Department ("LAPD") arrived at the Warrant Location and formed a line protecting the entrance while federal agents evacuated the premises.  (Ex. 3 at 9:07.)  As a result, the operation to execute the search warrant had to be cut short and certain evidence and information could not be seized.  (Ex. 4 at 4.)  Because the agents could not exit the location through the front gate out of fear for their safety, they had to effectively depart out of the back gate of the Warrant Location, which was previously locked.  (Ex. 5 at 4.)

## III.   THE FIRST SUPERSEDING INFORMATION SUFFICENTLY CHARGES DEFENDANT WITH A VIOLATION OF 18 U.S.C. § 1501

On May 6, 2026, the Court ordered the government to file a superseding information to add additional particularity regarding defendant's conduct.  (Dkt. 102.) The government then filed its FSI on May 18, 2026.  (Dkt. 104.)

Defendant is charged by FSI with a violation of 18 U.S.C., § 1501 for knowingly and willfully obstructing a federal officer of the United States in serving and attempting to serve and execute a judicial writ of a court signed by a Magistrate Judge.  Defendant seeks a dismissal of the FSI on the grounds that the FSI fails to state a violation of § 1501.  His motion should be denied.

### A.   The FSI Sets Forth a Plain, Concise, And Definite Written Statement of the Essential Facts Constituting the Offense Charged

An information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim P. 7(c)(1).  "[An information] is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Davis, 336 F.3d 920, 922 (9th Cir. 2003) (an information "will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense") (internal quotation marks omitted).  With respect to statutes criminalizing obstruction of law enforcement officers in particular, federal courts have found that an information need not specify "which underlying 'act' [the defendant] committed…with the intent to obstruct, impede, or interfere with law enforcement."  United States v. Warnagiris, 699 F.Supp.3d 31, 41 (D.D.C. 2023).

In addition to the requirements of Federal Rule of Criminal Procedure 7(c)(1), in the ruling on the initial motion to dismiss, this Court also ordered the government to "more specifically identify (1) Defendant's conduct that allegedly obstructed, or aided

11

and abetted the obstruction of, the execution of the search warrant and (2) the United States officer(s) or other authorized person(s) whom Defendant is charged with obstructing." (Dkt. 102 at 4) (footnote omitted). The Court also ordered the government to specify "which of § 1501's prohibitions—resisting, obstructing, or opposing—it charges Defendant with violating." (Id. at fn. 2.)

The FSI satisfies the requirement of Rule 7(c)(1) and the Court's Order. Not only does the FSI provide a "a plain, concise, and definite written statement of the essential facts constituting the offense," Fed. R. Crim P. 7(c)(1), but it also describes with specificity defendant's criminal conduct as well as the officers he obstructed, resisted, and opposed. It was the totality of defendant's conduct, as specified in the FSI, that had led to the instant charge.

For example, the FSI states that defendant violated all three of §1501's prohibitions by "physically blocking the entrance/exit of the Search Warrant Location" in various ways, including by sitting down on the driveway, walking in circles on the driveway, refusing instructions and attempts by federal agents to clear the driveway, and encouraging and coordinating with others to block the driveway. (FSI, ¶ 11(a)-(e).)

The FSI also specified that, as a result of the defendant's obstructive conduct, (a) at approximately 11:28 a.m., special agent S.T. was impeded from entering the Warrant Location to collect evidence authorized to be seized by the Warrant; and (b) at approximately 12:15 p.m., contractor B.G. was also impeded from entering the Warrant Location by the defendant. (Id. at 5:15-20.)

In addition to identifying specific individuals executing the warrant that were obstructed by defendant's conduct, the FSI also alleges that the operation in general (and the by extensions the personnel in operation) was impeded by defendant's conduct because it endangered the safety of the agents, officers, and contractor executing the warrant, the amassed public, and significantly contributed to them being unable to complete the operation (Id. at 5:21-6:5.) This would appear to have been defendant's motivation for his illegal and unlawful conduct.

12

Despite specifying defendant's criminal conduct and identifying the agents who were obstructed by defendant's conduct, defendant nonetheless feigns that it is "impossible" to understand the charges against him from the FSI. (Mot. at 16:3.) This argument is meritless.

Defendant first argues that the FSI is deficient because it fails to identify which acts alleged in the FSI are attributed to defendant and which acts are attributed to others. (Mot. at 16:3-4.) The FSI makes clear that defendant himself physically blocked the entrance of the Warrant Location, refused instructions and other attempts to move him from blocking the entrance, instructed others to "keep making a circle," and to "sit down" on the driveway to the entrance. (FSI ¶ 11.) The fact that the FSI also states others were engaged in similar conduct does not in any way obscure the defendant's own conduct alleged in the FSI.

Defendant's next argument that the FSI requires a "matching game" for defendant to understand the allegations against him is equally meritless. (Motion at 24:18.) At its core, the FSI alleges defendant physically blocked the entrance/exit of the Warrant Location, and in turn obstructed the federal officers using that entrance, by positioning himself in the driveway to front gate blocking agents from performing their lawful duties. For defendant to understand the allegations against him, it is not necessary for the defendant to know whether he was sitting or standing, or both, in that driveway when Special Agent S.T. and contractor B.G. were obstructed from entering the Warrant Location.

Even if it were necessary, that information is already readily available to the defendant. For example, the FSI states specifically that special agent S.T. was impeded at 11:28 a.m., and there is a picture at 11:28 a.m. of defendant standing in front of the entrance/exit to the Search Warrant Location directly blocking S.T.'s vehicle and there is video of him sitting on driveway at 11:55 p.m. also directly blocking S.T.'s vehicle. (See supra, p. 4). Likewise, the FSI alleges that contractor B.G. was impeded at 12:15

13

p.m., and there are pictures and videos of the defendant standing in front of B.G.'s van at that time, exactly as alleged in the FSI.  (See supra, p.6-7.)

In short, the FSI adequately puts defendant on notice of his alleged criminal conduct and how conduct obstructed, resisted, and opposed federal agents executing the Warrant.  The FSI complies with both requirements of Rule 7(c)(1) and the Court's Order on the initial motion to dismiss.  Defendant's arguments are better suited for the jury.  He is on notice to the date and time of the offense, and the elements of the charged statute.

**B.  The FSI Sufficiently Alleges a Violation of Section 1501**

The allegations in the FSI not only set forth defendant's conduct with specificity, but it also sufficiently sets forth each essential element of § 1501, which states:

> Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States magistrate judge.

18 U.S.C. § 1501.

Here, the FSI alleges that defendant knowingly and willfully blocked the entrance to the Warrant Location, which in turn "obstructed, resisted, and opposed" federal agent S.T. and government contractor B.G., who were both engaged in the execution of the Warrant.  The FSI also alleges that defendant's conduct generally obstructed, resisted, and opposed all of the government personnel involved in executing the Search Warrant by drawing resources to the blocked entrance to respond to the safety concerns created, in part, by defendant's conduct.  Taken together, these allegations sufficiently state a claim for knowingly and willfully obstructing, resisting, and opposing officers of the United States, and other persons duly authorized, in serving, or attempting to serve and execute, a legal judicial process issued by a duly empowered United States magistrate judge.

Defendant argues that the FSI is insufficient to state a claim for a violation of § 1501 because it alleges defendant "blocked physical locations (i.e. the front gate), not the

14

officers themselves." (Motion at 25:28-26:1.)  However, this argument is belied by the plain text of the FSI and common sense.

First, the plain text of the FSI specifically identifies special agent S.T. and federal contractor B.G. as the individuals being obstructed from using the entrance that defendant was blocking.  But even beyond that specific allegation, it is common sense that by blocking the only entrance and exit at the Warrant Location, the defendant in turn was obstructing the federal agents, officers, and contractors that were using that entrance to access the Warrant Location to execute the Warrant.

To avoid the fact that the FSI specifically identifies specific individuals being obstructed, defendant next argues that special agent S.T., contractor B.G., as well as the officers at the Front Gate, were not part "execution" of the search warrant. (Mot. at 18.)

As an initial matter, this assertion is directly contrary to the allegations in the FSI, which, at this stage, the Court is required to accept as true.  United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).  The FSI alleges that "more than 50 federal agents, officers, employees, and contractors" were "all" involved in executing the Warrant. (FSI, ¶¶ 4, 8.)  This specifically included special agent S.T. and B.G. at the time they were obstructed by the defendant.  (FSI, ¶ 11.) While defendant may contest those allegations, those arguments are a "premature challenge to the sufficiency of the government's evidence." United States v. Nukida, 8 F.3d 665, 669-70 (9th Cir. 1993). The issue of whether a specific agent was engaged in the execution of the warrant is an issue of fact that should be decided by the jury, not on a motion to dismiss.

But even if the Court were to make that determination at this stage, it is apparent that each of the federal agents, contractors, and employees present at the search Warrant Location were involved in the execution of the Warrant. This specifically includes Special Agent S.T., contractor B.G., and all of the other personnel involved in the operation to execute the search warrant that day.

As a practical matter and as a matter of law, the execution of a search warrant is not limited to the discrete task of physically searching a premises and seizing evidence.

15

It necessarily involves the concerted operational efforts to protect the efficacy of the search and the safety of officers.  For example, executing a search warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  Michigan v. Summers, 452 U.S. 692, 705 (1981); see also, Sanchez v. Canales, 574 F.3d 1169, 1173 (9th Cir. 2009), overruled on other grounds.

Agents executing a warrant also "may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."  Yanez-Marquez v. Lynch, 789 F.3d 434, 471 (4th Cir. 2015) (cleaned up).  This can include evacuating the premises being searched.  See e.g., Tovar v. City of Fresno, No. 106CV00351LJOGSA, 2007 WL 3407415, at *3 (E.D. Cal. Nov. 13, 2007) (finding that the "police were legally justified in removing Ms. Tovar from the house and detaining her until the search was completed").  In sum, this precedent acknowledges that executing a search warrant requires multiple officers and is not limited to a single, discrete act, such as handing someone the warrant or seizing a specific piece of evidence.  Instead, it necessarily includes all of the other law enforcement functions designed to facilitate the safe and effective search and seizure, including: (a) securing the premises of the warrant; (b) detaining and/or evacuating individuals inside the premises; (c) protecting against the destruction of evidence; (d) taking reasonable steps to protect against officer safety; and (e) safely evacuating  individuals from the premises during the search, if a valid basis for their continued detention exists.

Applying these basic principles to this case, it is readily apparent that Special Agent S.T., contractor B.G., and the other agents present at the Warrant Location were all actively engaged in the execution of the warrant at the time they were knowingly and willfully obstructed by the defendant.

1.    Special Agent S.T. Was Obstructed By Defendant While Executing The Search Warrant

There can be no legitimate dispute that special agent S.T. was obstructed while executing the Search Warrant.  Even by the most narrow definition, executing a search warrant necessarily involves the collection of evidence authorized to be seized.

Special Agent S.T.'s entire purpose in trying to enter the Search Warrant Location at 11:28 a.m. was to bring empty boxes from the Federal Building to the Search Warrant Location so he could collect and seize the documentary evidence found at the premises. (Ex. 8.)   However, despite repeated attempts, he was never able to re-enter the Warrant Location and collect the documentary evidence because defendant and others were physically blocking the Front Gate.  (Id.)  Defendant's argument that S.T. "could not be transporting seized evidence" because he was trying to enter the front gate, (see Motion at 27:25-27), is not only improper factual argument, but it also ignores the practical reality that agents transporting evidence often need to make multiple trips in and out of the searched premises for various legitimate reasons, such as to get evidence boxes.

2.    Contractor B.G. Was Obstructed While Assisting the Execution of the Search Warrant

Contractor B.G. was also obstructed by the defendant blocking the front gate while he assisting with executing the search warrant.  Contractor B.G. was tasked with transporting individuals (both expected and unexpected)[4] detained at the Search Warrant Location to the Federal Building, as well as transport agents from the Search Warrant Location to the Federal Building, as he did on the day of the incident for Special Agent, A.L.  (Ex. 5.)

---

[4] Defendant argues that executing a search warrant does not include a pre-existing plan to detain, interrogate, or arrest individuals.  However, in this case, there were also unidentified individuals in the Search Warrant Location at the time the of the execution of the search that needed to be detained, transported or arrested to protect the search. (See Ex. 4 noting "three [detained] individuals were not on the audit".)

17

While B.G. was tasked with transporting the majority of detainees to the Federal Building for immigration purposes, that transportation served a dual function of securing the Warrant Location to protect the efficacy of the search and officer safety.  Without B.G. transporting detainees to the Federal Building, additional resources or operations would have been required to either evacuate those detainees from the Warrant Location or secure them all inside the Warrant Location, while the search was being conducted. Those additional resources and operations were not needed because the government contracted to transport the administratively arrested detainees to the Federal Building. Accordingly, one of contractor B.G.'s dual functions was to "secure the premises and to ensure their own safety and the efficacy of the search," Yanez-Marquez , 789 F.3d at 471, and "removing [detainees] from the [Warrant Location]… until the search was completed." Tovar, 2007 WL 3407415, at *3.

It is because of this dual function that defendant's argument that B.G. was not assisting with the execution of the warrant fails.  As stated above, Summers and its progeny held that the execution of a search warrant implicitly comes with the authority to detain and remove individuals from the premises to protect the efficacy of the search, the safety of officers, and to prevent flight.

Defendant argues Summers does not apply because, under Perez Cruz v. Barr, the "authority [under Summers] to detain incident to the execution of a search warrant does not extend to a preexisting plan whose central purpose is to detain, interrogate, and arrest a large number of individuals." (Mot. at 19, citing 926 F.3d 1128, 1143 (9th Cir. 2019).) But Perez Cruz also acknowledges the possibility of a dual function of that detention, stating that the mere presence of an administrative purposes (such as transporting detainees to the Federal Building for immigration proceedings) does not invalidate the application of Summers.   Perez Cruz , 926 F.3d at 1143.  Although discussed in the context of whether detention is authorized, which is not at issue here, in distinguishing whether a detention is done for a purely administrative purpose or under Summers, the relevant inquiry is "whether the officer would have made the [detention] in the absence

of the invalid purpose."   Id. (quoting United States v. Orozco, 858 F.3d 1204, 1213 (9th Cir. 2017)) (cleaned up).

Such is the case here.  Even assuming, for the sake of argument, there was only an administrative purpose to detain and remove the individuals from the Warrant Location, those individuals would have still nonetheless have needed to be detained, secured, and removed.  There were well over 50 individuals in the Warrant Location, many of which fled during the execution of the Warrant and hid in various places in the 226,907 square foot warehouse being searched.  These 50+ individuals needed to be detained and removed from the areas being searched to protect officer safety and efficacy of the search. As a result, even though B.G. was tasked with transporting detainees to the Federal Building for immigration purposes, at the time he was obstructed  by the defendant, he was serving a function (removal of detainees from the Warrant Location) that advanced the execution of the search and would have needed to have occurred regardless of the immigration status of the detainees.  For that reason, B.G. was also obstructed while assisting the execution of the Warrant.

### 3.   All Federal Agents Involved In The Operation Were Obstructed by Defendant

In addition to special agent S.T. and contractor B.G., each of the other agents and officers at the Warrant Location were executing the warrant regardless of whether they served on the "perimeter team", the "search team" or the any other function in the operation at the Warrant Location. As a result of defendant's unlawful conduct, when agents were (1) drawn away from executing the search to the Front Gate to respond to the safety concerns created, in part, by defendant; and (2) forced to spend time searching for a forklift and had to help replace the tire on the transportation van, those agents were obstructed from executing the Warrant. Moreover, as a result of the unrest fomented by defendant outside the Warrant Location, LAPD was called to the scene and was forced to declare a riot.  (Ex. 4 at 3.)  Thus, the federal agents executing the warrant were evacuated from the premises prematurely.  (Id.)

19

Defendant baldly states that the "agents executing the Search Warrant were not guarding the Front Gate," Mot. 18:10-11, but this assertion ignores that part of executing search warrant is taking "reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." Yanez-Marquez, 789 F.3d 434 at 471 (cleaned up). Moreover, even if the Court were to draw a distinction between the perimeter team and the search team in determining who was involved with executing the warrant (a distinction unsupported by law) defendant does not address the federal agents who were forced to abandon their functions on the search team to support the permitter team at the Front Gate as a result of defendant's conduct.

In short, in part because of defendant's conduct, federal agents were unable to complete their operation, collect all of the evidence they sought out to seize, and were unable to detain and interview nearly 20 employees using stolen social security numbers, along with any identification or employment documents that were in their possession. (Id.) A jury could reasonably find that defendant's conduct aided and abetted, as well as contributed to the obstruction of the federal personelle executing the search warrant. United States v. Centeno, 793 F.3d 378, 387 (3rd Cir. 2015) ("One can aid or abet another through use of words or actions to promote the success of the illegal venture. Indeed, only some affirmative participation which at least encourages the principal offender to commit the offense is required.") (cleaned up).

**C.    The FSI Does Not Criminalize Defendant's Protective Activity.**

Defendant next attacks the FSI for purportedly criminalizing protected activity. To advance this argument, defendant mischaracterizes the FSI as charging "Mr. Huerta's for protesting an issue of public importance." (Mot. at 21:23-24.) He is mistaken. Defendant is not being charged for protesting; he is being charged with knowingly and willfully blocking the entrance to the Warrant Location. Physically blocking an entrance to a building is not protected by the First Amendment merely because those actions were taken with the intent to communicate a message. See United States v. Gregg, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected

by the First Amendment, whether or not such conduct communicates a message.") (emphasis added); see also, Cousins v. Terry, 721 F.Supp.426, 432 (N.D.N.Y. 1989) (enjoining demonstrators from "obstructing ingress into or egress from any facility at which abortions are performed").  As the Second Circuit put it:

> The distinction between regulating speech and regulating conduct that has expressive components is fundamental. It is why government can validly prohibit a range of activities ranging from secondary boycotts, through public nudity, to political assassinations. It would be wrong to say that those activities are not or cannot be forms of expression. But the fact that they have expressive aspects does not exempt them from governmental prohibition.

United States v. Weslin, 156 F.3d 292, 297 (2d Cir. 1998) (cleaned up).

Here, defendant chose to strategically position himself in the driveway to block the entrance the Warrant Location in the path of agent executing a lawful warrant, not simply on the sidewalk as defendant claims in the Motion.  (Mot. 29:24-28.)

The Supreme Court has repeatedly upheld the government's right to restrict protests on driveways to private business "to secure unimpeded physical access to the [business]". Schenck v. Pro-Choice Network Of W. New York, 519 U.S. 357, 376 (1997) (upholding "commonsense" injunction that "keeps protesters away from driveways and parking lot entrances" to abortion clinics); see also Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 770 (1994) (upholding injunction prohibiting protestors from entering a 36 foot buffer around abortion clinic entrances and driveways); Hill v. Colorado, 530 U.S. 703, 707 (2000) (upholding prohibition on protests "eight feet of another person" while within 100 feet of the entrance to any health care facility.)

Notably, in each of these cases, the Supreme Court held that prohibiting protestors from blocking a driveway did not infringe on protected speech because those protestors "might easily stand on the sidewalk at entrances (without blocking the entrance)" and engage in protected speech. Hill, 530 U.S. at 730; Madsen, 512 U.S. at 770 (noting that even with buffer zone around entrance, protesters standing across the narrow street from the clinic can still be seen and heard from the clinic parking lots"); Schenck, 519 U.S. at

fn. 6 (noting "alternative means of communication were left open to the protesters" and that [the protestors] remain free to espouse their message outside the 15–foot buffer zone around the entrance.).

The same is true here. Defendant was free to protest immigration enforcement activity on the sidewalks at Warrant Location without blocking the driveway entrance obstructing agents in the performance of their duties.  Prior to his arrival, that's what the crowd was doing on the day of the incident. (See e.g., Ex. 1 at 7:30-7:35; 8:16-8:27; Ex. 2 at 4:25-5:25, 7:49-7:53, 8:22-8:26, 9:45-9:48, 11:47-11:58.)  But instead of protesting on the sidewalk, he chose to position himself in the one place which blocked entry into the Warrant Location – the driveway to the front gate.  And even when repeatedly told to move, he chose to remain in the path of agents executing the Warrant. To the extent that the Court considers attempts to clear the driveway a time and manner restriction on speech as defendant suggests, the fact that the restriction only applied the driveway of the entrance makes it narrowly tailored towards a legitimate government interest – access to the Warrant Location. Madsen, 512 U.S. at 770

Finally, defendant's other arguments for why the FSI infringes on his protected speech should similarly be rejected.  Defendant argues that the FSI changes him with aiding and abetting other individuals obstructing federal agents "simply due to his presence at and participation in a protest."  But that is not supported by the actual allegations in the FSI. The FSI alleges defendant aided and abetted not by "participating in a protest" but because he was "instructing others to "keep making a circle," and to "sit down" on the driveway in front of the gate" to block entrance into the Warrant Location (Compare Mot., 22:5, with FSI ¶11(f).)

In short, defendant was encouraging and inducing further unlawful obstructive conduct. But "speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected." United States v. Hansen, 599 U.S. 762, 783 (2023). In fact, "one can aid or abet another through use of words or actions to promote the success of the illegal venture." Centeno, 793 F.3d 378, 387 (cleaned up).  As a result,

22

defendant can be, and is, charged with aiding and abetting other engaging in obstruction, without infringing on his protected speech, because inducing an unlawful act is simply not protected, no matter how noble he may feel the end is.

Defendant is being prosecuted for violating § 1501 because he blocked access to the Warrant Location, not for the alleged message he hope to advance with his conduct. That distinction is fundamental.  Because of that fundamental distinction, the FSI does not infringe on defendant protected speech.

## IV.    DEFENDANT'S CONSTITUTIONAL CHALLENGES TO SECTION 1501 MUST FAIL

Defendant's attacks on the constitutionality § 1501, both facially and as-applied to him, should be rejected.  § 1501 is not overbroad because it covers obstructive conduct, not protected speech.  It is also not vague as-applied to defendant since his conduct in blocking the entrance to a search warrant location is clearly prohibited by the text of the statute.

### A.    Section 1501 Is Not Facially Overbroad

Defendant's overbreadth challenge fails because § 1501 does not "make unlawful a substantial amount of constitutionally protected conduct."  City of Houston v. Hill, 482 U.S. 451, 459 (1987).

To prevail on his overbreadth challenge, defendant must establish "from the text of [the challenged provisions] and from actual fact that a substantial number of instances exist in which [the provisions] cannot be applied constitutionally."  N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988).  Courts have "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."  United States v. Williams, 553 U.S. 285, 292 (2008) (emphasis in original).  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)."  Virginia v. Hicks, 539 U.S. 113, 124 (2003).

23

1.      The Plain Text of Section 1501 Prohibits Obstructive Conduct, Not Protected Speech

The first step in an overbreadth analysis is to construe the challenged statute. Williams, 553 U.S. at 293.  Defendant is being charged under the first sentence of § 1501, which states:

> Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States magistrate judge.

18 U.S.C. § 1501.  The operative words of that sentence, "obstructs, resists, or opposes," should be reasonably read to prohibit unprotected activity such as obstructive conduct and refusing lawful instructions, not protected speech.

The plain meaning of "obstruct" is to "block or impede passage along," "to place or be an obstacle in," or "to render impassable or difficult of passage."  Obstruct, Oxford English Dictionary (revised ed. 2004).  As the Eleventh Circuit put it, "[i]t is hard to see how either 'obstruct' or 'impede' applies to speech or expressive conduct, except at the margins."  United States v. Pugh, 90 F.4th 1318, 1330 (11th Cir.), cert. denied, 145 S. Ct. 236 (2024).

Similarly, the plain meaning of "resist" is to "stop or hinder (a moving body); to be proof against; to prevent (a weapon, etc.) from piercing or penetrating; to obstruct the passage of, to block."  Resist, Oxford English Dictionary (revised ed. 2010).  And while the term "opposes" is susceptible to multiple meanings, as defendant concedes, a reasonable definition of "opposes" is "to place or position as an obstacle" and to "to set against, to put in composition, to withstand or thwart."  (Motion at 35.)

Defendant focuses much of his overbreadth argument on the meaning of the term "opposes" in isolation, without considering the context of the rest of the statute.  Putting aside that the term "opposes" can be interpreted in isolation to refer to actions, the term

24

"opposes" must be interpreted in the context of the "neighboring words with which it is associated." Williams, 553 U.S. at 294.

Here, given the plain meaning of the terms of the neighboring words "obstructs" and "resists" implicate conduct, the terms "opposes" should be construed to be prohibiting someone from hindering the execution of a warrant with more than just words. See e.g., People v. Vasquez, 465 Mich. 83, 89-90 (2001) (defining "oppose" as "to act against or furnish resistance to; combat") (emphasis added) (internal quotation marks omitted); id. at , 89112 (finding that the inclusion of the term "obstruct" as part of a list containing "resist, oppose, assault, beat [and] wound" supports "restricting the first three terms in the list to behavior involving actual or threatened physical harm or physical interference"); see also, Pugh, 90 F.4th at 1330 ("Although 'interfere,' by itself, could include speech, it is best read in Section 231(a)(3) alongside 'obstruct' and 'impede' as prohibiting someone from hindering a law enforcement officer or fireman with more than mere words.").

Defendant's reliance on City of Houston, which invalidated a city ordinance that also included the term "opposed," is misplaced. 482 U.S. 451. In City of Houston, the Supreme Court invalidated a city ordinance which made it unlawful "in any manner [to] oppose, molest, abuse or interrupt any policeman in the execution of his duty." Id. at 455. In construing the ordinance, the Supreme Court focused specifically on the term "interrupt" as "prohibit[ing] speech that in any manner interrupts an officer" and therefore infringed on an individual's right "verbally to oppose" police action. Id. at 462 (emphasis added) (cleaned up).

Further distinguishing City of Houston, the city conceded any interruption of the ordinance that included "any species of physical assault on a police officer" was preempted by the state penal code. Id. at 460 (internal quotation marks omitted). Similarly, any interpretation of the ordinance to ban "fighting words" or "disorderly conduct" was also preempted by the state penal code. Id. at 462 n.10. Given the ordinance could not prohibit physical or disorderly conduct, the Court found that the

25

only "enforceable portion" of the invalidated ordinance could only be interpreted to prohibit "verbal interruptions" of police officers.  Id. at 461; see also, Pugh, 90 F.4th at 1330-31 (distinguishing City of Houston since the challenged ordinance "prohibited only verbal interference with law enforcement") (emphasis in original).

As a result, contrary to the arguments in the Motion, the court in City of Houston never did consider whether the term oppose "could include unprotected speech," as is the question here.  (Motion at 34:15-16.)  It limited its analysis to "verbal interruptions." (City of Houston, 482 U.S. at 460; see also id. at 462 n.11 (describing statute as "authorizing the police to arrest a person who in *any* manner verbally interrupts an officer.").  On the other hand, the Court in City of Houston explained that its ruling should not be interpreted to invalidate statutes that "punish physical obstruction of police action."  482 U.S. at 463 n.11.[5]  It is for this reason that City of Houston cuts in favor of the constitutionality of § 1501, not against it, since by its plain text, § 1501 prohibits obstructive conduct.

In line with City of Houston's clarification that its ruling does not prohibit criminalizing obstructive conduct, courts have found similar statutes that prohibit obstructive conduct to be constitutional.

For example, 18 U.S.C. § 231(a)(3) prohibits someone from obstructing, impeding, or interfering with any law enforcement officer "lawfully engaged in the lawful performance of his official duties" during the commission of a civil disorder.  18 U.S.C. § 231(a)(3).  Section 231, which is much closer in wording to § 1501 than the ordinance challenged in City of Houston, has been found to be not facially overbroad by courts across the country.  See e.g., Pugh, 90 F.4th at 1330-31 ("[i]t is obvious" that Section 231(a)(3) does not "criminalize[] a substantial amount of protected expressive

---

[5] In fact, the Court went even farther than ratifying statutes that prohibit obstructive conduct and explained that an individual "who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection" could be punished by statute.  City of Houston, 482 U.S. at 463 n.11 (internal quotation marks omitted).

26

activity," and instead "focuse[s] on obstructive conduct" ) (emphasis omitted); United States v. Mechanic, 454 F.2d 849, 852-53 (8th Cir. 1971) ("[Section 231(a)(3)] does not purport to reach speech of any kind," and rather "reaches only to acts to impede, obstruct, or interfere with police officers and firemen"); United States v. Phomma, 561 F.Supp.3d 1059, 1068 (D. Or. 2021) (same); United States v. Wood, No. CR 20-56 MN, 2021 WL 3048448, at *8 (D. Del. July 20, 2021) (same); United States v. Grider, 617 F.Supp.3d 42, 52 (D.D.C. 2022); see also, Nat'l Mobilization Comm. to End War in Viet Nam v. Foran, 411 F.2d 934, 938 (7th Cir. 1969) (no "substantial constitutional question is presented by Section 231(a)(3)").[6]

Contrary to the arguments in the Motion, the second clause of § 1501, which separately criminalizes "assault[ing], beat[ing], or wound[ing]" federal officers executing process, does not in any way broaden the scope of the statute to include protected activity.  The two sentences in § 1501 serve distinct purposes and criminalizes distinct conduct. The first sentence, which criminalizes "obstruct[ing], resist[ing], and oppos[ing]," covers physical obstruction (and limited instances of unprotected speech), while the second sentence "assault[ing], beat[ing], or wound[ing]" covers physical violence.  Notably, the second clause of § 1501 does not cover physical obstruction that does not include violence (i.e. blocking the path of an agent), further illustrating the two clauses of 1501 serve distinct purposes.

This conclusion is supported by the few courts who have interpreted § 1501.  For example, in Miller v. United States, cited by the defense, the Fifth Circuit found that

---

[6] Defendant argues that other statutes, such as 18 U.S.C. § 231, already cover all other legitimate applications of § 1501 (Motion at 37:20-38:22.)  However, none of the other statutes cited by the defendant covers physical obstruction of an officer executing a search warrant without the use of force, like § 1501 does. See e.g., 18 U.S.C. § 231 (criminalizing obstruction and interference with law enforcement during civil order); 18 U.S.C. § 2331 (criminalizing forcibly assaulting, opposing or resisting officer executing search warrant); 18 USC § 2332 (criminalizing destroying evidence subject to search and seizure); 18 U.S.C. § 1071 (criminalizing harboring individual with arrest warrant to prevent his disclosure; 18 U.S.C. § 1073 (criminalizing inciting riot).

"Section 1501 reflects a purpose to forbid, under the broader terms of the first clause, those acts which constitute obstruction, resistance or opposition but which do not involve physical violence." (Motion at 36:19-20; citing 230 F.2d 486, 488 (5th Cir. 1956).)

Similarly in United States v. Giampino, the Second Circuit came to a similar conclusion, finding that the "second paragraph of section 1501 requires proof of force" while the first paragraph dealt with "willful and knowing obstruction" without force. 680 F.2d 898, 902 (2d Cir. 1982); see also, United States v. McDonald, 26 Fed.Cas. 1074, 1077 (C.C.E.D. Wis. 1879) (interpreting the terms obstructs or opposes "to not necessarily imply the employment of direct force" but instead include "passive, indirect or circuitous impediments to the service or execution of process").

For these reasons, the plain text of § 1501 is not facially overbroad. Nothing in the plain text of the statute is aimed at prohibiting speech; instead, the statute prohibits obstructive conduct.

> 2. The Scienter Requirement in Section 1501 Limits the Scope of the Statute And Does Not Create Content Based Restrictions

Section 1501 is also not facially overbroad because it contains a scienter requirement of knowingly and willfully. 18 U.S.C. § 1501.

It is well established that scienter requirements narrow the scope of a criminal statute and protect against overbreadth. See e.g., United States v. Dhingra, 371 F.3d 557, 561–562 (9th Cir.2004) ("the scienter and intent requirements of the statute sufficiently limit criminal culpability to reach only conduct outside the protection of the First Amendment."); United States v. Soda, No. 21-50025, 2022 WL 3151962, at *2 (9th Cir. Aug. 8, 2022) (finding special condition of supervised release not fatally overbroad or vague because of inclusion of scienter requirement.); United States v. Edwards, 783 F. App'x 540, 545 (6th Cir. 2019) ("the scienter requirements of "knowingly" and "with intent to retaliate" dramatically narrow the universe of possible offending activity"); see also, Osborne v. Ohio, 495 U.S. 103, 147, 110 S. Ct. 1691,

1716, 109 L. Ed. 2d 98 (1990) ("adding an intent requirement was part of the process of narrowing an otherwise overbroad statute") (J. Brennan dissenting).

Defendant nonetheless argues that the scienter requirement in § 1501 creates "content-based restrictions" because the statute allegedly "criminalizes intentional opposition to officers while leaving identical support untouched." (Motion at 39:1-2.) However, this argument is without merit. The plain language of § 1501 contains no prohibition on protected speech, let alone a prohibition on specific content or a viewpoint. 18 U.S.C. § 1501. Contrary to the defendant's assertions in the Motion, if the defendant "joined a block party" or was "cheering on the officer's activities," see Mot. 39:12-26, but still physically blocking the entrance to the Warrant Location, defendant would have still violated § 1501.

Similar challenges have been raised and rejected against the Freedom of Access to Clinic Entrances Act ("FACE Act"), which similarly prohibits "physical obstruction… [that] interferes…with obtaining or providing reproductive health services." 18 U.S.C. § 248.

For example, in Weslin, defendants were part of an anti-abortion group that staged a sit-in to block the entrance to an abortion clinic and were convicted of violating the FACE Act since their obstruction of the entrance interfered with reproductive health services. Weslin, 156 F.3d at 296. Much like defendant argues here, the defendant in Weslin argued that the FACE Act was content-based since the statute "regulated the expression only of people who are ideologically or morally opposed to abortion." Id. at 296. The court rejected that argument and found that the FACE Act was not content-based since, much like § 1501, the statute regulated conduct and not a particular form of speech. Id. ("Contrary to the defendants' assertion, the FACE Act prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators.")

The facts here are strikingly similar to that of Weslin and its reasoning applies in full force. Defendant violated § 1501 by obstructing the entrance to the Warrant Location. "Both by its language and its application, [section 1501] seeks to govern all

people who obstruct the [execution of a search warrant]." Weslin at 296. Obstructive conduct is covered by § 1501 regardless of if the individual supported or antagonized law enforcement since the § 1501 prohibits conduct, not speech.

Accordingly, § 1501's scienter requirement narrows the scope of the statute and does not inject content-based or viewpoint regulation.

> 3. Defendant Fails to Establish That a Substantial Number of Instances Exist In Which Section 1501 Cannot Be Applied Constitutionally

In addition to the plain text clearly prohibiting obstructive conduct, defendant also cannot identify any actual instances in which § 1501 is used to prosecute speech. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984). "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973) [7]

In the Motion, defendant attempts to provide examples of prosecutions under § 1501 being used to infringe on protected speech, but all of the examples provided in the Motion either involve physical conduct or unprotected speech.

---

[7] Defendant's examples of the predecessor statutes being used to prosecute abolitionists Theodore Parker and Sherman Booth are both unavailing because each of those criminal charges involved an allegation of force. (Motion 41:6-42:1.) For example, Theodore Parker was charged with obstructing with the use of "force and arms." See Theodore Parker, The trial of Theodore Parker: for the "misdemeanor" of a speech in Faneuil Hall against kidnapping, before the Circuit Court of the United States, at Boston, April 3, 1855, Library of Congress (1870), p. 2d, 13, transcript available at: https://tile.loc.gov/storage-services/service/ll/llst/001/001.pdf. Sherman Booth was charged after he aided a crowd break into a prison and escape with a detained individual. See Earl M. Maltz, Slavery, Federalism, and the Constitution: Ableman v. Booth and the Struggle over Fugitive Slaves, 56 Clev. St. L. Rev. 83, 97 (2008). Both these historical examples show that predecessor statutes prohibiting obstruction were also used to criminalize conduct, not protected speech.

For example, defendant characterizes United States v. Carpenter as an example of an individual convicted of § 1501 for allegedly "verbally challenging" a federal officer executing an arrest warrant, see Motion at 42:6, but in that case defendant was convicted for "inciting the crowd," "wedg[ing] himself between one of the task force officers and the arrestee," refusing "multiple orders", and mking "threatening comments" to officers executing the warrant.  2012 WL 292480, at *2 (W.D. La. Jan. 31, 2012), aff'd, 500 F. App'x 331 (5th Cir. 2012) (upholding conviction under § 1501 because defendant "interfered with the task force by inciting the crowd and making it more difficult to execute the federal arrest warrants").

Defendant's other examples follow the same pattern. In United States v. Peifer, another example provided by defendant, the defendant was convicted under § 1501 for "mov[ing] vehicles to block federal agents" executing a warrant. (Motion at 42:14-16 citing  Peifer, 474 F. Supp. at 500.)  In United States v. Brakke, also cited in the Motion, defendant was charged for obstructing attempts to seize a truck by refusing to vacate the truck being seized, causing him to have to be forcibly removed by officers.  934 F.2d 174, 176 (8th Cir. 1991).  In Avery v. King, another defense example, the Sixth Circuit found there was probable cause to arrest a defendant for a violation of § 1501 after she "refused to leave the area after being asked many times to do so" while officers were trying to secure and search the premises at issue in the warrant.  110 F.3d 12, 15 (6th Cir. 1997).  In United States v. Coleman, cited by defense, the defendant was convicted under a predecessor statute after he got into physical confrontation involving a pistol with an officer executing a warrant.[8]  268 F. 468, 469-70 (6th Cir. 1920).  In United States v. Schaffner, the government charged defendant under multiple statutes, including

---

[8] In Coleman v. United States, the defendant was not convicted under the "obstruct" prong of the predecessor statute because at the time of the physical confrontation, the defendant did not "have knowledge that the officer was then on his way to arrest [someone]." Coleman v. United States, 268 F. 468, 471 (6th Cir. 1920). Contrary to the characterization in the Motion, there is no indication the defendant was charged in that case for simply "abusive language".

31

eventually § 1501, after the "defendant knew that McVey was to be a witness and knowingly hid or helped to hide McVey in order that he would not be subpoenaed [sic]." 715 F.2d 1099, 1103 (6th Cir. 1983) (footnote omitted).

In sum, all of the examples cited by the defense show that, historically, § 1501 has been used to prosecute obstructive conduct and unprotected speech (such as inducement of crimes), not any protected speech.  See also, e.g., Sparks v. United States, 90 F.2d 61, 62 (6th Cir. 1937) (conviction under Section 1501 after defendant "brandished an ax, and later pointed a shotgun at the officers, threatening to shoot, and prevented them from carrying out the search").

Defendant's case here is no different.  Just like how the defendant in Peiffer was charged for "preventing the marshal's progress" into an area subject to a search warrant, defendant here is also being charged for preventing agents from accessing the search warrant location by blocking the entrance.  There is nothing unconstitutional about bringing misdemeanor charges for that type of obstructive conduct.

**B.      Defendant's Vagueness Challenge Under the First and Fifth Amendments Also Fail**

Defendant next argues that § 1501 is unconstitutionally vague under the First and Fifth Amendments.  These arguments fail because defendant's conduct in blocking the entrance to the Warrant Location is clearly proscribed by § 1501.  Therefore, the statute is not vague as-applied to his conduct here.  Because § 1501 is not vague as-applied to defendant, he also cannot claim § 1501 is facially vague.

**1.      Section 1501 is Not Vague As-Applied To Defendant**

As-applied, a criminal statute is only considered unconstitutionally vague if (1) it "fails to give ordinary people fair notice of the conduct it punishes," or (2) it is "so standardless that it invites arbitrary enforcement."  Johnson v. United States, 576 U.S. 591, 595 (2015).  "Whether a provision is vague for lack of fair notice is an objective inquiry."  Kashem v. Barr, 941 F.3d 358, 371 (9th Cir. 2019).  There is no requirement that defendant know just how far the law sweeps, as long as it clearly proscribes the

conduct charged.  "The question, therefore, is whether a reasonable person would have known" defendant's "alleged conduct fell within" § 1501's criteria.  Id. (citing Holder v. Humanitarian L. Project, 561 U.S. 1, 18 (2010)).

Such a challenge should be upheld "only if the enactment is impermissibly vague in all of its applications."  Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 494-95 (1982).  A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.  Id. at 495.  As a result, a void for vagueness analysis begins with a review of defendant's conduct; if it is "clearly proscribed" by the challenged statute, a defendant is not permitted to make a facial challenge to the statute's vagueness.  Id.

Here, the conduct alleged in the complaint and information fall squarely within the prohibitions set forth in § 1501.  During the execution of a search warrant, defendant intentionally blocked the only available entrance of the Warrant Location. He did this by sitting down and walking in circles directly in front of the entrance of the Warrant Location, making it impossible for any law enforcement vehicles to enter without defendant moving away from the driveway.  In addition, he also successfully induced other individuals to join him in blocking the entrance of the Warrant Location in the same manner eventually contributing to LAPD evacuating the Warrant Location.

As defendant previously conceded, defendant was told explicitly he "shouldn't block or impede the [law enforcement vehicle] that would be arriving."  (compare Dkt. 55 at 14; with FSI at 11(e).)  Despite this clear instruction that blocking the van would be unlawful, when the law enforcement vehicle attempted to enter the Warrant Location, defendant stepped in front of it to block its path.  When another officer attempted to push the defendant out of the way of the law enforcement vehicle, defendant refused and anchored position even further.  A reasonable person would have known that defendant's conduct would fall under § 1501's criteria.

Defendant argues § 1501 "provides no insight into how close in time or space a person much be to commit the offense."  (Motion 43:19.)  In support of this argument,

defendant posits hypothetical situations, such as whether his conduct would be proscribed by § 1501 if he "delayed S.T. from returning to warehouse by protesting at the Federal Building" which is miles away from where defendant actually was positioned.  (Id.)

However, the Court need not engage in those hypotheticals because that is not the conduct defendant is alleged to have committed in this case.  Defendant was not at the Federal Building miles away from the execution at the search warrant; he was directly blocking the driveway to the search warrant location.  In an as-applied challenge, the relevant inquiry is whether defendant's actual conduct was proscribed by § 1501; and in this case blocking the entrance used by agents to access a search warrant location is clearly proscribed by the statue.

Second, defendant argues that § 1501 "poses a heightened risk of arbitrary enforcement" based on speculation that law enforcement "may resent having obscene words and gestures at them."  (Motion at 44:13.)  In support of this argument, defendant points to a decision criticizing specific federal agents in Chicago, none of which were involved in this case. (Motion at 44:14-16 citing Illinois v. Trump, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025) (criticizing specific declarants, not federal agents in general). However, defendant cannot use conduct of other agents not involved in this case to establish § 1501 is vague as-applied to his own conduct.

Nor can he establish an as-applied violation by referencing what one agent (R.R.), among the 56 executing the search warrant, stated in an interview about what he subjectively believes is criminal conduct.  (See Motion at 44:20-27.). What one agent believed might constitute criminal conduct in other investigations has no bearing as to whether § 1501 is vague as-applied to defendant, nor does it inject vagueness into an otherwise clearly worded statute.  Even if it did, this agent's subjective beliefs on other investigations cannot be imputed to the federal government's prosecution of defendant here.  The Court should reject defendant's attempts to conflate defendant's clear

34

obstructive conduct in this case, with the subjective beliefs of other federal agents in other cases.

Finally, "under [Supreme Court] precedents, a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion." McFadden v. United States, 576 U.S. 186, 197 (2015) (cleaned up); see also, United States v. Kahre, 737 F.3d 554, 572 (9th Cir. 2013) (finding that the "inclusion of a [willfulness] scienter requirement mitigates a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed") (cleaned up); United States v. Navarro, 2025 WL 3486892, at *2 (9th Cir. Dec. 4, 2025) (same).

That principle controls here. A defendant can be found guilty of violating § 1501 only if the jury finds that he acted "knowingly" and "willfully" to obstruct, resist, or oppose. 18 U.S.C. § 1501. The statute does not criminalize accidental conduct, but instead a deliberate act to obstruct. As a result, to the extent there is any vagueness in the statute, the scienter requirement mitigates such vagueness. See Kahre, 737 F.3d at 572.

> 2.     Because Section 1501 Is Not Vague as Applied to Defendant, He Cannot Raise a Facial Vagueness Challenge.

Because the statute is not vague as applied to defendant, defendant is not entitled to raise a facial vagueness challenge. Holder v. Humanitarian L. Project, 561 U.S. 1, 19 (2010); Kashem v. Barr, 941 F.3d 358, 364 (9th Cir. 2019); see also Marquez-Reyes v. Garland, 36 F.4th 1195, 1207 (9th Cir. 2022) (foreclosing facial vagueness challenge where statute was not vague as applied to defendant's conduct and there were no "exceptional circumstances" to the rule). Here, defendant has not argued, let alone shown, that § 1501 warrants an exception to the facial challenge rule.

And even if this Court were to entertain a facial challenge, it fails because § 1501 "provide[s] a person of ordinary intelligence fair notice of what is prohibited" and has sufficient standards to prevent "discriminatory enforcement." United States v. Harris,

35

705 F.3d 929, 932 (9th Cir. 2013).  As set forth above, § 1501 plainly includes a scienter requirement: the obstruction itself must be done "knowingly and willfully."  18 U.S.C. § 1501.  Thus, persons of ordinary intelligence understand that they will not be penalized for accidentally blocking law enforcement during the execution of a search warrant, but they will be penalized for doing so knowingly and willfully.  See, e.g., United States v. Triumph Cap. Grp., Inc., 260 F.Supp.2d 470, 476 (D. Conn. 2003) (holding § 1503 not unconstitutional because of scienter requirement); United States v. Bonds, 730 F.3d 890, 897 (9th Cir. 2013) (same), reversed on other grounds on reh'g en banc, 784 F.3d 582 (9th Cir. 2015).

For those reasons, to the extent defendant is raising a facial challenge to § 1501, it must fail as well.

## V.     CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Defendant's Motion to Dismiss the First Superseding Indictment.

Dated: June 29, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

   /s/
NEIL P. THAKOR
CHRIS S. BULUT
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

36

The undersigned, counsel of record for the United States of America, certifies that this brief contains 11,107 words.

/s/
NEIL P. THAKOR