MARILYN E.  BEDNARSKI, SBN 105322
E-Mail: mbednarski@mbllegal.com
McLane, Bednarski & Litt, LLP
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

ABBE DAVID LOWELL, *pro hac vice*
DAVID A. KOLANSKY, *pro hac vice*
SCHUYLER J. STANDLEY*
E-Mail: alowellpublicoutreach@lowellandassociates.com
E-Mail: dkolansky@lowellandassociates.com
E-Mail: sstandley@lowellandassociates.com
Lowell & Associates, PLLC
1250 H Street, NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116

Attorneys for Defendant
DAVID HUERTA

* *pro hac vice forthcoming*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>DAVID HUERTA,<br>*Defendant*. | CASE NO.: 2:25-CR-00841-SB<br><br>**DEFENDANT'S OMNIBUS REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST SUPERSEDING INFORMATION**<br><br>Date: Aug. 4, 2026<br>(Hearing Length Estimate: 1 hour)<br>Time: TBD<br>Ctrm: 6C (1st Street U.S. Courthouse) |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................1

    I.    The SI Fails to State the Offense. ...........................................1

        A.    The SI Fails to State the Offense with Specificity. ...................1

        B.    The SI Fails to State the Elements of the Offense.....................4

        C.    The Superseding Information Charges First Amendment Protected Activities..................................................................7

    II.    Section 1501 Is Facially Overbroad in Violation of the First Amendment. ..........................................................................12

        A.    Section 1501's Plainly Legitimate Sweep Covers Protected Speech.....................................................................................12

        B.    Section 1501's Plainly Legitimate Sweep Includes Substantial Protected Activities..................................................................18

    III.    Section 1501 Is Void for Vagueness...............................................20

CONCLUSION ..................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*Avery v. King*,
110 F.3d 12 (6th Cir. 1997) ...................................................................................... 19

*Bailey v. United States*,
568 U.S. 186 (2013) .................................................................................................... 6

*Berger v. City of Seattle*,
569 F.3d 1029 (9th Cir. 2009) .................................................................................... 8

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) .................................................................................................. 10

*Cheek v. United States*,
498 U.S. 192 (1991) .................................................................................................. 17

*City of Houston v. Hill*,
482 U.S. 451 (1987) ............................................................................... 12, 15, 16, 17

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288 (1984) .................................................................................................... 9

*Coleman v. United States*,
268 F. 468 (6th Cir. 1920) ........................................................................................ 19

*Collins v. Jordan*,
110 F.3d 1363 (9th Cir. 1996) .................................................................................... 8

*Edwards v. City of Coeur d'Alene*,
262 F.3d 856 (9th Cir. 2001) ...................................................................................... 8

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .................................................................................................. 20

*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992) .................................................................................................. 11

*Hill v. Colorado*,
530 U.S. 703 (2000) ............................................................................................ 10, 11

*King v. Ambs*,
 519 F.3d 607 (6th Cir. 2008)................................................................................14

*Madsen v. Women's Health Ctr., Inc.*,
 512 U.S. 753 (1994)..............................................................................................11

*Michigan v. Summers*,
 452 U.S. 692 (1981)................................................................................................6

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024)..............................................................................................18

*NAACP v. Claiborne Hardware Co.*,
 458 U.S. 886 (1982)................................................................................................8

*Norton v. Ashcroft*,
 298 F.3d 547 (6th Cir. 2002)................................................................................18

*People v. Vasquez*,
 465 Mich. 83 (2001)..............................................................................................14

*Perez Cruz v. Barr*,
 926 F.3d 1128 (9th Cir. 2019)........................................................................... 5, 6

*Reno v. ACLU*,
 521 U.S. 844 (1997)..............................................................................................15

*Russell v. United States*,
 369 U.S. 749 (1962)............................................................................................ 1, 2

*Schenck v. Pro-Choice Network Of W. New York*,
 519 U.S. 357 (1997)..............................................................................................11

*Sparks v. United States*,
 90 F.2d 61 (6th Cir. 1937).....................................................................................19

*Tovar v. City of Fresno*,
 2007 WL 3407415 (E.D. Cal. Nov. 13, 2007)........................................................6

*United States v. Alsondo*,
 486 F.2d 1339 (2d Cir. 1973)................................................................................13

iii

*United States v. Alvarez*,
   567 U.S. 709 (2012)..................................................................................... 8, 9

*United States v. Atkinson*,
   232 F.3d 897 (9th Cir. 2000) ...............................................................17

*United States v. Brakke*,
   934 F.2d 174 (8th Cir. 1991) ................................................................19

*United States v. Carpenter*,
   No. 09-cr-00271, 2012 WL 292480 (W.D. La. Jan. 31, 2012)...............19

*United States v. Giampino*,
   680 F.2d 898 (2d Cir. 1982) .................................................................13

*United States v. Gregg*,
   226 F.3d 253 (3d Cir. 2000) ...................................................................9

*United States v. Grider*,
   617 F. Supp. 3d 42 (D.D.C. 2022) ........................................................17

*United States v. Hansen*,
   599 U.S. 762 (2023)..........................................................................9, 18

*United States v. Mechanic*,
   454 F.2d 849 (8th Cir. 1971)................................................................17

*United States v. Nukida*,
   8 F.3d 665 (9th Cir. 1993).......................................................................2

*United States v. Peifer*,
   474 F. Supp. 498 (E.D. Pa. 1979).........................................................19

*United States v. Phomma*,
   561 F. Supp. 3d 1059 (D. Or. 2021) ....................................................17

*United States v. Pugh*,
   90 F.4th 1318 (11th Cir. 2024) .......................................................13, 15

*United States v. Rundo*,
   990 F.3d 709 (9th Cir. 2021)...........................................................10, 19

*United States v. Sommerstedt*,
   752 F.2d 1494 (9th Cir. 1985)...................................................................................13

*United States v. Sryniawski*,
   48 F.4th 583 (8th Cir. 2022) ....................................................................................10

*United States v. Warnagiris*,
   699 F. Supp. 3d 31 (D.D.C. 2023) .............................................................................3

*United States v. Weslin*,
   156 F.3d 292 (2d Cir. 1998) ......................................................................................9

*United States v. Wood*,
   No. 20-cr-56, 2021 WL 3048448 (D. Del. July 20, 2021)......................................17

*Va v. Am. Booksellers Assn., Inc.*,
   484 U.S. 383 (1988)..................................................................................................15

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989).............................................................................................9, 10

*Yanez-Marquez v. Lynch*,
   789 F.3d 434 (4th Cir. 2015) .....................................................................................6

*Virginia v. Hicks*,
   539 U.S. 113, 124 (2003) .........................................................................................13

**Statutes**

18 U.S.C. § 111 ................................................................................................................13

18 U.S.C. § 1501 ...............................................................................................................4

18 U.S.C. § 231 ...........................................................................................................3, 16

18 U.S.C. § 248 .................................................................................................................9

**Other Authorities**

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012)...............14

Paul Finkelman, *Slavery in the Courtroom* (1983)........................................................19

v

Earl M. Maltz, *Slavery, Federalism, and the Constitution: Ableman v. Booth and the Struggle over Fugitive Slaves*, 56 Clev. St. L. Rev. (2008)................................19

## INTRODUCTION

The government's recycled opposition brief does little to address, let alone cure, the many defects on the face of the Superseding Information ("SI").  By introducing new allegations and new facts not even present in the SI, the government continues to throw theories against the wall, hoping one will allow this case to proceed.  Its tactic only confirms that the charge against Mr. Huerta is an attempt to criminalize his exercise of his First Amendment rights to speak and associate in a public forum about issues of pressing societal and political importance.

There are four bases for the Court to dismiss the charge: (1) the SI fails to state the key elements of a Section 1501 crime; (2) it charges Mr. Huerta for his protected First Amendment activities; (3) it is based on Section 1501's first paragraph, which is facially overbroad; or (4) is unconstitutionally vague as applied to Mr. Huerta.  Each outcome is an independent basis for dismissal.  Taken together, however, they form a mandate to protect against and deter the use of criminal charges to repress free speech.

## ARGUMENT

### I.     The SI Fails to State the Offense.

As this Court recognized by ordering the government to amend its Information, charging a protester with a crime for joining a demonstration demands a modicum of specificity.  But the SI is fatally unspecific, fails to state the elements of a Section 1501 offense, and attempts to charge Mr. Huerta for his First Amendment protected activities, so it must be dismissed with prejudice.

#### A. The SI Fails to State the Offense with Specificity.

At each stage of this proceeding, Mr. Huerta has been "met with a different theory, or by no theory at all," of his criminal conduct.  *Russell v. United States*, 369 U.S. 749, 768 (1962).  The government's theories have continuously evolved, from

1

Mr. Huerta launching himself onto a van or slashing tires to blocking a Jeep or ending an entire law enforcement operation.  Now, the government has replaced its bare-bones Information with the kitchen sink, providing a vague menu of options to select from at trial.  Its shifting theory of the charge is enabled by the unspecific SI.  This will lead to the very outcome that Rule 7 attempts to avoid.  The prosecution will be left "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."  *Id.*  This is not the notice the rules, the Constitution, and this Court require.

The government agrees that the SI must stand on its own four corners.  Opp. 23; *see United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) ("[T]he court may make preliminary findings of fact necessary to decide the legal questions presented by the motion," but may not "invade the province of the ultimate finder of fact.").  And at minimum, the face of the SI must set forth sufficient facts to meet the Rule 7(c) notice requirements and this Court's order requiring further specificity.  ECF 102.  The SI does the opposite: it charges every act against every officer under every prohibition.  While it names (in initials) two officers, it fails to "specifically identify" all relevant "United States officer(s)" that Mr. Huerta allegedly obstructed and fails to show how Mr. Huerta's conduct "obstructed, or aided and abetted the obstruction" of an officer, *id.* at 4.  It charges Mr. Huerta under all three prohibited actions in Section 1501's first paragraph, without specifying which conduct fits within which prohibition as to which officer.

Instead of arguing that the allegations on the face of the SI are sufficient as a matter of law, the government relies on post-hoc revisions and conclusory assertions in its opposition, Opp. 13, but even that does not specify *how* Mr. Huerta is supposed to differentiate his acts from the acts of others when he was one man in a crowd.  Vague charges that conflate an individual's acts with the crowd invite the error of holding peaceful protesters responsible for unlawful acts of others and thereby risk

2

violating the First Amendment. *See* Mot. 22.

The government also argues that it is sufficient for the SI to allege that Mr. Huerta obstructed S.T. and B.G.—the only two officers named in the SI. But then it defends its case by alleging Mr. Huerta specifically "obstructed" *every other* unnamed agent on the premises as well. Opp. 12. This ignores the Court's order to identify the officers Mr. Huerta allegedly obstructed and, even then, addresses only one of the three prohibited activities it charges. *Id.* 11-13. It asserts that the "core" of the SI is that Mr. Huerta "physically blocked the entrance/exit of the Warrant Location, and in turn *obstructed* the federal officers using that entrance." Opp. 13 (emphasis added). Nowhere does the government identify what conduct resisted which agent, or what conduct opposed at all, outside of its generalized theory of Mr. Huerta "resisting" or "opposing" the operation in its totality. These omissions do not suffice under the statute or the Court's order. *See* Mot. at 16.[1]

The government proves the SI's insufficiency when it directs Mr. Huerta to review external, disputed evidence to explain Section 1501's most critical elements. *See* Opp. 13, 17-18. A charging instrument that cannot be understood without extrinsic evidence is defective on its face, but even with this evidence, the SI does not support the government's theory. With respect to its new allegation (based on a photo, Ex. 7) that Mr. Huerta "impeded" agent S.T. at 11:28 a.m., it attempts to verify its claim by pointing to a video taken at 11:49 a.m. (thirty minutes later). Opp. 13. Its claims that a video shows that Mr. Huerta impeded B.G.'s vehicle, but a review of its exhibit merely shows Mr. Huerta standing off to the van's side. Ex. 3. The Court should not accept the government's contradictory and disputed assertions not contained in the SI. With its attempts to backfill the SI's fatal gaps, the

---

[1] The government's citation to *United States v. Warnagiris*, 699 F. Supp. 3d 31, 41 (D.D.C. 2023), is inapposite, as it relates to an element of 18 U.S.C. § 231 that is not present in Section 1501. *See* pp. 16-17.

3

prosecution improperly and unfairly assembles and reassembles its theory of the offense only after it sees Mr. Huerta's defense.

### B. The SI Fails to State the Elements of the Offense.

Section 1501 requires obstruction, resistance, or opposition *directly* impacting a *specific officer* who, at the time of the obstruction, was *actively* executing a search warrant. Mot. at 16-17; *see* 18 U.S.C. § 1501. The SI does not state these elements, but the government does not dispute what the statute requires. It only disputes the facts that the SI contains, but even under the government's back-filled version of SI, it does not plead the elements that the government agrees are required.

Simply stated, the government does not rebut the plain text requirement that the charged conduct directly impact an officer, rather than a location or an operation. It argues only that it is "common sense" that obstructing a gate is equivalent to obstructing an officer, Opp. 15, without reference to the statute itself.[2] The government's description of Mr. Huerta's alleged crime shows the causal chain that Section 1501 rejects. It states that Mr. Huerta "blocked the entrance to the Warrant Location, which in turn 'obstructed, resisted, and opposed' federal agent S.T. and government contractor B.G.," and "generally obstructed, resisted, and opposed *all* of the government personnel involved in executing the Search Warrant by drawing resources to the blocked entrance to respond to the safety concerns created, in part, by defendant's conduct." Opp. 14 (emphasis added). This alleges only that Mr. Huerta's protest activity blocked a gate for some unspecified time, including when

---

[2] The government's attempt to revise its own SI to characterize the front gate as the "only entrance and exit at the Warrant Location" is disingenuous at best. Opp. 15. The SI states that it was the "primary entrance," SI 2:15, and "the only gate *being used by law enforcement* to enter and exit the Search Warrant Location," SI 4:3-4 (emphasis added), not the *only* entrance or exit. And it is undisputed that there were other entrances and exits to the Warrant Location that the government used that same day, and that the "front gate" was closed during the majority of the protest. *See* Mot. 7.

no vehicles were attempting to enter or exit. And it states an attenuated theory of obstruction of an *operation*, which Mr. Huerta's unrebutted arguments show is insufficient under the plain text of the statute. Mot. 17.

Even if an allegation of attenuated obstruction is enough, the officers named by the government, B.G. and S.T., were not executing the warrant. The SI could have stated their activities individually, but it did not.[3] It instead provides a disjunctive list of potential vehicle functions, including most that are entirely unrelated to search warrant execution: "remov[ing] any non-law-enforcement individuals who were detained" and "transport[ing]... individuals who were detained or arrested." SI 3:5-22. The government's explanation of S.T.'s purpose therefore has no footing in the SI. The government has argued its claim since the February hearing but still chose not to include it in the SI. A missing element cannot be supplied after the fact with extrinsic evidence to fix the government's drafting, so the SI remains fatally ambiguous as to S.T.

For B.G., the government admits that he "was tasked with transporting detainees to the Federal Building for immigration purposes," but claims that "he was serving a function (removal of detainees from the Warrant Location) that 'advanced' the execution of the search and would have needed to have occurred regardless of the immigration status of the detainees[.]" Opp. 19. But "search warrants based on probable cause cover the place being searched, not the seizure of individuals." *Perez Cruz v. Barr*, 926 F.3d 1128, 1142 (9th Cir. 2019). The limited authority provided by *Michigan v. Summers* permits law enforcement "to detain the occupants of the premises while a proper search is conducted," 452 U.S. 692, 705 (1981), but "*limited*

---

[3] During the argument for the first motion to dismiss, the government conceded B.G. was transporting individuals arrested pursuant to administrative warrants. ECF 99 32:24-33:13. The new allegation regarding S.T. is better read as an after-the-fact filler to address this error, with no SI specificity nor underlying factual support.

5

*to the immediate vicinity of the premises*" being searched. *Bailey v. United States*, 568 U.S. 186, 199 (2013) (emphasis added).[4] The government's actions, barely described on the face of the SI and supplemented in its opposition, mirror the unconstitutional acts described in *Perez Cruz*, 926 F.3d at 1144: a search warrant obtained to coincide with an immigration raid, with pre-planned arrests, and officers detaining all employees on site, interrogating them, and driving them offsite after arrests or for further detention. *Perez Cruz* held that *Summers* did not authorize "detention *for the purpose* of obtaining answers from detainees, let alone transporting detainees offsite and holding them long beyond the length of the search so they can be further interrogated." *Id.* at 1144. So, by doubling down on its argument that B.G.'s moving detainees to the Federal Building was conducted as part of the search warrant, it also doubles down on its own unconstitutional acts. The moment the government transports someone off-site, it is an arrest, not a *Summers* detention or the execution of a search warrant. An act must be constitutionally part of a search to be "executing a search warrant." Casting it as "securing the search location" does not change this fact.

The government additionally attempts to reframe the "perimeter team" guarding the gate as executing the search warrant. Opp. at 20. But while an act must be constitutional to be part of the execution of a search warrant, that is a necessary but not sufficient condition. The Fourth Amendment permits law enforcement to reasonably secure a premises to execute a search warrant, *Yanez-Marquez v. Lynch*, 789 F.3d 434, 471 (4th Cir. 2015), but that does not mean that the officers named were "executing the search warrant" or that these officers did so in this circumstance. The government does not point to a single place in the SI describing the gate officers as "executing the warrant," and it has conceded that the

---

[4] *Tovar v. City of Fresno*, 2007 WL 3407415, at *2 (E.D. Cal. Nov. 13, 2007), involved detention just outside of a searched residence.

6

search, arrest, and perimeter teams acted separately—and only one actually "executes" the search warrant.

With little else left, the government repeats its catch-all theory: that *all* federal agents at the warrant location were executing the search warrant at *all* times. Given that B.G. and others were executing administrative arrests, this cannot be true. And this is not what the SI actually says. The SI states that "all of the federal officers . . . present at the Search Warrant Location on June 6, 2025, were assisting with the execution of the Warrant . . . and were, in fact, so doing when present at the Search Warrant Location on June 6, 2025, *when the operation began*." SI 3:22-28 (emphasis added). Taken as true, with the search beginning between 9-9:30 a.m., *id.* 2:21-24, this statement does not save the charge, because it cannot be disputed that Mr. Huerta arrived over two hours later. SI 4:4-5. The government cannot rewrite the SI in its opposition to escape this temporal limit.

In the government's enlarged view, any activity occurring at the same time as a search is "execution of a search warrant" (or at minimum, part of a "dual function," *see* Opp. 18), and any conduct tangentially inconveniencing an officer or an operation is obstruction, resistance, and opposition of an officer. But the government has forfeited any argument that the SI's nebulous allegations state an offense under the statutory structure it conceded. Executing a search can include many activities, but it cannot include arrests and detentions offsite. And the government's post-hoc revisions cannot supply the essential elements the SI omits.

### C. The Superseding Information Charges First Amendment Protected Activities.

Even if the SI properly stated the elements of Section 1501, Mr. Huerta's First Amendment-protected activities cannot be the basis of a criminal charge. His peaceful protest, picketing, and sit-ins are all protected speech under the First Amendment, *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996), and receive

greater protection because Mr. Huerta spoke on an issue of public importance in a public forum, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982); *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009). The SI actually describes protected activity: Mr. Huerta joined a "crowd" (protest, *see* Opp. 1) in front of one of the warehouse's gates, SI 4:1-5, 26-27 (a public sidewalk, *see* Opp. 4), and that he conducted a sit-in, SI 4:21, engaged in a picket line, *id.* 4:24, did not stop protesting in the face of an invalid order, *id.* 5:1-7, and encouraged and associated with others during a protest, *id.* 5:8-15, 21-23. This speech is presumptively protected, as the government concedes when acknowledging that he acted "with the intent to communicate a message." Opp. 20. And it never rebuts that Mr. Huerta cannot, under the First Amendment, be charged for peacefully protesting, even if others at the protest act unlawfully.

Attempting to relabel Mr. Huerta's protest to exclude it from protection does the government no good. Mr. Huerta's protest is technically "conduct" and could be "blocking" something, but it is still protected. Protest is speech even if it is technically "conduct." Mot. 20-21; *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 861 (9th Cir. 2001). And protests often block businesses and streets, but may do so absent a valid restriction, *see* pp. 10-11, because sidewalks and streets are public fora. Calling where Mr. Huerta protested a "driveway" to avoid this classification changes nothing—a public sidewalk that dips down to allow cars to cross over and sits on the public side of the high fence is still a public forum. *See* Opp. 4 (showing two images of the driveway/sidewalk).

Because Mr. Huerta engaged in protected speech in a public forum, the government can only restrict it for two narrow reasons: (1) that the speech falls within one of the narrow, "historic and traditional categories" of speech exempted from First Amendment protection, *United States v. Alvarez*, 567 U.S. 709, 717 (2012), or (2) that the restriction is a "reasonable restriction[] on the time, place, or

8

manner of protected speech, provided the restriction[] '[is] justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984)).  None of these apply here. When the government asserts that because the protest "blocked" the entrance, it lost any protection, it gets this backwards.  Opp. 20-21.  Protest in a public forum is presumptively permissible unless the government proves the above criteria.  It does not.

The government argues that "obstruction" categorically is not protected, *id.* Not so.  *See Alvarez*, 567 U.S. at 717 (listing specific unprotected categories).  Its support is a string of cases finding that the FACE Act or other ordinances meet intermediate scrutiny. Opp. 20-21 (citing *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000); *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998)).[5]  That the government can regulate obstruction in *certain* circumstances does not make it an historical category of unprotected speech.  The government then invokes watered-down versions of actual historical exceptions without actually naming or analyzing them.  It cites *United States v. Hansen*, 599 U.S. 762, 783 (2023), for the settled proposition that "speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected," but does not engage in the analysis required for this exception to apply here.  For good reason—speech integral to criminal conduct does not apply when the speech is itself the alleged crime.  *See United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022) ("Congress may not

---

[5] It omits that the FACE Act expressly states that it does not prohibit "any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution."  18 U.S.C. § 248(d)(1).

9

define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized. To qualify as speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech[.]"). Here, Mr. Huerta's protest and speech is allegedly the same conduct that the government seeks to transform into a crime, so it does not qualify.[6]

Next, the government invokes the time, place, or manner ("TPM") framework, but does not actually satisfy it. It briefly states a "legitimate" interest, access to the warrant location, but TPM restrictions must be narrowly tailored to a *significant* government interest, *Ward*, 491 U.S. at 791.[7] As the government does not explain why access to one entrance of the warrant location (when others existed) qualifies, and in fact forfeits any argument against Mr. Huerta's explanation of its deficiencies, it has not stated the required level of interest. Mot. 24. Even then, it baldly asserts that the limitation to the driveway makes it "narrowly tailored," and that protesters can go elsewhere on the sidewalk. It does not demonstrate how sectioning off the entire driveway and gate area, even when officers were not trying to enter, is narrowly tailored to the government's interest under the actual test.

---

[6] When it states that Mr. Huerta was "encouraging or inducing further unlawful obstructive conduct," the government may be invoking a different exception: incitement. Opp. at 22. The SI does not show that Mr. Huerta's words and actions were "directed to inciting or producing imminent lawless action" nor that he was "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). More protest is not "imminent lawless action." Absent incitement, the First Amendment even protects speech "tending to encourage or promote *a riot*." *United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021).

[7] Mr. Huerta does not concede that intermediate, rather than strict scrutiny, applies to this case, as law enforcement stopped Mr. Huerta's protest "because of disagreement with the message it conveys," *Hill v. Colorado*, 530 U.S. 703, 719 (2000). But as the government does not even meet the lesser requirements of intermediate scrutiny, it certainly cannot meet the greater requirements of strict scrutiny.

10

Nor could it.  Valid TPM restrictions are prospective and subject to neutral criteria, providing speakers with specific guidance on any restrictions.  This often takes the form of an obvious triggering condition and a fixed boundary; for example, the restrictions in *Schenck v. Pro-Choice Network Of W. New York*, 519 U.S. 357, 376 (1997), *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 770 (1994), and *Hill*, 530 U.S. at 707, each imposed specific spatial limitations outside pre-identified locations.  But the triggering condition for Section 1501 is an officer serving or executing a warrant, not a place or person the government can pre-identify without giving away its operation.  In Mr. Huerta's case, there were no visual or obvious cues that the driveway was off-limits or that it needed to be kept clear all the time for law enforcement use.  Mr. Huerta had no notice that this portion of the sidewalk, at any specific time, was off limits.

This restriction also left no adequate alternative channel, because the "restriction" existed only once the officers decided they needed, in one specific moment, to use the driveway.  Because Section 1501 is pinned to individual officers, not locations, it functions like the "floating buffer zones" the Court struck in *Schenck*, 519 U.S. at 377-78, which "burden[ed] . . . much more speech than [their] terms prohibit[ed]" by forcing protesters to anticipate the movements of the people and vehicles they needed to avoid.  It would provide a standardless, discretionary power to decide which protests to shut down, which is the antithesis of a permissible TPM regulation.  *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-33 (1992).[8]

Finally, the government has forfeited any justification for a dispersal order, as required by its SI.  The SI alleges that Mr. Huerta "obstructed, resisted, and opposed"

---

[8] Even this is questionable, as the SI allegations regarding fears for officer safety and the ultimate conclusion of the operation due to the protest could have occurred even if the protest was elsewhere.

11

by allegedly failing to obey law enforcement commands to clear the driveway. SI 5:1-7. These commands are the type of protest-dispersal orders that are subject to First Amendment requirements. Mot. 22-24. The government does not rebut, and therefore forfeits, that those orders were not supported by a significant government interest, and that Mr. Huerta was properly exercising his constitutional rights when he did not comply.

With the proper law set out, the SI charges Mr. Huerta for his lawful, protected First Amendment activity, which cannot be a crime.

**II.     Section 1501 Is Facially Overbroad in Violation of the First Amendment.**

Section 1501's first paragraph sweeps in a wide swath of protected speech, including criticisms and peaceful protest of law enforcement activity. Mr. Huerta's own arrest, as well as the few applications of the statute throughout history, reveal its unconstitutional overbreadth. The Supreme Court has already found that a similar statute, prohibiting "in any manner oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty," was overbroad in violation of the First Amendment, because the terms "oppose" and "interrupt" criminalized far too much protected speech against law enforcement. *See City of Houston v. Hill*, 482 U.S. 451, 467 (1987). This Court should follow this binding precedent and strike Section 1501's similar first paragraph, forbidding non-forcible, non-threatening, and non-violent obstruction, resistance, and opposition, from the statute.

**A.     Section 1501's Plainly Legitimate Sweep Covers Protected Speech.**

Verbal criticism and non-verbal protest are both speech protected by the First Amendment. *See* Mot. 20-22. Section 1501's three operative verbs—obstruct, resist, and oppose—sweep in both verbal and non-verbal protected speech under

12

their plain meaning, meeting the first requirement of overbreadth. *See* Mot. 26.

The government affirms that overbreadth challenges are properly brought when a law targets "speech" or "conduct necessarily associated with speech (such as picketing or demonstrating)." Opp. 23 (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)). It concedes that the term "opposes" contains "multiple meanings," including non-forcible and non-physical opposition, Opp. 24, and that at least at "the margins," the term obstruct can as well, *see id.* (quoting *United States v. Pugh*, 90 F.4th 1318, 1330 (11th Cir. 2024)). It agrees that the difference between Section 1501's first paragraph and second paragraph is critical to this inquiry, and that the second paragraph covers physical force and violence, while the first paragraph covers "non-violent," nonforcible activities. *See* Opp. 27-28. And it does not address—and therefore concedes—that the second paragraph's coverage of "assault" specifically includes unprotected speech, including true threats and fighting words. *See United States v. Sommerstedt*, 752 F.2d 1494, 1496 (9th Cir. 1985), *as amended*, 760 F.2d 999 (9th Cir. 1985) (defining "assault" under Section 1501's second paragraph, and 18 U.S.C. § 111), and that conflating Section 1501's two paragraphs would render one superfluous.

These concessions are dispositive. Read together, and in contrast to Section 1501's second paragraph, the first paragraph's three verbs therefore only cover verbal speech (opposition and resistance to police officers), and non-violent, non-threatening, and touch-free conduct directed at law enforcement.[9] This subsumes all

---

[9] As described in *United States v. Giampino*, 680 F.2d 898, 902 (2d Cir. 1982), the first paragraph has "no mention of force, nor use of a verb that connotes the use of force, nor any logical reason why such obstruction, resistance, or opposition cannot occur without force." *Id.* Notably, "force" in the context of 18 U.S.C. § 111, as relevant to *Giampino*'s analysis, implies no touching at all. *E.g. United States v. Alsondo,* 486 F.2d 1339, 1345 (2d Cir. 1973) (lifting a hand as though to shove, and actual shoving, are "both acts sufficient to constitute a crime under section 111")

13

First Amendment-protected activity, and is parallel to *City of Houston*, where all "species of physical assault" are covered under the latter half of the statute, and therefore are separated from the analysis. Opp. 25 (quoting *City of Houston*, 842 U.S. at 460).

Understanding that the first paragraph covers substantial protected speech, the government rewrites it. It collapses "obstruct, resist, and oppose" into a single meaning that renders the last two words entirely superfluous, and injects the word "physical" where it does not exist. Opp. 24-25. To do so, it relies on the wrong dictionary definitions, *compare, e.g.*, Mot. 28 (citing the Oxford English Dictionary definition for "obstruct" specifically for "law"), *with* Opp. 24 (citing the OED definition for "obstruct" for "an opening, thoroughfare, waterway, etc." and "a physical action or movement."); from the wrong time periods, *compare* Mot. 27 (citing historically appropriate definitions for 1791), *with* Opp. 24 (citing the definition of "obstruct" from 1963 and 2004). These definitions are not persuasive. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012).

The context of the three verbs supports the proper understanding that "obstruct, resist, and oppose" are not confined to physical actions. The government cites *People v. Vasquez*, 465 Mich. 83, 90 (2001), to argue that "oppose" is restrained to physical acts, but misreads the case. *Vasquez* found a physical limitation only because "obstruct, resist, oppose" were listed in the *same* sentence as "assault, beat, wound." *See id*. But Section 1501 separates "assault, beat, wound" into a different paragraph. Mot. 29. In this circumstance, "obstruct, resist, and oppose" have been found *not* to have a physical limitation. *See King v. Ambs*, 519 F.3d 607, 611 (6th Cir. 2008).[10]

While this Court may impose a limiting construction to avoid constitutional

---

[10] *Pugh* applies the wrong definitions for obstruct and addresses a different three-word string. 90 F.4th at 1330.

14

infirmities, it may do so "only if it is 'readily susceptible' to such a construction." *Reno v. ACLU*, 521 U.S. 844, 884 (1997).  Courts cannot "'rewrite a . . . law to conform it to constitutional requirements.'"  *Id.* at 884-85 (quoting *Va v. Am. Booksellers Assn., Inc.*, 484 U.S. 383, 397 (1988)).  Nor can it render words superfluous.

The government also asks the Court to revise Supreme Court precedent. The government's reading of *City of Houston*, to apply only to the term "interrupt," is an extraordinary stretch.  The opinion's text distinguishes between the two words, and treats them as separately abhorrent to free speech, going as far as to state that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63.  *Interruption* is not always a criticism or a challenge, but *opposition* is.  The government twists the opinion to suit its narrative, but its arguments find no footing in the actual text.

Next, the government argues that *City of Houston* does not reach expressive conduct, did not consider whether "oppose" could apply to unprotected speech, and exempted any and all obstruction from its holding.  Its first two points make Section 1501's first paragraph more analogous to *City of Houston*'s overbroad ordinance, not less.  In *City of Houston*, the Supreme Court excluded any definitions of the terms that covered "physical assault," "fighting words," and "disorderly conduct," as preempted by other statutes.  Opp. 25, n.10 (quoting *City of Houston*, 482 U.S. at 462 n.10).  Here, the first two prohibitions, as the government concedes, fall into Section 1501's second paragraph, not its first.  And Section 1501 does not cover disorderly conduct at all.  Separating "obstruct, resist, oppose" from "assault, beat, wound" here has the same effect as the *City of Houston* preemption separating "oppose, molest, abuse or interrupt" from "assault" or "strike."  The only relevant portions both statutes encompass are acts that do not require touching, force, threats,

15

or physical acts.

The government's third point references the Supreme Court's recognition that certain types of physical obstruction *could* be constitutionally criminalized, *see id*. at 462, n.11.  But that recognition simply recognizes the well-established points that the government can regulate speech if it meets the right level of scrutiny, and that a law with legitimate applications can still be facially overbroad.  As the Supreme Court clarified, "[a]lthough that person might constitutionally be punished under a tailored statute that prohibited individuals from physically obstructing an officer's investigation, he or she may not be punished under a broad statute aimed at speech." *Id.*

Ultimately, *City of Houston* makes two dispositive points that mandate Section 1501's first paragraph's overbreadth.  First, to "oppose" a law enforcement officer includes protected verbal speech, and when isolated from words requiring physical force or threats, statutes prohibiting opposition, even in a string of potentially ambiguous words, are facially overbroad.  Second, a statute that prohibits substantial protected activities, along with some unprotected activities, is still unconstitutional.  The Supreme Court affirmed that statutes that rely on law enforcement to draw the lines between expressive and non-expressive activities are extremely suspect and stated that it has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *City of Houston*, 482 U.S. at 465.

The government's comparator statute, 18 U.S.C. § 231, instead provides more evidence of overbreadth.[11]  Courts upholding this statute focused on two elements that Section 1501 lacks: (1) the requirement of "any act" to "impede,

---

[11] In response to the remainder of Mr. Huerta's comparator statutes, the government simply states that they do not cover "physical obstruction . . . without the use of force." Opp. 27, n.6.  This proves Mr. Huerta's point entirely.

obstruct, or interfere," which narrows it to non-verbal activity, *see United States v. Phomma*, 561 F. Supp. 3d 1059, 1068 (D. Or. 2021); and (2) the requirement that the act occur during "a civil disorder," which cabins it to actions taken during violent or dangerous circumstances, *see United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). These textual qualifiers narrow Section 231(a)(3), not its use of the term "obstruct." *Accord United States v. Wood*, No. 20-cr-56, 2021 WL 3048448, at *7 (D. Del. July 20, 2021); *United States v. Grider*, 617 F. Supp. 3d 42, 51 (D.D.C. 2022).

Like in *City of Houston*, the scienter requirement of Section 1501 does not save the statute. "[S]peech does not necessarily lose its constitutional protection because the speaker intends it to [oppose] an officer, nor would an intent requirement cabin the excessive discretion the ordinance provides to officers." *City of Houston*, 482 U.S. at 469 n.18. *See United States v. Atkinson*, 232 F.3d 897, at *1 (9th Cir. 2000) ("A defendant's view as to the unconstitutionality or invalidity of the law is irrelevant to the issue of willfulness." (citing *Cheek v. United States*, 498 U.S. 192 (1991))). Nor will it help speakers or law enforcement interpret the line between speech and criminal conduct. Rather, it would incentivize law enforcement to criminalize the content of speech: that in opposition to, rather than in support of, federal officers' service or execution of federal court writs and orders.

The government's analogies to the FACE Act are entirely inapposite. The FACE Act is limited to uses of force, true threats, and physical obstruction, for which it provides a specific definition. 18 U.S.C. § 248(e)(4) (prohibiting physical obstruction that "render[s] impassable ingress to or egress" of certain facilities). It does not contain a word as inherently viewpoint based as "oppose." And courts have found that, while "the Act might incidentally affect some conduct with protected expressive elements, such as peaceful but obstructive picketing," it survived intermediate scrutiny. *Norton v. Ashcroft*, 298 F.3d 547, 552 (6th Cir. 2002). The

17

government does not show that Section 1501 meets this same standard.

The plain meaning of Section 1501's first paragraph reaches significant amounts of protected speech, without limitations or tailoring, so the government's revisions must be rejected.

### B.    Section 1501's Plainly Legitimate Sweep Includes Substantial Protected Activities.

First Amendment overbreadth challenges are a "singular context" where "even a law with 'a plainly legitimate sweep' may be struck down in its entirety." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). "[T]he overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *Hansen*, 599 U.S. at 769. To determine whether a statute is substantially overbroad, "a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* Mr. Huerta has made this showing. In the government's interpretation, the constitutional application of the statute reaches no further than "physical blocking" of an officer executing a search warrant "without the use of force," Opp. 27 n.6, which excludes any actions that touch an officer, physical acts that would threaten to touch an officer, and unprotected verbal speech, such as true threats, as those fall within the ambit of the second paragraph. In the remaining scope of the statute's first paragraph, Mr. Huerta has shown that the breadth of the terms obstruct, resist, and oppose (covering substantial protests, expression, and protected speech that opposes and resists an officer) is more substantial than the remaining minimal unprotected conduct.

Assessment of actual applications of a statute is not required to assess the substantiality of overbreadth, *see, e.g.*, *Rundo*, 990 F.3d at 720 (analyzing substantial overbreadth on the text of the statute alone), and charges and prosecutions under

18

Section 1501 are extremely rare.  Still, Mr. Huerta has identified more than enough applications of Section 1501 to verbal speech to demonstrate that, more frequently than not, Section 1501's first paragraph is applied to speech, not "physical blocking."  As the government admits, *United States v. Carpenter*, No. 09-cr-00271, 2012 WL 292480, at *2 (W.D. La. Jan. 31, 2012), *aff'd*, 500 F. App'x 331 (5th Cir. 2012); *Coleman v. United States*, 268 F. 468, 469 (6th Cir. 1920); *Avery v. King*, 110 F.3d 12, 13 (6th Cir. 1997) all charged the respective defendants for their verbal speech.[12]  The government only identifies one case of actual "physical blocking," *United States v. Peifer*, 474 F. Supp. 498, 500 (E.D. Pa. 1979), *aff'd*, 615 F.2d 1354 (3d Cir. 1980), and one case of passive resistance, *United States v. Brakke*, 934 F.2d 174, 177 (8th Cir. 1991), that are charged under Section 1501's first paragraph and unrelated to expressive activity. To the extent that it tries to use *Sparks v. United States*, 90 F.2d 61, 62 (6th Cir. 1937), and the force-related charges in *Coleman*, both were charged under Section 1501's first paragraph.[13]

The government does not even analyze whether the breadth of the statute is sufficiently substantial; it just asserts that it is not.  But by its text, its historical application, and the charge against Mr. Huerta, Section 1501's first paragraph sweeps in substantial protected speech and must be struck from the statute.

---

[12] The government misreads the historical application of Section 1501 to the non-violent speech of Theodore Parker and Sherman Booth as using force, when the historical record shows that—despite the indictment's use of the legal fiction "force and arms"—the two were indicted under Section 1501 for encouraging protest, not forcible acts.  *See* Paul Finkelman, *Slavery in the Courtroom*, 116 (1983); Earl M. Maltz, *Slavery, Federalism, and the Constitution: Ableman v. Booth and the Struggle over Fugitive Slaves*, 56 Clev. St. L. Rev. 83 (2008).

[13] The difference between charges and convictions is irrelevant to these examples of overbreadth, as the pertinent question is how the *government* applies the statute, not how a jury will interpret it.

### III. Section 1501 Is Void for Vagueness.

Due Process and the First Amendment require that "regulated parties should know what is required of them so they may act accordingly," and that statutes provide "precision and guidance" to ensure "that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. As it provides none of these safeguards, and chills protected speech, Section 1501's first paragraph is fatally vague as applied to Mr. Huerta. Mot. 35-37.

In response to Mr. Huerta's alternative showing that Section 1501's terms cover enough protected speech to render their application arbitrary and opaque, the government simply rehashes disputed facts and declares that Mr. Huerta committed a crime, so the statute cannot be vague. That is not the standard, and Mr. Huerta has sufficiently shown otherwise, *see* pp. 1-11. Though the government argues that the scienter requirement fixes these issues, it provides no more protection here than it does in the overbreadth analysis. *See* pp. 17. And Mr. Huerta's demonstration of arbitrary enforcement, through Special Agent Ryan Ribner (the officer that targeted and arrested Mr. Huerta), and through evidence of systemic arbitrary enforcement, is relevant and telling. Officers across the country are arresting and charging protesters for little more than their speech, and Section 1501's fatal vagueness gives them that tool. The Court should find that the statute is unconstitutionally vague, as applied to Mr. Huerta's conduct, in violation of the First and Fifth Amendments.

### CONCLUSION

For the foregoing reasons, Mr. Huerta respectfully requests that this Court dismiss the SI with prejudice.

20

Dated: July 6, 2026

Respectfully Submitted,

LOWELL & ASSOCIATES, PLLC

By: */s/ Abbe David Lowell*
Abbe David Lowell

MCLANE, BEDNARSKI & LITT, LLP

By: */s/ Marilyn E. Bednarski*
Marilyn E. Bednarski

*Attorneys for Defendant David Huerta*

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Mr. Huerta, certifies that this brief contains 6,618 words, which complies with the word limit set by this Court, *see* Order, ECF 120, dated July 3, 2026.

Dated: July 6, 2026

*/s/ Abbe David Lowell*
Abbe David Lowell
LOWELL & ASSOCIATES, PLLC

*Attorney for Defendant David Huerta*

22